UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-cr-392 (DLF) |
| | : | |
| ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MOTION FOR ALTERNATIVE PROCEDURES UNDER THE CRIME VICTIMS' RIGHTS ACT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves this Court to find this case is a "public court proceeding" involving "multiple crime victims" pursuant to 18 U.S.C. § 3771(d)(2) (the Crime Victims' Rights Act or "CVRA"). Accordingly, the government requests the Court approve (1) an alternative victim notification procedure, (2) an alternative procedure to access the court proceedings by utilizing a dedicated listen-only telephone line for the victims, and (3) a procedure to allow the victims the right to be reasonably heard at court proceedings involving release, plea, sentencing, or any parole proceeding, as outlined below, as "a reasonable procedure to give effect" to the rights guaranteed by the CVRA. *Id.*

### FACTUAL BACKGROUND

On December 21, 1988, Pan Am Flight 103 exploded over Lockerbie, Scotland, while *en route* from London's Heathrow Airport to John F. Kennedy International Airport in New York City. The explosion resulted in the deaths of 270 people, 259 of whom were aboard the flight, with another 11 persons killed by debris falling to the ground. The victims included citizens of 21 countries, including 190 Americans and 43 citizens of the United Kingdom. Among those who

perished were 35 Syracuse University students returning from studying abroad, five United States service members, and employees of the Department of Justice and Central Intelligence Agency.

The investigation into the explosion revealed that it was caused by a destructive device or improvised explosive device ("IED") that was placed inside a copper-colored suitcase stored within the aircraft's forward cargo compartment. The government anticipates that its evidence will show that the Defendant built the bomb that brought down Pan Am Flight 103. Forensic analysis of items recovered from the debris that were identified as contained inside the same suitcase as the IED resulted in the identification of Abdel Baset Al-Megrahi ("Al-Megrahi") as having purchased those items from a shop in Malta. Al-Megrahi was believed to be a member of the External Service Organization ("ESO"), the Libyan intelligence service. Travel records further revealed that Al-Megrahi and other ESO personnel traveled between Malta and Libya in the months surrounding December 1988, including on the day of the bombing. The investigation further revealed that on December 21, 1988, while passengers and baggage were being boarded on Air Malta Flight KM-180 that was to travel from Malta to Frankfurt, West Germany, Al-Megrahi, who traveled under the alias "Abusamad," and the Defendant checked in to Libyan Arab Airlines Flight LN-147 bound for Tripoli, Libya. Passengers and luggage for both Flight KM-180 and Flight LN-147 checked in via adjacent airport gates while both gates were open. The copper-colored suitcase, which contained the IED that the Defendant stands accused of building, had already been placed onto Flight KM-180 with an American aircraft baggage tag placed on it. Thus, the government believes that, as the suitcase with the IED was traveling to Frankfurt on Flight KM-180, Al-Megrahi and the Defendant were safely heading to Tripoli. Upon the bag's arrival in Frankfurt, it was then loaded onto Pan Am Flight 103A, which traveled to London-Heathrow from Frankfurt, and the IED suitcase was transferred to Pan Am Flight 103 with other baggage for that aircraft at London-

Heathrow. There were no passengers holding tickets for an itinerary for Malta-Frankfurt-Heathrow, and then on to Pan Am Flight 103.

In November 1991, a federal grand jury sitting in the District of Columbia returned an indictment charging Al-Megrahi and another ESO operative, Lamen Khalifah Fhimah ("Fhimah"), on charges including Conspiracy to Commit a Crime Against the United States (18 U.S.C. § 371), Murder of a U.S. National Outside the United States (18 U.S.C. § 2331, subsequently codified at § 2332), Destruction of an Aircraft Resulting in Death (18 U.S.C. § 32), and Destruction of a Vehicle by Means of an Explosive Resulting in Death (18 U.S.C. § 844(i)).

### The Scottish Trial

On the same day the indictment was returned in the District of Columbia, Al-Megrahi and Fhimah were charged in Scotland. Both countries then requested extradition of the defendants from Libya, a request which Libya refused. Two months later, in January 1992, the United Nations Security Council unanimously adopted a resolution urging Libya to "provide a full and effective response" to requests by the United States and the United Kingdom for the surrender of the two Libyans linked to the bombing. After seven years of negotiations, the Libyan government surrendered Al-Megrahi and Fhimah to Scottish authorities. Al-Megrahi and Fhimah were tried together before a Scottish court that was physically located in Camp Zeist, The Netherlands ("the Scottish trial"). Approximately 12 years later, the Scottish trial commenced on May 3, 2000, and the court rendered its verdict on January 31, 2001. Al-Megrahi was convicted on 270 counts of murder for his part in the bombing and was sentenced to life imprisonment. Fhimah was acquitted, released, and permitted to return to Libya. As part of its verdict, the Scottish Court pronounced an

explicit finding that the Muamar Qaddafi regime and his ESO intelligence apparatus engineered this act of terror.[1]

## PROCEDURAL HISTORY

On November 29, 2022, a federal grand jury in the District of Columbia returned a three-count Indictment charging Abu Agila Mohammad Mas'ud Kheir Al-Marimi (the Defendant), a dual citizen of Libya and Tunisia, with the destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(2), 34, and 2; destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(1), 34, and 2; and destruction of a vehicle used in foreign commerce by means of an explosive, resulting in death, in violation of 18 U.S.C. §844(i).[2]

On December 11, 2022, the Defendant was transferred from Libya into the custody of the United States. He made his initial appearance on December 12, 2022, in the U.S. District Court in the District of Columbia in front of the Honorable Magistrate Judge Robin M. Meriweather. The case was set before the Honorable Magistrate Judge Moxila A. Upadhyaya on December 19, 2022, and again on January 10, 2023, for an ascertainment of counsel determination and formal arraignment.

The Defendant moved to continue the January 10, 2023, for more time to retain an attorney. On January 25, 2023, Judge Upadhyaya appointed the Federal Public Defender to represent the

---

[1] Al-Megrahi was permitted by Scotland to be compassionately released in November 2009 on the basis that he was terminally ill with cancer and only had three months to live. He died in May 2012 in his home in Tripoli, and the U.S. charges against him were abated. The 1991 indictment charging Fhimah and the warrant for his arrest remain active and outstanding. Current information indicates that Fhimah is alive and living in Libya.

[2] On December 21, 2020, the government unsealed a criminal complaint charging the Defendant with these crimes. An arrest warrant was issued, and the United States lodged an Interpol Red Notice to obtain lawful custody of him. A federal grand jury later returned an Indictment for these charges on November 29, 2022.

Defendant, and the formal arraignment was held on February 8, 2023. The case was assigned to this Honorable Court.

## ARGUMENT

The Court should find this case as a "public court proceeding" involving "multiple crime victims" pursuant to 18 U.S.C. § 3771 (CVRA) in order to accommodate the numerous victims around the world.[3] Under the CVRA, the families of the Pan Am 103 victims have specific enumerated rights under the CVRA.[4] Relevant here, the victims have the right: (1) to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused, § 3771(a)(2); (2) not to be excluded from any such public court proceeding, § 3771(a)(3); and (3) to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding, § 3771(a)(4). The CVRA also recognizes that in cases involving large numbers of crime victims, it may be impracticable to accord all of the crime victims the rights identified in Section 3771(a). *See* 18 U.S.C. § 3771(d)(2). In such instances, the CVRA permits the Court to find that the case involves "multiple crime victims," § 3771(d)(2), and then permits the Court to "fashion a reasonable procedure to give effect" to the CVRA rights. The CVRA does not specify the alternative procedures but provides that alternative procedure shall not "unduly complicate or prolong proceedings." *Id.*

---

[3] The CVRA does not differentiate between domestic or international victims. The government believes its obligations extend to all victims.

[3] The act defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a federal offense . . ." 18 U.S.C. § 3771(e)(2)(A). It goes on to say, in relevant part, "In the case of a crime victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter…" 18 U.S.C. § 3771(e)(2)(B).

Alternative procedures are appropriate here. The families of the 270 victims killed in the bombing are located in numerous countries around the world and many are elderly or of advanced age. While they are deeply interested in attending the court proceedings, most are physically unable to travel to Washington, D.C. to meaningfully participate in the hearings. Additionally, the COVID-19 pandemic is still ongoing and considered a public health emergency,[5] creating major obstacles for travel, especially for those who are older or have a greater risk of contracting the virus. Throughout the last 34 years, the families of those 270 victims have followed the developments of this case. With this arrest of the Defendant, there are renewed requests for information about the case and for regular updates.

## I. The Government's Proposed Alternative Victim Notification Process

Under 18 U.S.C. § 3771 (c), the government has obligations related to victim notifications:

> Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a).

In this case, the government will continue to notify victims in its typical process, as outlined here. All victim notification has been and will be provided by a computerized operating system known as the Victim Notification System ("VNS"). After an initial notice was provided by mail, the victims were advised that they will have the option in VNS to receive future notice concerning the case in three ways: (1) VNS operates a Call Center which allows the victim to call an automated system for information on future court hearings, historical court events and details such as charges filed, outcome of charges, the sentence imposed and the custody status for each defendant; (2) VNS allows each victim to view the VNS Internet site which provides victims and family members

---

[5] https://aspr.hhs.gov/legal/PHE/Pages/covid19-11Jan23.aspx, Renewal of Determination that a Public Emergency Exists, effective January 11, 2023.

the text of all correspondence and any attachments, which includes the same basic information on-line as the Call-Center;[6] (3) VNS provides an option for victims to receive notice by email for every event that is covered under the CVRA, and such notice replaces the mailing of letters in that they will automatically receive a letter by email.

However, the large number of victims makes the government's compliance with the notification requirements outlined in section 3771(a), (b) and (c) impracticable. As described, there are a large number of victims and in this case, located in 21 countries. There are numerous procedures that the government must follow when notifying victims who are located in foreign countries, and in some cases, the government is prevented from contacting them directly, conflicting with the government's obligations under the CVRA.

The government requests that the Court approve the following alternative process to comply with the rights guaranteed under subsection 3771(a)(2) to reach all the victims who the government cannot contact through VNS. The government will use the U.S. Department of Justice's website for this case (https://www.justice.gov/usao-dc/attack-pan-am-flight-103), to issue all required notices. The government will issue a press release informing individuals who believe they may be victims in this case with instructions to access the Justice Department website for more information.

## II. The Government's Proposed Alternative Access to Court Proceedings

Under 18 U.S.C. § 3771(a)(3), the CVRA provides that victims have the right to "not to be excluded from any such public court proceeding." As explained above, the age of the case, and the difficulties facing family members with travel due to their advanced age and/or expense and/or the pandemic to the District of Columbia to meaningfully participate in the future court hearings, are

---

[6] Each victim has been or will be provided a unique Victim Identification Number (VIN) and a Personal Identification Number so that they can access the Internet site

unique factors necessitating the government's request of the Court. Even if all the victims were able to attend, there would be questionable ability to host such a large group within the courthouse. Moreover, due to the nature of the charges, the government anticipates trials and hearings may include protracted presentation of testimony and evidence from numerous witnesses (*i.e.*, most from multiple countries from around the world).

Given these considerations, the government requests the Court make available a call-in telephone line for the victims to be able to listen to court proceedings in real time. The line would be set up as a listen-only system; the audience would not be able to comment or speak on the line, and a disclaimer would be made at the beginning of court proceedings that this line is intended for victims only. The victims would be able to access the real-time court proceedings as if they were present in the courtroom, without undue delay or interference.

### III. The Government's Proposed Procedure to Allow the Victims to be Heard at Statutorily Select Court Proceedings

Under 18 U.S.C. § 3771(a)(4), the CVRA provides that victims have the right to "to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." As explained above, many of the victims will not be present in the courtroom and will be remotely accessing the proceedings. The government proposes a reasonable procedure by which any victim who wants to be heard at a hearing involving release, plea, sentencing or parole issues will submit a written statement to the government in advance of the hearing, who will then submit those statements to the Court. This would allow the victims their rights afforded under the CVRA, while taking into account the logistical concerns of the number of victims and the physical location of the victims during those hearings. The government will inform the victims of the procedures through VNS and the Department of Justice website.

Counsel for the government notified the defense of this motion and the defense counsel does not oppose the relief requested.

**CONCLUSION**

Based on the foregoing, the government asserts that it is reasonable for the Court to permit that these unique accommodations be utilized in order for the United States to comply with its legal responsibilities under the CVRA. The government requests that the Court find this to be a case with multiple crime victims, and the Court adopt the following reasonable procedures, which do not unduly complicate or prolong proceedings: (1) the alternative victim notification procedure using the Department of Justice website, (2) the alternative procedure to access the court proceedings by utilizing a dedicated listen-only telephone line for the victims, and (3) the

procedure to allow the victims the right to be reasonably heard at court proceedings involving release, plea, sentencing, or any parole proceeding.

      Respectfully submitted,

      MATTHEW M. GRAVES
      UNITED STATES ATTORNEY
      D.C. Bar No. 481052

      ***/s/ Brittany Keil***
      ERIK M. KENERSON (OH Bar No. 82960)
      BRITTANY KEIL (D.C. Bar No. 500054)
      Assistant United States Attorneys
      JEROME J. TERESINSKI (PA Bar No. 66235)
      Special Assistant United States Attorney
      National Security Section
      United States Attorney's Office
      601 D Street N.W.
      Washington, D.C. 20530
      (202) 252-7763
      Brittany.Keil@usdoj.gov

      KATHLEEN CAMPBELL (MD Bar No. 9812170031)
      JENNIFER BURKE (MD Bar No. 9706250061)
      Trial Attorneys
      Counter Terrorism Section
      National Security Division
      950 Pennsylvania Avenue N.W.
      Washington, D.C. 20530