UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 22-cr-392 (DLF) |
| v. | : | |
| | : | |
| ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI | : | |
| | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S NOTICE REGARDING CLASSIFIED INFORMATION PROCEDURES ACT AND THE PARTIES' JOINT PROPOSED SCHEDULE FOR THE PROVISION OF CLASSIFIED DISCOVERY AND THE FILING OF MOTIONS PURUSANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and in response to the Court's pretrial scheduling order (March 13, 2024, ECF 47), respectfully files this pleading which summarizes the relevant statutory framework for the handling of classified information in criminal discovery, and which proposes a schedule for classified discovery and motions. In support of this proposed schedule, which defense has reviewed and agreed to, the government states the following:

**CIPA Background**

The Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA"), applies to matters relating to classified information that may arise in connection with the above captioned matter, both before and during trial. CIPA contains a set of procedures by which federal courts rule on pretrial matters concerning discovery, admissibility, and the use of classified information in criminal cases. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the

national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (citation and internal quotes omitted). It "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1192 n.8 (10th Cir. 2006) (citation omitted).

For the purposes of CIPA, "classified information" includes any information or material that has been determined by the United States government pursuant to law or regulation to require protection against unauthorized disclosure for reasons of national security. 18 U.S.C. App. 3 at § 1(a). "National security" means the national defense and foreign relations of the United States. *Id.* at § 1(b). CIPA applies equally to classified testimony and classified documents. *See United States v. Lee*, 90 F.Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F.Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F.Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

The Supreme Court has acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam)); *accord Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Accordingly, federal courts have long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir.

1973). Moreover, that defense counsel may have clearance does not confer automatic access to classified national defense information. *See, e.g.*, *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) ("It's also a mistake to think that simple possession of a security clearance automatically entitles its possessor to access to classified information that he is cleared to see"); *United States v. El-Mezain*, 664 F.3d 467, 522-523 (5th Cir. 2011) (rejecting defense argument that since security-clearance-holding defense team members received some classified discovery consisting of some of the defendant's communications, those defense team members should see all of the defendant's communications which were included in classified materials); *United States v. Libby*, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006), *amended by* 429 F. Supp. 2d 46 (D.D.C. 2006) ("[i]t is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access every piece of classified information this country possesses").

CIPA neither creates any new rights of discovery nor expands the rules governing the admissibility of evidence. *See United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevancy of probative evidence."); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). Rather, CIPA applies preexisting general discovery law in criminal cases to classified information and restricts discovery of classified information to protect the government's national security interests. *See Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989).

Accordingly, CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *accord United States v. McVeigh*, 923 F.Supp. 1310, 1314 (D. Colo. 1996) ("but CIPA does not enlarge the scope of discovery or of *Brady*"). Nor does it provide that the admissibility of classified information be governed by anything other than the well-established standards set forth in the Federal Rules of Evidence. *See Baptista-Rodriguez*, 17 F.3d at 1364.

### Protection and Provision of Classified Information During Discovery

Both CIPA § 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the United States to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. Section 4 of CIPA authorizes the district court "upon a sufficient showing" to deny or otherwise restrict discovery by the defendant of classified documents and information belonging to the United States. 18 U.S.C. App. 3 at § 4; *see, e.g., United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Yunis*, 867 F.2d at 619-625. Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that "[u]pon a sufficient showing," a district court: "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The legislative history of CIPA makes it clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny or restrict discovery in order to protect national security. *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984).

Section 4 provides, in pertinent part, that a district court:

> upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made

>available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. 3 at § 4. In essence, Section 4 allows the United States to request that the court review, *ex parte* and *in camera*, classified information to determine whether it is discoverable under Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or the Jencks Act, and to protect such classified information from disclosure through various means if it is discoverable.[1] *See United States v. Libby*, 429 F.Supp. 2d 18, 22 (D.D.C. Apr.5, 2006) (amended by *United States v. Libby*, 429 F.Supp. 2d 46, 47 (D.D.C. May 3, 2006)); *see also Klimavicis-Viloria*, 144 F.3d at 1261-62; *Rezaq*, 134 F.3d at 1142; *Yunis*, 867 F.2d at 619-25; *Pringle*, 751 F.2d at 427-28; *Kasi*, 200 F.Supp. 2d at 596 n.6.

Classified information may be withheld unless it is both relevant and "helpful to the defense of the accused . . . ." *Yunis*, 867 F.2d at 623. *Yunis* developed in part out of *Roviaro v. United States*, 353 U.S. 53 (1957). In *Rovario*, the defendant sought the identity of a confidential informant who was the "sole participant, other than the accused, in [a drug] transaction charged" in the indictment. 353 U.S. at 64. The Supreme Court recognized the government's privilege in protecting the identity of confidential informants, but held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is *relevant and helpful* to the defense

---

1   In determining whether classified information provided to the court under CIPA is relevant and potentially discoverable, it is appropriate for the court to meet with government counsel *ex parte* to consider the matter. *See United States v. Mejia*, 448 F.3d 436, 457 (D.C. Cir. 2006), *Libby*, 429 F.Supp. 2d at 24-25.

of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60-61 (emphasis added).

In *Yunis*, which involved the hijacking of an international flight, at issue were audio recordings of the defendant's conversations with an undercover law enforcement asset – some of which were relevant to the charges at issue. The government produced some of the statements and moved under CIPA to withhold others. In reversing the trial court's order that the government produce certain classified transcripts, the U.S. Court of Appeals for the District of Columbia Circuit noted that the withheld conversations discussed many matters that were "completely unrelated to the hijacking or any other terrorist operation or criminal activity." *Id*. at 618. The appellate court further stated:

> [C]lassified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege . . . [T]he threshold for discovery in this context . . . requires that a defendant seeking classified information, like [the] defendant seeking the informant's identity in *Roviaro*, [be] entitled only to information that is at least "helpful to the defense of the accused."

*Id*. at 623 (quoting *Roviaro*, 353 U.S. at 60-61); *see also id*. at 625 (noting that "relevant and helpful" phrase was the preferred articulation of the term "materiality," also used in *Roviaro*).

The government has engaged in a thorough and ongoing prudential review of the classified information that pertains to this matter. Upon its review, and pursuant to CIPA Section 4, the government anticipates that it will ask this Court to withhold or delete from discovery classified materials that are either (1) not helpful to the defendant, *see Varca*, 896 F.2d at 905, or (2) cumulative of other materials that have already been provided in the multitude of unclassified discovery to the defendant. In *United States v. Moussaoui*, the court described how "CIPA provides procedures for protecting classified information without running afoul of a defendant's

6

right to a fair trial," 591 F.3d 263, 282 (4th Cir. 2010), and summarized CIPA as "allow[ing] the district court to authorize the government to redact information from classified documents before providing such documents to the defendant during pre-trial discovery." 333 F.3d 509, 514 n. 6 (4th Cir. 2003).  Further, where necessary and appropriate, the government anticipates providing to the defense "substitutions" for certain classified materials that may be helpful to the defense.  The Court must grant the motion for substitution "if it finds that the admission or summary will leave the defendant in substantially the same position as would disclosure." *United States v. North*, 910 F.2d 843, 899 (D.C. Cir. 1990).  Providing substitutions is a well-accepted process by which the government provides the defense with information that is potentially helpful, in a manner that protects the government's legitimate interest in protecting classified information.[2]

**Procedures for the Use of Classified Information at Trial Under CIPA Section 5 and 6**

As part of the review of classified discovery in this case, there may come a time when the government will seek permission to produce actual classified information/documents to the defense through the Court Information Security Officer ("CISO"), pursuant to this Court's CIPA Protective Order of December 14, 2023 (ECF #24).

Sections 5 and 6 of CIPA apply to the use and potential disclosure of classified information during the course of a trial or proceeding.  *See, e.g., Baptista-Rodriguez*, 17 F.3d at 1363; *United States v. Collins*, 720 F.2d 1195, 1199-1200 (11th Cir. 1983).  Section 5 requires the defendant to provide timely written notice to the court and the government describing any classified information that he reasonably expects to disclose at trial.  *See* 18 U.S.C. App. 3 at § 5(a).  Notification must

---

2   Should the Court wish additional information concerning the nature and volume of classified information at issue in this case, Section 2 of CIPA permits the Court to hold a pretrial conference to "consider matters relating to classified information that may arise in connection with the prosecution."

7

take place "within the time specified by the court, or when no time is specified, within thirty days prior to trial." *Id.* Although the description of the classified information may be brief, it must be particularized and set forth the specific classified information that the defendant reasonably believes to be necessary to his defense. *See Collins*, 720 F.2d at 1199. The defendant must provide formal notice under Section 5 even if the government believes or knows that the defendant may assert a defense involving classified information. *See United States v. Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information in a trial or pretrial proceeding until such notice has been given, the government has had the opportunity to seek determination pursuant to Section 6, and any appeal by the government under Section 7 has been decided or the time for filing an appeal has expired. 18 U.S.C. App. 3 at § 5(a). If the defendant fails to provide the requisite pretrial notice, then the court may preclude disclosure of any classified information that was not the subject of the notification, and may prohibit the defendant from examining any witnesses with respect to such information. *Id.* at § 5(b).

After the defendant files the requisite notice, under Section 6(a), the government may request a hearing at which the court will make "all determinations concerning the use, relevance or admissibility" of the proposed defense evidence. 18 U.S.C. App. 3 at § 6(a). Upon such a request, the court shall conduct a hearing. *Id.* The hearing shall be conducted *in camera* if the Attorney General certifies to the court that a public proceeding may result in the disclosure of classified information. *Id.* Before the hearing, the government must first provide the defendant with notice of the classified information that will be at issue. *Id.* at § 6(b)(1). If the particular information was not previously available to the defendant, the government may, with the court's approval, provide a generic description of the material to the defendant. *Id.* The court may also,

upon request of the defendant, order the government to provide the defendant prior to trial "such details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id.* at § 6(b)(2).

If the government requests a hearing before the trial or other proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the trial or other proceeding begins. *Id.* at § 6(a). The court's ruling must be in writing and set forth the basis for its determination as to each item of classified information. *Id.*

If, after an *in camera* hearing, the court determines that the classified information at issue may not be disclosed or elicited during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id.* at § 6(d). If the court finds the classified evidence may be disclosed or elicited, the government may move the court to authorize (1) the substitution of a statement admitting the relevant facts that the specific classified information would tend to prove, or (2) the substitution of a summary of the classified information. *Id.* at § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue. *Id.* at § 6(e)(1). Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of such information," *id.*, and may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information. *See* S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3. Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or

dismissing the indictment. 18 U.S.C. App. 3 at § 6(e)(2). An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7 or thereafter withdraws its objection to the disclosure of the information. *Id.*

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information "unless the interests of fairness do not so require." *Id.* at § 6(f). The court may place the United States under a continuing duty to disclose rebuttal information. *Id.* If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the government from examining any witnesses with respect to such information. *Id.*[3]

### Proposed Schedule for Classified Materials

Based on the existing volume of classified materials in this case, the government expects to file approximately five motions pursuant to CIPA § 4. The government has coordinated with relevant equity holders to develop a realistic schedule for the filing of CIPA § 4 motions. Based on this coordination, the government believes that it will greatly facilitate review of these materials by the equity holders and the Court to organize its CIPA § 4 pleadings by subject matter. The government thus proposes filing four substantive CIPA § 4 motions, followed by a fifth "catchall" motion for any remaining materials. Review, summarization, and declassification (where necessary and appropriate) of classified materials is a complex, time-consuming process for the intelligence community, and the government submits that its proposed schedule fairly and accurately reflects the necessary time the process will require. The government anticipates that,

---

3   CIPA Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id.* at § 8. The government will address these procedures in future litigation as needed.

based on the equity holders' review, it will be authorized to provide limited tranches of material to the defense concurrent with the filing of each of the CIPA § 4 motions, potentially both in classified and unclassified discovery.

The government purposefully proposes that the CIPA § 4 motions be scheduled after the current date for its completion of discovery -- July 31, 2024. This is appropriate because information that has already been disclosed in unclassified discovery may likely provide the basis for a "sufficient showing" whereby the Court can restrict or deny the production of classified materials pursuant to Fed. R. Crim. P. 16(d)(1). As the government has set forth in several of its status updates, the government has undertaken to obtain a significant number of materials from foreign governments pursuant to existing Mutual Legal Assistance Treaties that are likely to be duplicative of materials contained in classified holdings (*See*, *e.g.*, ECF 46 at 3-5). Likewise, the government is working to finalize its review of the FBI historical files which date back to 1986. The government anticipates being able to provide a substantial number of these materials to the defense in unclassified discovery, and further anticipates that these materials may be duplicative of materials contained in classified holdings.

The government anticipates filing its first CIPA § 4 motion on or about July 31, 2024. This motion will focus on those classified materials that may be pertinent to the defendant's anticipated motion to suppress his statement, which is due to be filed in September 2024. Thereafter, the government anticipates filing additional CIPA § 4 motions on or about the following dates: October 31, 2024, November 22, 2024, and January 31, 2025. Finally, the government proposes that it will file, if necessary, a catchall CIPA § 4 motion on or about February 28, 2025 for any remaining materials.

Should any classified materials be provided to the defense, the government anticipates that the defense may seek to use that information and file certain motions under CIPA sections 5 and 6. Moreover, the government anticipates that the defense may seek access to additional classified materials based the information provided to them concurrent with the filing in each of the substantive CIPA § 4 motions. The parties agree that they will meet and confer within 30 days of the filing of each CIPA § 4 motion (and accompanying provision of materials to the defense), and they will promptly thereafter advise the Court whether they believe that litigation under CIPA §§ 5 and 6 will be necessary, and, if so, will file a proposed schedule for such litigation.

**Conclusion**

In the instant case, classified material exists that will be subject to the CIPA procedure previously outlined as well as other applicable rules, statutes, and/or case law. Wherefore, the government respectfully asks the court to approve the government's proposed CIPA schedule, as laid out above and as agreed to by the defense.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


***/s/ Erik M. Kenerson***
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
National Security Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 252-7763
Brittany.Keil@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys
Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530