IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 22CR392 (DLF) |
| ) | |
| ABU AGILA MOHAMMAD ) | |
| MAS'UD KHEIR AL-MARIAMI ) | |
| Defendant. ) | |

### DEFENDANT'S RESPONSE TO COURT ORDER

COMES NOW the defendant, by counsel, Whitney E.C. Minter and Todd M. Richman, Assistant Federal Public Defenders, and submits the following in response to this Court's February 16 Minute Order and March 13 Minute Order and the Government's Motion for Order [Dkt. No. 51].

Counsel for Mr. Al-Marimi has previously agreed to procedures as to victim access for non-evidentiary, pretrial proceedings.[1] However, as to trial and any evidentiary proceedings, the defense maintains that the Court should implement a more limited method for victims to access proceedings, due to additional concerns relating to the rule on witnesses and the integrity of the jury process. Specifically, for those proceedings, the defense submits that the Court should adopt a system in which trial and evidentiary proceedings would be made available to view by broadcast via Zoom or other secure method to designated sites, akin to the system

---

1 Specifically, we agree that the Court should make a Zoom public access line available, in the same manner as court proceedings were routinely made available to the public throughout the pandemic.

1

adopted in *United States v. Moussaoui*, 1:01CR455 (EDVA).[2]

Finally, for the reasons outlined below, the defense submits final details for a proposal with respect to those proceedings should be done in conjunction with a representative of the Court at a time when the government can provide a complete list of the number and locations of individuals who meet the statutory definition of victims and wish to have access to the proceedings.

In support of the above, defendant states as follows:

I.     **Federal courts recognize the risk of broadcasting trials.**

While federal court proceedings generally are open to the public and, as a result, subject to contemporaneous reporting, many judges and commenters are wary of the effect cameras have on witnesses, jurors, and attorneys. Those concerns motivated the Judicial Conference of the United States's rejection of more permissive rules and policies regarding cameras following the 1991–1994 pilot program; specifically, the Judicial Conference cited the "intimidating effect of cameras on some witnesses and jurors" as a cause for concern.[3]

A subsequent report of the Judicial Conference Committee on Court

---

[2] In *Moussaoui,* the Court ordered that the proceedings be broadcast by close circuit television (CCTV) to series of remote locations at other federal courthouses.   Procedures were established to determine who should be considered a victim under the controlling statute in that case, to issue identification credentials to those victims, and to maintain judicial security at the remote viewing sites. Dkt No. 39-2 at 2.
[3] *See* https://www.uscourts.gov/about-federal-courts/judicial-administration/cameras-courts/history-cameras-broadcasting-and-remote#:~:text=In%201972%20the%20Judicial%20Conference,applied%20to%20criminal%20and%20civil

Administration and Case Management regarding the 2011–2015 cameras pilot program noted "a low level of interest in recording proceedings, both from the parties themselves and the judges[,]" evidenced by the small percentage of eligible proceedings that were actually recorded and broadcast (~10 percent).[4] At the same time, 59 percent of pilot courts judges "opined that video recording distracted witnesses at least to some extent," and 64 percent "found that cameras . . . made witnesses more nervous than they otherwise would be." *Id.* at 5.  Based on these data, the Committee expressed substantial concern that cameras "likely would increase [] stress and affect in a negative manner witnesses' behavior in many instances." *Id.*

   Similar concerns motivated the district court's ban on photographing and broadcasting in *Moussaoui*. 205 F.R.D. 183, 186–87 (E.D. Va. 2002). The court found that "audio or visual broadcasting of any portion of these proceedings is likely to intimidate witnesses and jurors, as well as threaten the security of the courtroom and all those involved in the trial." *Id.* at 186. In particular, a "witness' knowledge that his or her face or voice may be forever publicly known and available to anyone in the world" would likely intimidate witnesses, causing some to refuse to testify or withhold their full testimony out of safety concerns or the fear of being ostracized. *Id.* at 187. At the same time, sacrificing juror anonymity would increase the potential for a "popular verdict." *Id.* And "world wide broadcasting . . . would be an

---

4  *See* https://pdfserver.amlaw.com/nlj/Cameras%20pilot%20project%20committee%20report.pdf at 3.

open invitation to any trial participant to engage in showmanship or make a public spectacle for the world to see or hear."

## II. While the government's proposal to use Zoom eliminates many security concerns, it does not eliminate all.

Broadcasting the trial to qualified victims over Zoom could allow for many of the harms created by public broadcast, as the government's proposals address some concerns, but not all. It would be not be difficult for an unauthorized individual to observe a personal device which is viewing the trial via Zoom. Worse, the broadcast can be easily recorded by another device and widely shared.

While the security measures outlined in the government's pleading might directly address misconduct by the primary viewer – presumably the victim – it does not prevent misconduct by others. For example, although only approved individuals will be able to receive and access the link, nothing prevents another individual from being in the same room and overhearing the testimony. Likewise, while the watermarks and other security measures in the proposals would allow for identification of a recording made directly by a victim on their log in device, it would not prevent them from making a recording using another device in the same room or by recording from another individual.

The government proposes monitors to observe the proceedings and address any unauthorized conduct. But the monitors can only observe what they can see and there are risks, as discussed above, that won't be readily observable on the screen. Furthermore, although the government states that victims would be

4

required to leave their cameras on while participating, someone could easily turn his or her camera off just long enough for a photograph of a witness or other recording to be made. And the government proposes that some individuals join by telephone line, in which case no one would be observing their actions at all. Notably, the government has not yet stated if their proposal would require that victims join from designated locations, such as a home or a private office. But, even if they did so, the risk remains, as the monitors cannot determine what happens off camera, even in more private locations.

By broadcasting the proceedings to federal courthouses or other locations that can be made secure by judicial, government, or law enforcement personnel, this Court can ensure that proceedings are viewed only by those authorized and not recorded. This will virtually eliminate the chance that the proceedings will be recorded and distributed to the media or on social media.

### III. Other fundamental rights are not free from limitations.

It is helpful to compare the rights of the victims to access the trial to the rights of the public generally to observe a trial. There is never a right to absolute access of trial – and indeed very few rights in the judicial system are absolute. Rather, these important rights are balanced against other concerns.

"[T]he right to a public trial is nevertheless not a 'limitless imperative.' The right 'has always been interpreted as being subject to the trial judge's power to keep order in the courtroom,' or 'to prevent unnecessary pressures or embarrassment to a

witness . . .'"*U. S. ex rel. Smallwood v. Lavalle*, 377 F. Supp. 1148, 1151 (E.D.N.Y.)(citing *United States ex rel. Orlando v. Fay*, 350 F.2d 967, 971 (2 Cir. 1965)), *aff'd sub nom. U. S. ex rel. Smallwood v. Lavallee*, 508 F.2d 837 (2d Cir. 1974).

As the *Moussaoui* Court articulated, prior to the passage of the public law specific to that case, "[t]he right of access is not absolute." *United States v. Moussaoui*, 205 F.R.D. 183, 186 (E.D. Va. 2002) (citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Westmoreland,* 752 F.2d at 19). "It may be tempered by a defendant's right to a fair trial, *see Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 14–15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the need to preserve the secrecy of Grand Jury proceedings, *see Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), or concerns about witness security, *see Globe Newspaper Co.,* 457 U.S. at 608–09, 102 S.Ct. 2613. Limitations on access may be necessary to 'preserve higher values.' *Press–Enterprise Co.,* 478 U.S. at 9, 106 S.Ct. 2735." *Id.*

The court was sympathetic to the interests of victims, but it concluded "the purpose of this trial is not to provide catharsis to the victims or to educate the world about the American legal system. Instead, the purpose is to determine the innocence or guilt of this defendant for the specific crimes charged in the Indictment." *Id.* at 188.

Moreover, even in the context of additional rights given to victims, the access

is not unlimited or universal.   The Crime Victims' Rights Act does not guarantee absolute access to a trial or other relief. 18 U.S.C. § 3771.   A victim can be excluded entirely from a trial if the Court determines that observing the trial would impact their testimony. 18 U.S.C. § 3771(a)(3).   And the statute provides a right to "*reasonable*, accurate, and timely notice" of hearings," to be *reasonably* heard at any public proceeding," and a "*reasonable* right to confer" with the prosecutor. 18 U.S.C. § 3771 (a)(3), (4) and (5)(emphasis added).   Even for victims, then, the rights are powerful, but not absolute.

Even the most analogous case, *United States v. Moussaoui,* does not support the argument that the statute should be interpreted to permit both universal and convenient access.   Despite the passage of a specific public law[5] in that case, the court nevertheless imposed certain limitations.   The court found that broadcast to six courthouses (to include additional space at the courthouse conducting the trial) was sufficient to accommodate all the victims who had expressed interest.   All six courthouses were located on the East Coast and the Court specifically declined to

---

5 "During fiscal year 2002 and each succeeding fiscal year, notwithstanding any provision of the Federal Rules of Criminal Procedure to the contrary, in order to permit victims of crimes associated with the terrorist acts of September 11, 2001, to watch trial proceedings in the criminal case against Zacarias Moussaoui, the trial court in that case shall order, subject to paragraph (3) and subsection (b), closed circuit televising of the trial proceedings to convenient locations the trial court determines are reasonably necessary, for viewing by those victims." 2002 SUPPLEMENTAL APPROPRIATIONS ACT FOR FURTHER RECOVERY FROM AND RESPONSE TO TERRORIST ATTACKS ON THE UNITED STATES, PL 107–206, August 2, 2002, 116 Stat 820.

include a courthouse in California.   Certainly anyone from the West Coast, the Midwest, or any part of the country other than the Northeast would have had to travel significant distance to view the proceedings.   Nevertheless, the court found just those six courthouses to be reasonably necessary to provide access.

Reasonable limits on provision of remote access to court proceedings in context of the CVRA and in complying with constitutional right to public access to judicial proceedings supports the imposition of reasonable protections and limitations on remote access in this case.

### IV. Even under the plain language of the instant statute, the Court is required to order "reasonable efforts" be made to provide access.

Here too the statute is subject to limitations.   The text of the statute itself requires only "reasonable efforts" to make access available. "Reasonable" is a limiting term, just as in the context of the right of crime victims to be "reasonably heard" at sentencing hearings under the CVRA or the broadcast of the *Moussaoui* trial to "reasonably necessary" courthouses.

Further, the statute itself says that this Court retains authority to "control the manner, circumstances, or availability of remote video or telephonic transmissions where necessary to control the courtroom or protect the integrity of court proceedings or the safety of parties, witnesses, or other participants in the proceedings."[6]   Nothing in the statutory language says that this must be applied

---

6 REMOTE ACCESS TO COURT PROCEEDINGS FOR VICTIMS OF THE 1988 BOMBING OF PAN AM FLIGHT 103 OVER LOCKERBIE, SCOTLAND, PL 118-37,

8

only to particular witnesses, topics, or phases of the trial.   Rather, this Court can establish broadcast proceedings that stop short of broadcasting the trial to every victim at a location of their choosing.

Reading the statute in its entirety, then the fact that "location of the victim" shall not be considered in context of the "reasonable efforts" required to provide remote access necessarily means that other considerations – such as feasibility of remote access and security of courtroom proceedings from outside interference – may be fully considered by the Court in determining the propriety of remote access.

Indeed, although the government argues the statute's reference to disregarding the location of the victim means that the Court must order that the trial be brought to them, the statute does not say this.   Rather, the statute says that remote video and telephonic access must be provided "without regard to the location of the victim."   The Court cannot, therefore, choose to limit access of the victims based solely on their location, but it is not required to provide access to their location either.

## V. Any substantive pretrial hearings and the trial in this matter should be broadcast only to secure, supervised locations.

As of June 6, 2024, the government reported to defense counsel that the list of victims provided is not a finalized list of those it would propose should be afforded remote access to the proceedings.   Defense counsel understands that this list may

---

January 26, 2024, 138 Stat 11.

be overbroad, both in the scope of those who meet the definition of "victim" under the statute and also as to those who may be interested in observing the proceedings. Accordingly, for the reasons below, counsel for Mr. Al-Marimi would propose that next steps to finalize the following proposed access be paused until the list is complete.

Second, this Court should order that those individuals who seek to be considered victims under the statute submit an application, as the Court did in *Moussaoui*. This would ensure that the efforts to broadcast the trial are made for those who actually intend to view them. Despite the significantly larger scope of the September 11 attack and the closer proximity of the time of the trial to the event, the Court in Moussaoui nevertheless determined that only six additional courthouse spaces were needed to provide sufficient viewing of the trial. It is quite likely that the same will be true here and far fewer individuals than those identified by the government will actually participate.

Third, this Court should order that the trial be broadcast only to secure locations. Counsel for Mr. Al-Marimi concur with the government that the Zoom proposals are sufficiently secure to provide the video feed, so long as the proceedings are broadcast to locations which can be monitored by appropriate individuals. Primarily, this should be federal courthouses. Upon review, defense counsel believe that, should broadcast be made to sixty courthouses around the United States, the overwhelming majority of the indicated victims would be within 35 miles

of a location broadcasting the trial.  Counsel recognize that this involves significantly more courthouses than were utilized in the *Moussaoui* trial.  This number could be significantly reduced however, by the reduction in the total number of victims who seek access and could be further reduced should this Court decide that a further, but still reasonably accessible courthouse would meet the requirements of the statute.

Moreover, because of the use of Zoom, the effort for any one courthouse should be significantly less.  This is in part because the nature of a Zoom broadcast means that no highly specialized equipment is necessary.  Additionally, while a courtroom could provide the seating needed, the broadcast need not take place in a courtroom.  Finally, the courtroom or designated space would merely need to be supervised by a designated monitor and would not require staffing a courtroom.

Despite these differences, counsel also recognizes that space may not be available at every courthouse and that there will be victims who are located significantly further from a courthouse.  This, of course, applies to especially to those located overseas.  In these instances, there are a significant number of additional locations the Court could consider, which would provide the same level of oversight as a federal courthouse.  These could include United States Attorneys' Offices, embassies or consulates, local offices for the Federal Bureau of Investigation, and other federal offices willing to host the victims.  It would be highly inefficient, however, to explore options for all such circumstances, until the

final list of victims is determined.

Finally, it is certainly true that the expense of the above proposal will be greater than that of the government's proposal.  But trials are routinely expensive for various reasons and that factor alone cannot override the need to "control the courtroom or protect the integrity of court proceedings or the safety of parties, witnesses, or other participants in the proceedings."[7]

With in-person viewing, this Court can establish protocols that ensure those who access the viewing sites are the same individuals who have been granted access by statute and only those individuals.  And, by preventing all recording in the courtroom or other designated location, there will be no way for anyone to record the proceedings, just as there is no way to do so in the courtroom where the trial takes place.  This will significantly reduce the risk of violations of the rule on witnesses, as there is little risk that a witness would encounter unauthorized recordings of prior testimony.  Likewise, eliminating the opportunity to record hearings or the trial also reduces the risk that members of the jury may inadvertently view recordings of witnesses or other proceedings.

As discussed previously, in order to accomplish the above, arrangements will need to be made with various courthouses and offices around the country and overseas, to include technical support, security, and access to the buildings.  The scope of this planning will turn heavily on the number of victims who are

---

7 PL 118-37, January 26, 2024, 138 Stat 11.

authorized to view the proceedings and where they are located, which is information the government alone can provide, and has not yet fully finalized. Notably, the *Moussaoui* Court determined the procedures for broadcasting the trial after collecting information about which victims would be eligible for remote viewing and had expressed interest in doing so.

Accordingly, counsel for Mr. Al-Marimi requests that the government be required to continue to update its list of the locations[8] of the individuals that meet the definition of victim under the statute who seek to view the proceedings. Once both parties and the Court have this information, final determinations – such as the number of viewing locations and the specific locations – can be determined and further details investigated and provided.

For all of the foregoing reasons, defendant respectfully requests that the Court order that the substantive pretrial proceedings and trial in this matter be broadcast by Zoom to secure locations with appropriate monitoring to ensure that only those deemed victims under the statute by this Court be permitted to view.

---

8 Undersigned counsel asks that the government provide the city, town, or general geographic location of the victim. Counsel does not seek the name, address, or other personal identifying information of any victim.

Respectfully submitted,


By Counsel,
Geremy C. Kamens,
Federal Public Defender

By: _____/s/_____
Todd M. Richman
Va. Bar #41834
Whitney E.C. Minter
Va. Bar # 47193
Assistant Federal Public Defenders
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia    22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)