UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 22-cr-392 (DLF) |
| v. | : | |
| | : | |
| ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI | : | |
| | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT UPDATE TO THE COURT REGARDING DISCOVERY AND JOINT REQUEST TO VACATE SEPTEMBER MOTIONS DEADLINES**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia hereby respectfully informs the Court of the following facts pertaining to the provision of discovery materials. Undersigned counsel for the Government and counsel for the defense jointly request that the Court vacate the motions deadlines currently set for September 2024, to permit the parties time to review the materials described below and certain materials that the Government expects to provide to defense, which are relevant to that motions deadline, as set forth below:

**STATUS OF DISCOVERY**

Consistent with the pretrial scheduling order [ECF 47], the Government has now substantially completed pretrial discovery of materials in its custody and control after making every reasonable effort. The Government's discovery productions include those described in the parties' prior Joint Updates to the Court [ECF 30, 31, 46] as well as a substantial production of additional materials on July 31, 2024.

Given that Rule 16 discovery is now substantially complete, the Government offers the following overall summary of the major categories of materials[1] that have been tendered to the defense:[2]

### A. FBI Materials

The Federal Bureau of Investigation (FBI) has been the primary U.S. law enforcement agency investigating the Pan Am Flight 103 bombing for the entirety of the investigation and consequently has compiled a massive volume of records that the Government has reviewed as part of its discovery efforts. This was a complicated undertaking because the offense took place decades before the introduction of the FBI's modern digital recordkeeping system (known as "Sentinel"). Accordingly, the FBI's case file for the Pan Am Flight 103 investigation is divided between the digital Sentinel file, which contains materials obtained or generated since approximately 2011, and prior case file(s), which comprise mostly paper documents, and date back to the opening of the investigation in December 1988. A brief summary of the Government's discovery productions from each source follows.

**Sentinel File:** As part of today's production, the Government has provided approximately 449 items, comprising roughly 3000 pages, from the FBI's digital case file.

**Prior Case Files:** The FBI's prior case files contained approximately 36,000 documents totaling approximately 250,000 pages, along with approximately 50 audio-visual files of television broadcasts and/or documentary films that were digitized from older formats, such as VHS tapes.

---

[1] This filing does not address materials covered under the Classified Information Procedures Act (CIPA); such materials are being handled according to the CIPA schedule set forth in the Court's minute order of May 2, 2024, and will be the subject of sealed filings.

[2] One hard drive with the first batch of discovery is being produced today. The remaining items are currently in the process of being copied to a hard drive for the defense. The second hard drive will be sent to defense no later than August 2, 2024.

Many of the documents were categorized into "subfiles" based on the form (*e.g.*, "incoming teletypes"), subject matter (*e.g.*, "victim ID and interviews of relatives") or place of origin (*e.g.*, "Legat [legal attaché] Paris"), but the documents were not otherwise indexed or catalogued, nor were they comprehensively marked by classification level.

Consequently, after scanning the 250,000 pages into digital form, it was necessary for the Government to undertake a manual document-by-document review of all 36,000 items to determine (1) the identity of each document; (2) its classification level; and (3) its discoverability. This process involved the participation of 30 dedicated FBI personnel who worked under the supervision of case-team attorneys to conduct an initial review of each document. All determinations of whether any document was discoverable were made by one or more of the case-team attorneys. If a discoverable document was determined to be classified, it underwent an expedited classification review and if appropriate, expedited declassification process, according to the FBI's internal procedures.[3]

The review process revealed that many of the prior case file materials were non-substantive, duplicative, or otherwise not subject to discovery. Unlike a modern digital case file, the prior case files were not organized to segregate substantive investigative reports from other materials such as routine correspondence, work product, and administrative records (travel vouchers, personnel assignments, and the like). Moreover, the practical reality of paper recordkeeping resulted in substantial duplication.[4] For those reasons, the number of unique

---

[3]   As noted below, a small number of items are still pending declassification.

[4]   For example, when one FBI office sent a cable to another FBI office, both offices would typically retain a copy, with both the "sent" and "received" versions ultimately making their way into the overall case file. The government made reasonable efforts to manually remove duplicates when they were conspicuous; however, to ensure that that discoverable material was not

discoverable documents is relatively small compared to the overall size of the file. The government's review of the FBI paper case file resulted in the production of approximately 7,760 items totaling roughly 44,250 pages.

The documents have been produced to the defense in a load-ready, text-searchable[5] format. The vast majority of the items have been assigned a descriptive title (e.g., "Photos of debris from Pan Am 103 crash site") that was manually created by one of the reviewers. The Government has undertaken the effort to convert these prior casefiles into a keyword-searchable, load-ready format The Government remains available to respond to questions and requests from the defense as they conduct their review of the materials, and indeed the Government has worked with the defense, at the defense's request, to attempt to provide information to aid the defense's review.  That process and dialogue are ongoing between the parties and has thus far been productive.

### B.  Materials from Scotland

The bombing of Pan Am Flight 103 was an attack on a U.S. aircraft that occurred in Scottish airspace and in the physical territory of Scotland. The attack simultaneously took place in the special aircraft jurisdiction of the United States against civil aircraft of the United States operating in foreign and interstate commerce. Accordingly, the investigation was conducted principally by authorities of the United States and Scotland. As the Court is aware, two of the defendant's alleged co-conspirators, Abdel Baset Ali Al-Megrahi and Lamin Khalifa Fhimah, were ultimately charged and tried under Scottish law for the bombing of Pan Am Flight 103 at Camp

---

mistakenly omitted, the government erred on the side of producing more potential duplicates rather than fewer.

[5]     The text-searching capability is not perfect because some of the documents were faded or had other legibility issues that interfered with the software's text-recognition capabilities. The government has nonetheless found text-searching to be a useful method of reviewing the documents, and has endeavored to compensate for any shortcomings by manually assigning a descriptive title to each document (which titles are themselves searchable).

Zeist, in the Netherlands, from 2000-2001. In connection with those proceedings and with their own ongoing investigation, the Scottish authorities collected and catalogued a tremendous volume of materials, many of which they have shared with the prosecution team in this case for use in this prosecution. The prosecution team, in turn, has provided the vast majority of those materials to defense in discovery.

The materials from Scotland are organized according to Scottish practice. Each item is assigned a unique serial number known as a "LURN" ("Lockerbie Unique Reference Number"), and each is categorized based on (1) whether it is an "Indictment" or a "Non-Indictment" item; and (2) the type of product. "Indictment" materials are those pieces of evidence that the Scottish authorities submitted in support of the charges against Al-Megrahi and Fhimah. "Non-Indictment" materials are all other items. The types of items include:

- **Statements:** A witness statement that is reduced to a typed, first-person narrative. The Government has produced to defense the overwhelming majority of Statements associated with the case (including Non-Indictment Statements), totaling approximately 15,000 items that span roughly 60,000 pages.

- **Productions:** A production is a physical item, which can be documentary in nature. They are similar to exhibits in the U.S. system.

- **Documents:** Documents are documentary items that were collected during the investigation. They can include written statements that were taken from non-Police Scotland sources -- for example, an FBI 302 that was shared with Police Scotland during the investigation might appear as a Document.

- **Actions:** Records of steps that Police Scotland took as part of the investigation

- **Messages and Transmissions:** Records of Scottish Police communications, internal and external.

All items in the above categories are comprehensively indexed in documents called "*Disclosure Schedules*," which list every LURN in sequential order and provide a brief

description. With the permission of the Scottish authorities, the Government has produced to the defense almost all of the Disclosure Schedules for all items collected or generated by the Scottish authorities since the beginning of the investigation, and they include items of both Scottish and non-Scottish origin. With respect to Indictment Productions (the entirety of which the Government either has produced to defense or intends to produce once the originating countries grant permission),[6] the Disclosure Schedules will help the defense understand what has been produced and promote the efficiency and effectiveness of the review process. With respect to Non-Indictment Productions, the Disclosure Schedules will apprise the defense of what items exist. We have invited defense to request the production of any item that appears on a Non-Indictment Disclosure Schedule.

The Government has also collected and produced materials associated with the judicial proceedings in the Scottish case against Al-Megrahi and Fhimah, which involved factual allegations that largely mirror those in the instant case. *See generally* ECF 1-1 at 18-19, 24-25 (complaint affidavit summarizing evidence of Al-Megrahi and Fhimah's involvement, including defendant's confession). Those materials include the following:

- Transcripts and exhibits from the trial;

- The trial court's 62-page opinion evaluating the evidence for and against the defendants' guilt, including a discussion of various defense theories identifying alleged alternative perpetrators;

- A 42-page list of persons whom Al-Megrahi and Fhimah had identified as potential defense witnesses in their trial;

- Two documents summarizing the findings of the Scottish Criminal Cases Review Commission (SCCRC), an independent entity under Scottish law

---

[6] Three countries have not yet granted permission for the Scottish authorities to share the Indictment Productions that originated in those countries with the United States. A fourth only recently granted such permission, but not in time for that country's indictment productions to be provided to the defense with today's production.

tasked with reviewing convictions to investigate potential miscarriages of justice. In 2007, the SCCRC issued a Statement of Reasons (SOR) referring Al-Megrahi's conviction to the High Court for appellate review, which appeal was subsequently abandoned. In 2020, the SCCRC issued an SOR again referring the case to the High Court, which appeal was heard and refused. The Government has produced the 2007 SOR and the executive summary to the 2020 SOR, along with indices of the materials relied upon for each SOR.

### C. Materials from Other Foreign Governments

Given the international scope of the offense and investigation, the evidence includes a substantial volume of materials from other countries. Some of these materials were obtained by the United States via Mutual Legal Assistance (MLA) request or letters rogatory, and others were obtained by Scottish authorities and then provided to the U.S. prosecution team with permission of the originating country. Regardless of how they were obtained, all foreign materials produced thus far to the defense are authorized for use in this case consistent with their status under the protective order.[7] They include materials from the following countries:

- **Germany:** Approximately 711 items relating to, among other topics: (1) the handling of checked baggage at Frankfurt Airport, where the Government alleges the bomb was transferred onto a feeder flight for Pan Am 103; (2) an investigation (known as "Autumn Leaves") by German authorities into a Popular Front for the Liberation of Palestine – General Command (PFLP-GC) cell that has been suggested as an alternate perpetrator of the Pan Am 103 bombing; and (3) the bombing of the La Belle Discotheque in 1986, about which the government will seek to introduce evidence under Fed. R. Evid. 404(b).[8]

---

[7] As discussed below, there exist other foreign-government materials that the Government has not yet produced because it is still confirming the requisite permissions.

[8] As of March 2024, the Government expected to produce translations for these documents by July 31, 2024. ECF 46, ¶. 13. The Government has determined that a large number of the documents produced pursuant to MLAT are unlikely to be useful to the defense or Government in preparation for trial, and has therefore not incurred the substantial cost of translating them. The Government is producing many German-language documents in their native language to the defense today, and it will provide translations of those documents that it intends to introduce at trial, or that it believes may be material to the preparation of the defense, on a rolling basis as they become available.

- **Malta**: Approximately 723 items relating to, among other topics, Luqa Airport, which the government contends was the location at which the bomb was first placed on board an aircraft, travel records, and the conspirators' activities in Malta including the purchase of clothing used to stuff the bomb suitcase.

- **Sweden**: Approximately 45 items relating to, among other topics, Mohammed Abu Talb, who has been suggested as an alternative perpetrator of the Pan Am 103 bombing.

- **Denmark**: 5 items relating to a person associated with Mohammed Abu Talb.

- **Czech Republic**: 22 items relating to, among other topics, Al-Megrahi's travel.

- **Uruguay**: 4 items relating to the transit of persons and goods through Uruguay.

- **Senegal**: 16 items relating to the February 1988 seizure from Libyan operatives of terror implements including an MST-13 timer similar to the one used to destroy Pan Am 103.

- **France:** 8 items relating to (1) the identification of luggage remains; (2) analysis of the MST-13 timer; and (3) the Senegal episode noted above.

- **Ireland:** 1 item relating to airline records.

- **Italy:** 2 items relating to Italian radio/television broadcast schedules.

- **San Marino:** 2 items relating to the identification of luggage remains.

- **Belgium:** 2 items relating to the identification of luggage remains.

If and when the Government receives any additional discoverable materials pursuant to an MLA request to a foreign government, the government will promptly produce the responsive materials to the defense.

### D. Alternative Theories

As referenced above, various alternative perpetrators of the Pan Am 103 bombing have been suggested over the years in the media and otherwise. The government has endeavored to make fulsome disclosures of all information that would tend to support any of these alternate theories, including information that is publicly available. As part of its discovery production of August 25, 2023, the government provided a letter summarizing the major alternate theories and providing citations to or copies of related documentation. Those alleged alternative perpetrators noted in the letter are (1) the PFLP-GC, (2) Mohammed Abu Talb; (3) the U.S. government; (4) the Abu Nidal terror organization; and (5) Iran. Additional information concerning these theories, and others, is contained within the Government's production of FBI materials, as well as its previous productions of foreign-origin materials. The Government also expects that future productions will contain such materials.

### E. Future Productions

The Government appreciates that it is under a continuing obligation to provide discoverable materials and anticipates making limited additional productions of materials that it does not now possess or that it is not now in a position to disclose. The parties have met and conferred about the below categories, and the government has agreed to provide regular updates to the defense on any future productions, which will involve materials in the following categories:

- Materials that, although within the physical possession of the prosecution team, are not within the Government's custody and control. These include materials belonging to U.S. government agencies other than the FBI and materials belonging to foreign governments. Before producing such materials or otherwise using them in connection with a judicial proceeding, the Government must confirm whether the requisite permissions have been granted by the various "owner" agencies and countries and, if not, obtain such authorization. That process is ongoing, and the Government intends to keep defense counsel apprised of its progress and to produce any discoverable materials promptly as soon as it is authorized.

- A limited quantity of items in the FBI's holdings that are still undergoing internal FBI review for declassification.

- Materials that are newly obtained, including materials provided by foreign governments in response to MLA requests that are now or will soon be pending.

- Materials generated in the course of trial preparations in Scotland and the United States, which will typically be produced as *Jencks* or *Giglio*.[9]

- Disclosures pertaining to expert witnesses, which the parties will make according to the existing pretrial schedule.

- Additional disclosures relating to the bombing of the LaBelle Discotheque, which took place in West Berlin, West Germany, on April 5, 1986, about which the government intends to seek to introduce evidence pursuant to Fed. R. Evid. 404(b). The Government will provide further notice to the defense by August 21, 2024, and will provide additional discovery materials in or around September 2024.

## REQUEST TO VACATE SEPTEMBER 2024 MOTIONS DEADLINES

The pretrial scheduling order in this case contemplates that dates may need to be modified and directs the parties to meet and confer regarding any dates that they believe they will be unable to meet. ECF 47 at 2. The parties have met and conferred regarding the motions presently due to be filed in September 2024, which include motions to suppress the defendant's statement, to challenge venue, or other dispositive motions. The Government has made representations to the defense about the scope and breadth about what will be provided in today's disclosures, as outlined in this joint filing, as well as information that the Government expects to provide in the future that may affect one or more of the categories of motions due by defense on September 4, 2024. Based on those representations, the parties agree that vacating the September motions deadlines will serve

---

[9] The Government is also in possession of witness preparation materials generated by the Scottish trial team. Those items will be reviewed for *Jencks*, *Giglio* and any other information material to the preparation of the defense, and will disclose them appropriately.

10

judicial economy by permitting the parties to make full use of the information being disclosed today, as well as those disclosures that the Government expects to make in the future. Accordingly, the parties request that the Court vacate the motions schedule outlined in ECF 47, ¶ 5. The parties propose to file a new proposed schedule for the types of motions contemplated in ECF 47, ¶ 5, no later than September 17, 2024.

## **CONCLUSION**

The parties continue to work diligently toward the May 2025 trial date, and they continue to work productively together to address discovery and other issues amicably where possible. Discovery is now substantially complete, and any remaining items will be produced with sufficient time for the defense to make full use of the materials at trial and in any pretrial proceeding. The parties fully expect to work productively to attempt to resolve any issues as they arise, and for those that we cannot resolve, we will seek timely intervention from the Court. Other than the jointly requested change to the motions schedule, the parties agree that the Court should leave in place the pretrial scheduling order [ECF 47] including the May 12, 2025, trial date, although counsel for Mr. Al-Marimi will be unable to make a full determination of the viability of the existing trial date until all discovery has been received and reviewed.

.

                                Respectfully submitted,

                                MATTHEW M. GRAVES
                                UNITED STATES ATTORNEY
                                D.C. Bar No. 481052

| */s/ Whitney C. Minter* | */s/ Erik M. Kenerson* |
|---|---|
| WHITNEY C. MINTER (VA Bar No. 47193) | ERIK M. KENERSON (OH Bar No. 82960) |
| TODD RICHMAN (VA Bar No. 41834) | BRITTANY KEIL (D.C. Bar No. 500054) |
| Assistant Federal Public Defenders | Assistant United States Attorneys |
| Office of the Federal Public Defender | |

<div style="display:flex">
<div>
1650 King Street, Suite 500  
Alexandria, Virginia 22314  
Whitney_minter@fd.org  
(703) 600-0800 (main line)
</div>
<div>
JEROME J. TERESINSKI (PA Bar No. 66235)  
Special Assistant United States Attorney  
National Security Section  
United States Attorney's Office  
601 D Street NW  
Washington, D.C. 20530  
(202) 252-7201  
Erik.Kenerson@usdoj.gov  

KATHLEEN CAMPBELL (MD Bar No. 9812170031)  
JENNIFER BURKE (MD Bar No. 9706250061)  
Trial Attorneys  
Counter Terrorism Section  
National Security Division  
950 Pennsylvania Avenue NW  
Washington, D.C. 20530
</div>
</div>