# DECLARATION OF BENJAMIN B. SHANNON

## VICTIM OUTREACH STRATEGY AND SUPPORT PROGRAM MANAGER FEDERAL BUREAU OF INVESTIGATION (FBI) – VICTIM SERVICES DIVISION

## EXHIBIT 1

1. I, Benjamin B. Shannon, the Victim Outreach Strategy and Support Program Manager for the Federal Bureau of Investigation ("FBI") Victim Services Division ("VSD"), am responsible for the overall outreach and identification of victims in large scale and mass victimization investigations at the Headquarters level of the FBI throughout the United States and throughout the global reach where U.S. citizens are victims of federal crime. My primary responsibility is to assist victims of crime in federal criminal cases and assist to advise them of their rights as victims where the FBI has been the investigating agency, including in international terrorism cases.

2. I have assisted prosecutors and FBI agents in the case of the *United States v. Abu Agila Mohammed Mas'ud Kheir Al-Marimi* (DC-22-cr-392-DLF), the mid-air terrorism bombing of Pan Am Flight 103 on December 21, 1988, where 270 individuals were killed (190 U.S. nationals, 43 from the United Kingdom, 11 from Scotland, and victims from 19 other countries). Even though the bombing occurred over 35 years ago, the FBI and the U.S. Department of Justice have never stopped seeking justice for all the victims in this case.

3. Pursuant to my role as Victim Outreach Strategy and Support Program Manager for FBI VSD, and in working on this case, I have been made aware of the requirements of Public Law No. 118-37, passed by Congress, that are specific to the Pan Am 103 bombing case. I understand that this law requires the Court to make "reasonable efforts" to provide remote video and telephonic access to the trial for the victims of the bombing of Pan Am Flight 103, and also provides that the Court has discretion in

controlling the manner, circumstances, or availability of remote video or telephonic transmissions where necessary to control the courtroom or protect the integrity of court proceedings or the safety of parties, witnesses, or other participants in the proceedings. I was also made aware that the law requires the Court to make whatever remote access it provides available "without regard to the location of the victim" of the crimes associated with the bombing of Pan Am Flight 103.

4. In reference to that law, I am aware that the Court issued a June 18, 2024 Minute Order ordering the government to gather information to understand the best and most reasonable way to implement that law. That Order directed the U.S. government to "finalize its list of individuals who meet the statutory definition of victim [under P.L. 118-37] and who wish to have access to court proceedings," and "provide the Court with the total number of victims and geographic locations for each victim." In response to the Court's mandate, the government reviewed existing victim information contained in the Victim Notification System ("VNS").[1] VNS is the primary electronic system for retaining victim data in criminal cases, including information such as an individual's name and e-mail address. As a

---

[1] VNS provides victims of federal crime with information regarding their case as it proceeds through the criminal justice system. The agencies participating in VNS include the Federal Bureau of Investigation ("FBI"), U.S. Attorney's Offices ("USAO's"), and other Department of Justice components. VNS is the primary electronic system for retaining victim data in all criminal cases. The project is funded through the Crime Victims Fund managed by the Office for Victims of Crime. The Executive Office for the United States Attorneys is the lead agency for this project.

**DECLARATION OF BENJAMIN B. SHANNON**

**VICTIM OUTREACH STRATEGY AND SUPPORT PROGRAM MANAGER**
**FEDERAL BUREAU OF INVESTIGATION (FBI) – VICTIM SERVICES DIVISION**

**EXHIBIT 1**

system, VNS facilitates statutorily required victim notification and it contains the type of information needed to do that, however, the case file is where the victims are indexed, and VNS does not contain enough information for a user (in this case) to determine whether an individual would qualify as a "victim" under the broadly phrased statutory definition found in Public Law No. 118-37(a)(1)(B), 138 Stat.11. In a case such as this where victims may have submitted their information to the FBI many years ago, VNS does not necessarily provide accurate information concerning an individual's current geographic location. Thus, the VNS database proved to be an inadequate source for compiling the information needed by this Court.

**Victim Access Questionnaire ("VAQ")**

5. The trial team determined that it was necessary to collaborate with FBI-VSD to determine an accurate way to gather the information needed by the Court. The FBI-VSD and the trial team collaborated to design a *"Victim Access Questionnaire"* (VAQ) for use in obtaining the requisite information. ***See also*** **Exhibit 1-1** "VAQ" (PDF Copy).

6. The VAQ was designed to enable the government to gather information from victim-respondents beyond the capabilities of the VNS, as it requested each victim's connection to the case, their Personal Identification Information (PII) (*e.g.*, full names, dates of birth, address, relationship to the decedents, full street addresses, zip codes, city, state, zip code), their actual geographic location, and information concerning the

existence of any medical and/or logistical hardships that might impair their ability to access court proceedings in Washington, D.C. or at remote fixed locations.

### U.S. Government Outreach to the Victims

7. The trial team and FBI-VSD undertook the following outreach efforts concerning victims: (1) posted messages to complete the VAQ on the FBI's case website; (2) sent repeated messages via VNS encouraging victims to fill out the VAQ; (3) asked victims, victim groups, and the Scottish authorities to urge other victims to complete the VAQ; and (4) held two virtual webinars for victims to explain the definition of who qualified as a "victim" under PL 118-37 and to encourage victims to sign up for VNS messages and to fill out the VAQ.

8. In addition to the government's efforts, I am aware that the British Broadcasting Company (BBC) published a story informing the public about the new U.S. law specific to this case, providing access to victim family members in the United Kingdom and elsewhere, and conveying the need to be identified as a victim by law enforcement and prosecutors, and to complete a victim questionnaire in time to ensure that they had access to the Court's proceedings.

### VAQ Data Obtained

9. The accumulated VAQ data is attached to this Declaration, referred to as **Exhibit 1-2, "Accumulated Victim Data,"** and incorporated by reference. A total of **417** respondents responded to some or all of the VAQ questions. **244** respondents from 29

**DECLARATION OF BENJAMIN B. SHANNON**

**VICTIM OUTREACH STRATEGY AND SUPPORT PROGRAM MANAGER**
**FEDERAL BUREAU OF INVESTIGATION (FBI) – VICTIM SERVICES DIVISION**

**EXHIBIT 1**

states (and the District of Columbia) in the United States, and 173 respondents from nine foreign countries dispersed geographically around the globe.

10. The VAQ data will continue to be collected as more victims continue to respond. The information below is summarized as of October 21, 2024.

**VAQ and the Results**

11. In reviewing the data contained in **Exhibit 1-2**, the initial threshold question of geographic location showed the following:

a. **173** victim-respondents were from nine foreign countries as follows:

| | |
|---|---|
| United Kingdom | 164 (to include Scotland and Great Britian) |
| Spain | 1 |
| The Netherlands | 2 |
| Ireland | 1 |
| Czech Republic | 1 |
| Mozambique | 1 |
| Jamaica | 1 |
| Australia | 1 |
| Canada | 1 |

These results are depicted visually in **Exhibit 1-3,** "Interactive Google Map of Victims Globally and Throughout the United States."

b. 244 victim-respondents were from the United States, from 29 different states and the District of Columbia, as follows:

| | |
|---|---|
| Arizona | 4 |
| California | 28 |
| Colorado | 3 |
| Connecticut | 9 |
| District of Columbia | 2 |
| Florida | 11 |
| Georgia | 4 |

**DECLARATION OF BENJAMIN B. SHANNON**

**VICTIM OUTREACH STRATEGY AND SUPPORT PROGRAM MANAGER**
**FEDERAL BUREAU OF INVESTIGATION (FBI) – VICTIM SERVICES DIVISION**

**EXHIBIT 1**

| | |
|---|---|
| Hawaii | 3 |
| Illinois | 6 |
| Massachusetts | 20 |
| Maryland | 6 |
| Michigan | 16 |
| Minnesota | 3 |
| Missouri | 1 |
| North Carolina | 3 |
| New Hampshire | 4 |
| New Jersey | 26 |
| New York | 38 |
| Ohio | 6 |
| Oregon | 1 |
| Pennsylvania | 19 |
| Rhode Island | 2 |
| South Carolina | 4 |
| Tennessee | 5 |
| Texas | 5 |
| Utah | 1 |
| Virginia | 5 |
| Washington | 7 |
| Wisconsin | 1 |

These results are depicted visually in **Exhibit 1-3,** "Interactive Google Map of Victims Globally and Throughout the United States."

**Majority of Victims Prefer Video/Audio Access to Trial Proceedings Via Virtual Weblink/App**

12. In response to Question number 3 (**Exhibit 1-2)** – i.e., whether the victims would be interested in attending the trial and/or other court proceedings in Washington, DC in May of 2025 in person – of those who responded to this question, 143 victims indicated, "Yes" that they would like to attend the trial in person and 181 responded "No."

13. In response to Question number 4 (**Exhibit 1-2**) – i.e., if a weblink or application (App) was made available to them to observe the trial and/or other court proceedings, would they be interested in observing the trial and/or those proceedings virtually (*i.e.*, not in court) – the results from 325 individuals who responded were as follows.

a. 305 indicated "Yes" that they would be interested in virtually watching and listening to the trial via a weblink or app provided by the Court.

b. 20 responded "No."

**Audio Access Alone**

14. In response to Question number 5 (**Exhibit 1-2**) – i.e., whether, if a toll-free number, weblink or app was made available to listen to the trial and/or other court proceeding, they would be interested in listening to the trial and/or the other proceedings virtually – the results from the 323 individuals who responded were as follows:

a. 267 victims responded "Yes" that they would listen into the trial and/or the proceedings virtually if given that option.

b. 56 indicated "No" to this option.

15. In Question number 6 (**Exhibit 1-2**), victims were asked specifically about "fixed site locations." Specifically, they were asked that if the trial and/or other court proceedings were made available for remote viewing at a fixed location, such as a courthouse, embassy, or a police station within 50 miles (80 km) of their home, whether

**DECLARATION OF BENJAMIN B. SHANNON**

**VICTIM OUTREACH STRATEGY AND SUPPORT PROGRAM MANAGER**
**FEDERAL BUREAU OF INVESTIGATION (FBI) – VICTIM SERVICES DIVISION**

**EXHIBIT 1**

they would be interested in traveling to that location. **165** respondents answered "No" that they would not attend a fixed site location.

17. For the Court's reference, a Google interactive map (**Exhibit 1-3)** displays the geographic location of each victim in the United States and globally (in pink), along with the superimposed locations (in white) of U.S. Courthouses and U.S. Embassies and U.S. Consulates world-wide.

18. VAQ Question number 7 (**Exhibit 1-2**) gathered information about whether victims have physical/medical hardships or limitations that would make it difficult for the victims to travel to/from a courthouse, embassy, or police station to watch a closed-circuit broadcast of the trial and/or other court proceedings. Respondents were invited, but not required, to give a narrative answer. Various respondents indicated that they would consider travel to a fixed site to be a medical or physical hardship. They provided written explanations for their hardship reasons. *See* **Exhibit 1-4.**

19. VAQ Question number 8 (**Exhibit 1-2**) gathered information about whether victims have other logistical hardship limitations that would hinder their ability to travel to a fixed-site location to attend the proceedings in this case. Respondents were invited, but not required, to give a narrative answer. Various respondents indicated that they would have a hardship of some type. They provided written responses and reasons explaining their hardships. *See* **Exhibit 1-5.**

20. I provide this information to assist the Court in making its reasonableness determination concerning victim access in the above-referenced case. I make these

representations to the best of my ability, based on my personal knowledge and on information that has been relayed to me by other victim services professionals and case participants.

I declare under penalty of perjury that the foregoing is true and correct.

**BENJAMIN B. SHANNON**

Executed on: 10/23/2024
Date