**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| **Defendant.** | : | |

**GOVERNMENT MOTION FOR CLARIFICATION REGARDING VICTIM ACCESS TO COURT PROCEEDINGS AND REQUEST FOR ADDITIONAL TIME TO FILE ITS REASONABLE AND SPECIFIC IMPLEMENTATION PROPOSAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia (hereinafter "the government"), respectfully seeks clarification of the Court's December 23, 2024, Memorandum Opinion and Order (Docs. 82 & 83) regarding the implementation of Public Law 118-37, 138 STAT. 11 STAT (2024) ("*Remote Access to Court Proceedings for Victims of the 1988 Bombing of Pan Am Flight 103 Over Lockerbie, Scotland,*" hereinafter, "the Act"). That Order required the government to provide on or before February 21, 2025, a "reasonable and specific implementation proposal" for handling the video and audio access for victims in this case that is consistent with the Court's Memorandum Opinion (Doc. 83 at pp. 24-25).

The government has worked diligently to craft a reasonable and specific implementation proposal and has identified four specific areas where it seeks additional clarification and guidance from the Court, as discussed in further detail below, to be certain that its proposal effectuates the Court's specific intent. First, the government seeks clarification from the Court regarding the locations it will authorize as "designated secure viewing locations" at which victims will be

permitted to view evidentiary and trial proceedings. Second, the government seeks clarification regarding the technical means by which video and audio of Court proceedings will be made available for both non-evidentiary and evidentiary proceedings. Third, and relatedly, the government seeks clarification from the Court on whether it will permit trial and evidentiary proceedings to be made available on a time-delayed basis to victims who reside outside the Eastern time zone. Fourth, the government asks the Court to clarify that closing arguments and the rendering of the jury's verdict are non-evidentiary proceedings, and to authorize those limited portions of the trial to be made available to duly identified and verified victims under the safeguards required by the Court in the same manner as other, non-evidentiary, non-testimonial proceedings.

The Court's clarification of these four issues will meaningfully impact the government's implementation proposal. The government respectfully suggests that, once the Court has provided additional guidance, it will require an additional 30 days to finalize a "reasonable and specific implementation proposal." The government has conferred with counsel for the defendant on its request for additional time, and counsel does not oppose.

## I. Designated Secure Viewing Locations

The Court has ordered the government to "ensure[ ] that evidentiary and trial proceedings are made accessible to identified victims (a) at courthouses across the United States and (b) at secure locations outside the United States, such as U.S. embassies" (Doc. 82 at 24). Simply put, the prosecution team in this case does not have access to or control over U.S. courthouses or U.S. embassies. The prosecution team does have the ability to establish designated secure viewing locations in federal government buildings inside the United States, and U.S. or foreign government buildings outside of the United States, in a manner that we submit will more than sufficiently

mitigate the risks to the integrity of the proceedings set forth by the Court (*see* Doc. 82 at 18-24). The government thus seeks clarification on whether the Court would authorize other locations, *i.e.* federal government buildings inside the United States,[1] and U.S. or foreign government buildings outside of the United States, to serve as designated secure viewing locations, as set forth further below.

*A. Designated Secure Viewing Facilities Inside the United States*

The government asks the Court to authorize the use of secure government facilities, such as Federal Bureau of Investigation (FBI) and United States Attorney's Office (USAO) buildings, for provision of access to evidentiary and trial proceedings to identified victims inside the United States. FBI and USAO buildings inside the United States are secure, access-restricted facilities. Like U.S. courthouses, members of the public entering those buildings are required to provide identification and are screened for weapons and contraband prior to being admitted. Unlike U.S. courthouses, which are open to the public, access to FBI and USAO buildings are limited to those individuals who have been previously determined to require access. In this matter, access would be limited to those victims who have previously been identified and authenticated, in accordance with the Court's Order (Doc. 82 at 24-25). The use of cell phones, electronic devices, and recording devices is restricted and/or prohibited within FBI and USAO buildings, and such facilities provide

[1] The Court's Memorandum Opinion suggests that U.S. courthouses could satisfy this requirement, but access to such facilities is beyond the prosecution team's control. The government recognizes that the Court, as a member of the Judicial branch, may have the ability to gain access to other U.S. courthouses through the Executive Office of the United States Courts. Should the Court elect to proceed in this fashion, the government assesses that its victim advocates could provide services to victims within those spaces, as they would traditionally do in any criminal case. The government is not confident, though, that it would be permitted to install Executive branch personnel to act as "U.S. monitors" to assist with the implementation of the Court's requirements within spaces controlled by a coordinate branch of government.

individual lockboxes for members of the public to secure their devices.[2] The government will provide dedicated U.S. government personnel to act as trained monitors to supervise victims within FBI and USAO buildings. Those dedicated U.S. government personnel will be trained, in accordance with this Court's Order (*id.* at 25), will be subject to the Court's contempt power, and will complete sworn certifications acknowledging their obligations to restrict access to identifiable victims, and enforce the Court's orders.[3]

The government submits that this approach is the most "reasonable, efficient, and cost-effective." (*id.* at 25). First, the prosecution team (including the leadership of the Department of Justice and the FBI) has access to and control over FBI and USAO buildings. Second, FBI and USAO buildings are located throughout the United States and would provide efficient access to victims who wish to view evidentiary proceedings. Third, to the extent that this proposal contemplates using existing physical resources, and existing U.S. government personnel, it is cost-efficient.

*B. Designated Secure Viewing Facilities Outside the United States*

The government asks the Court to authorize the use of secure foreign government facilities, as opposed to U.S. embassies, for provision of access to evidentiary and trial proceedings to identified victims outside the United States. The government has explored the possible use of U.S.

---

[2] Several victims have expressed concern that prohibiting the use of cell phones may negatively impact victims who use certain types of hearing assistance devices because many such devices depend on a person's cell phone for operation and control. The government is exploring ways to overcome this concern, including whether monitors could take effective steps to ensure that recording or broadcasting abilities on cell phones were disabled during the viewing of evidentiary proceedings.

[3] The government's preliminary proposal is to provide two trained U.S. monitors and one victim advocate for every ten victims at each designated secure viewing location inside the United States.

embassies and consulates with Department of State personnel and has learned that such facilities lack both the physical space and personnel needed to serve as a secure viewing facility. By contrast, working with our foreign government counterparts, the government has successfully identified foreign government facilities that would sufficiently mitigate the risks to the integrity of the proceedings set forth by the Court (*id.* at 18-24).[4]

By way of example, our Scottish counterparts have identified three potential facilities that we could use to provide victim access to evidentiary proceedings: (1) a Scottish police station; (2) a Scottish Courthouse; and (3) an office of the Crown Office and Procurator Fiscal Service. Like FBI and USAO buildings inside the United States, these Scottish law enforcement and judicial locations are secure, access-restricted facilities. Individuals entering these locations are required to provide identification and are screened for weapons and contraband prior to being admitted. The government continues to work with other foreign counterparts to identify appropriate locations for secure viewing sites; guidance from the Court as to whether non-U.S. embassies would satisfy the Court's intent will help guide these efforts.

The government will provide dedicated U.S. government personnel to act as trained monitors to supervise victims in foreign secure viewing locations.[5] U.S. government personnel will be responsible for ensuring that only identified victims have access to the secure viewing locations, and for prohibiting the use of cell phones, electronic devices, and recording devices to record or broadcast the proceedings. Those dedicated U.S. government personnel will be trained,

---

[4] Should the prosecution team be unable to secure appropriate space in foreign government facilities, we will explore the use of other U.S. government facilities, such as U.S. military installations.

[5] The government notes that it expects that foreign governments who provide access to their government facilities will likely also require that foreign government personnel be present to monitor the secure viewing location.

in accordance with this Court's Order (*id.* at 25), will be subject to the Court's contempt power, and will complete sworn certifications acknowledging their obligations to restrict access to identifiable victims and enforce the Court's orders.

The government submits that this approach is the most "reasonable, efficient, and cost-effective manner" (*id.* at 25). First, it is reasonable to use existing foreign government building to provide access to foreign victims where such buildings are sufficiently secure. Second, it is more efficient to provide access to foreign victims in their home location. The Court's requirement that the government provide U.S. monitors to supervise victim access to proceedings outside the United States will require significant resources to implement. The government anticipates the need to seek and/or identify a dedicated funding stream to support this effort but does not believe that this is an insurmountable obstacle.

**II. Use of Zoom for Government to Provide Access to Proceedings**

While the Court's Memorandum Opinion expressly authorizes the use of "Zoom" for the provision of non-evidentiary proceedings (*id.* at 18), the Court also references the use of "approved telephone lines" (*id.*). The Court's Order is quiet as to the means by which evidentiary and trial proceedings will be broadcast to designated secure viewing locations, though the Court notes that the defendant proposed that "the Court designate secure remote viewing sites – such as federal Courthouses, United States embassies or consulates, or other federal offices – where victims can observe the Zoom transmission in-person, supervised by designated government personnel" (*id.* at 4).

The government has interpreted the Court's order to require the government to implement adequate safeguards to mitigate the risks to the integrity of the proceedings, while providing victims "throughout this country and around the world with unprecedented access to court

proceedings" (*id.* at 24). The government seeks clarification from the Court that the means by which such access will be provided is through the Zoom for Government (ZFG) platform. The ZFG platform is controlled and administered by District Court personnel. The government's understanding, in coordination with District Court personnel, is that the ZFG platform is the system that is used to provide both audio and visual access to courtroom proceedings to authorized individuals, whether such proceedings are made available over the internet or using a call-in number, and whether such proceedings are made available in audio and/or visual format. As explained in the government's prior pleadings and a prior declaration by ZFG officials, ZFG is reliable and secure, and has extensive safeguards to ensure the integrity of the broadcast process is not compromised. *See* Declaration of Josh Parecki, Zoom Chief Compliance Officer, Head of Trust and Safety, dated May 31, 2024 (ECF, 51, 51.1), and incorporating previous pleadings on this topic, Docs. 51, 54, and 68.

Clarifying that the ZFG platform is the mechanism by which the Court intends for proceedings to be made available at designated secure viewing sites will assist the government in developing a specific and reasonable implantation plan.[6]

## III. Use of Zoom for Government to Provide Time-Delayed Access to Proceedings

The government anticipates that trial in this case will take place in the Eastern time zone, during sessions held Monday through Friday, from 9am through 5pm EST. These times will not pose a problem for those victims and U.S. monitors viewing the proceedings at designated secure

---

[6] Zoom for Government is not currently authorized on FBI networks, with limited exceptions. The government is working with the FBI to assess the viability of expanding access to designated secure viewing sites in FBI buildings. In the alternative, the government will need to procure portable viewing equipment for use in FBI buildings. The government views this implementation problem to be surmountable.

viewing sites in the Eastern and Central times zones. However, individuals watching or administering secure viewing sites in other time zones are likely to encounter significant issues. *See* Doc. 68 at pp. 10-11, discussing and providing examples of the difficulties posed in administering remote viewing sites across multiple time zones. Of particular concern is the significant number of victims who reside in Scotland, where the debris from the explosion fell, killing eleven people on the ground, injuring many more, causing several fires, and damaging buildings and other property. Simultaneously viewing proceedings that take place between 9am and 5pm in Washington, D.C. (EST), would require those victims and monitoring personnel to be present at a designated secure viewing location from 3pm to 11pm local time.

The government has discussed the challenges associated with the different time-zone problems with ZFG experts who have suggested that the Court could use the ZFG platform to digitally record each day of trial proceedings, which could then be made available by the Court via the ZFG platform to designated secure viewing locations for broadcast in other time zones during normal business hours in those time zones. By way of example, Court personnel could use the ZFG digital recording capability to record "Day 1" of the trial, which the Court could release to be played via ZFG at designated secure viewing locations the next day in Scotland from 9am to 5pm local time, while "Day 2" of the trial was taking place and being digitally recorded on the ZFG platform by the Court in the District of Columbia. Court personnel would have complete control over access to these digital recorded proceedings and delete them after a 48-hour window, which would permit designated secure viewing locations in other time zones to broadcast the proceedings during normal business hours. ZFG experts have assured the government that this process is straightforward, and that the digital recordings remain solely within the possession and control of the District Court. ZFG is willing and able to explain this process to the Court directly.

Implementing this process would be a reasonable, efficient, and cost-effective manner of providing victims access to the proceedings across multiple time zones.

## IV. Closing Arguments and Rendering of the Verdict are Non-Evidentiary Proceedings

The government asks the Court to permit identified victims to access closing arguments and the rendering of the verdict through direct-to-victim access through the ZFG platform. The government recognizes and understands that the Court has exercised its discretion to decline to permit transmission of live video and audio feeds to victims' personal electronic devices for evidentiary hearings and trial proceedings. In support of this decision, the Court has expressed concerns that (1) potential jurors could be tainted by access to evidence that was ruled to be inadmissible; (2) the rule on witnesses could be circumvented; and (3) the Court and the government have limited ability to investigate or enforce violations of Court orders outside the United States (*id.* at 18-20). Neither closing arguments nor the rendering of the jury's verdict pose these same concerns. Closing arguments, by definition, are not evidentiary. Nor is the rendering of the verdict. Providing remote, direct-to-victim access to these portions of the trial presents the same "minimal risk to the integrity of the proceedings" (*id.* at 17) that the provision of non-evidentiary proceedings present. The government respectfully asks the Court to permit these portions of the trial to be broadcast in the same manner, and under the same protections, as non-evidentiary proceedings.

## Conclusion

For the reasons set forth herein, the government asks this Court to clarify that (1) it will authorize United States and foreign government facilities as "designated secure viewing locations" at which victims will be permitted to view evidentiary and trial proceedings; (2) video and audio of Court proceedings will be made available for both non-evidentiary and evidentiary proceedings through the ZFG platform; (3) the Court will permit proceedings to be made available on a time-delayed basis to victims who reside outside the Eastern and Central time zones; and (4) closing arguments and the rendering of the jury's verdict are non-evidentiary proceedings, and will be made available to duly identified and verified victims under safeguards required by the Court in the same manner as other, non-evidentiary, non-testimonial proceedings. The government respectfully requests an additional 30 days once the Court has clarified these issues to finalize a "reasonable and specific implementation proposal." The government has conferred with counsel for the defendant on its request for additional time, and counsel does not oppose.

Respectfully submitted,

EDWARD R. MARTIN JR
UNITED STATES ATTORNEY
D.C. Bar No. 816664

BY: JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant U.S. Attorney
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
CONOR MULROE (NY Bar Number 5289640)
Assistant United States Attorneys
National Security Section
United States Attorney's Office
601 D Street N.W.
Washington, D.C. 20530
216-622-3658
Jerome.Teresinski2@usdoj.gov

KATHLEEN CAMPBELL (MD No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys
Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue N.W.
Washington, D.C. 20530