**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| **Defendant.** | : | |

**UNITED STATES' IMPLEMENTATION PROPOSAL TO ENSURE REMOTE ACCESS TO COURT PROCEEDINGS FOR VERIFIED VICTIMS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia (hereinafter "the government"), respectfully submits this implementation proposal ("the government's proposal"), in accordance with the Court's December 23, 2024 Order (Doc. 83), and the Court's March 6, 2025 Clarifying Order (Doc. 95) (collectively, "the Court's Orders"), interpreting the access that the victims are entitled to under Public Law 118-37, 138 STAT. 11 STAT (2024) ("*Remote Access to Court Proceedings for Victims of the 1988 Bombing of Pan Am Flight 103 Over Lockerbie, Scotland,*" hereinafter, "the Act").

The Court's Orders require that the government provide on or before April 7, 2025,[1] a "reasonable and specific implementation proposal" for handling the video and audio access for victims in the Pan Am Flight 103 case consistent with the Court's Memorandum Opinion at pages

[1] The Court originally required the government to provide its proposal on or before February 21, 2025, however, the government sought clarification (Doc. 89) from the Court concerning key aspects of the Court's intent regarding its December 23, 2024, ruling (Doc. 83). The Court provided additional clarification on March 6, 2025, and required the government to respond by April 6, 2025 (Doc. 95). The government filed a motion for a one-day extension of this deadline (Doc. 97), which the Court granted by Minute Order on April 2, 2025.

24-25 (Doc. 83). The government addresses the relevant issues below in four parts – (1) the application process to identify and authenticate victims; (2) access to non-evidentiary proceedings; (3) access to evidentiary and trial proceedings; and (4) training of U.S. monitors to ensure access to proceedings and enforce the Court's Orders. The government will discuss its recommendations for the Court's fifth goal – how to accomplish implementation in a reasonable, efficient, and cost-effective manner – throughout the pleading. The government notes that there is no trial date currently set, and that implementation of many of the government's proposals will be dependent on securing the necessary funding either through the Department of Justice's ("DOJ's") Office of Violent Crime or through new budgetary appropriations.

## I. APPLICATION PROCESS

As explained in prior pleadings, the government has taken significant steps to identify those individuals who would qualify as a "victim" in this specific case, under the broadly phrased statutory definition found in Public Law No. 118-37(a)(1)(B), 138 Stat.11. Those efforts have included a review of the victim information maintained in the DOJ's Victim Notification System and, in collaboration with the Federal Bureau of Investigation's Victim Services Division ("FBI-VSD"), the administration of a Victim Access Questionnaire ("VAQ") that gathered information from victim-respondents, including each victim's connection to the case, information about whether they wished to view or listen to the trial and other court proceedings, their Personal Identification Information (PII) (*e.g.*, dates of birth, address), their geographic location, and information concerning the existence of any medical and/or logistical hardships. *See* (Doc. 68-2 at 1-4).

The data generated from the VAQ identified 417 victim-respondents, including 244 victim-respondents within the United States, and 173 foreign victim-respondents. The government

reiterates that it believes the number of victims is actually higher, because the statutory definition of victim as defined by the Act is broadly phrased, and because additional qualifying victims may self-identify as this case moves closer to trial.

Against this backdrop, the Court has required that the government obtain additional information from the Pan Am Flight 103 victims. Pursuant to that mandate, the government is working together with FBI-VSD to develop an online application process for victims interested in accessing non-evidentiary and evidentiary proceedings in this case. The online application portal will set forth the procedures by which a victim is able to gain remote access to the proceedings, similar to the explanations provided to the victims in the case of *United States v. Moussaoui* (*e.g.* Doc. 39-5). Interested individuals will be required to (1) complete an application to establish their status as a victim, similar to what was in the *Moussaoui* case (*e.g.* Doc. 39-4); (2) review and sign a sworn certification that they will follow this Court's orders with respect to access to any proceeding, whether evidentiary or non-evidentiary; and (3) complete a survey with respect to whether and how they wish to view remote broadcasts of evidentiary proceedings (discussed further in Section III, *infra*).

The online portal will be made available to the public in the same manner that the VAQ was administered. *See, e.g.,* https://www.fbi.gov/how-we-can-help-you/victim-services/seeking-victim-information/seeking-victim-information-concerning-pan-american-flight-103 (last accessed April 5, 2025). Links to the portal will be made available through DOJ's and FBI's websites, sent to victims through DOJ's Victim Notification Service, and circulated by our Scottish law enforcement partners to foreign victims. As was the case with the VAQ, we will employ other tactics, such as social media postings, to ensure that the portal is made available to the widest possible audience to reach all potential victims who qualify under the statute.

*Victim Identification*: First, the application to access the proceedings will ask each respondent to identify their status as set forth in the definition provided by Congress in P.L. 118-37, 138 STAT. 11, which defines the term "victim" with respect to crimes associated with the bombing of Pan Am Flight 103 to mean any individual:

> (A) who suffered direct or proximate harm as a result of the bombing of Pan Am Flight 103 that occurred over Lockerbie, Scotland, on December 21, 1988, and was present at or near the scene of the bombing when it occurred, or immediately thereafter; or
>
> (B) who is the spouse, legal guardian, parent, child, brother, sister, next of kin, or other relative of, or who is determined by the applicable district court of the United States to be an individual who possesses a relationship of similar significance to, an individual described in subparagraph (A) or an individual otherwise described in this subsection.[2]

In addition to specifying their victim status, this first portion of the application will require the victim-respondent to confirm personal identifying information, such as full name, date of birth, current address, telephone number, and email address for use in verifying their identify throughout the proceedings.

Once an individual applies through the online portal, members of the DC-USAO's Victim Witness Unit and the FBI-VSD (hereinafter the "Victim Access Team") will review the application to determine whether the applicant meets the statutory criteria for eligibility. If the Victim Access Team determines that the applicant meets the statutory definition of victim based on the assertions contained in the application, it shall make reasonable efforts to verify the information provided in the application. Generally, if the applicant is in the victim database and the contents of the

---

[2] By statute, the term "victim" excludes any individual who participated or conspired in the crimes associated with the bombing of Pan Am Flight 103.

application satisfy the victim definition in the Pan Am Flight 103 statute, the Victim Access Team shall deem the applicant eligible for remote access to the proceedings.

Where an applicant does not appear to satisfy the victim definition in the Pan Am Flight 103 statute, the Victim Access Team shall conduct additional due diligence. Where appropriate, for instance where an applicant claims a relationship to a decedent that is outside the specific statutory definition but is nonetheless significant, the Victim Access Team will submit an application to the Court in an under seal, *ex parte* filing, to seek the Court's authorization for that applicant to gain remote access to the proceedings.

The Victim Access Team shall notify all applicants whether they have been determined to be eligible for remote access to the proceedings. The personal identifying information provided by applicants shall not be made public nor disclosed to the defendant or his counsel.

*Sworn Certification*: The Court has imposed a sworn certification requirement as a condition precedent to remote access to the proceedings in this case. Each applicant will be required to attest that they will not "photograph, record, broadcast, livestream, tape, re-tape, reproduce, or transmit in any way the proceedings that I am being permitted to access remotely in the case of *United States v. Abu Agila Mohammed Mas'ud Kheir Al-Marimi,* 22-CR-392, which is being litigated in the U.S. District Court for the District of Columbia before the Honorable Dabney L. Friedrich." Each applicant shall be required to further attest:

> I am aware that I will be held in contempt by the Court if I violate this admonition of the Court. I am further aware that any violations of these prohibitions have the potential to jeopardize the safety and well-being of witnesses and participants in judicial proceedings and may otherwise interfere with the administration of justice. Accordingly, I understand that if I violate any of the above listed prohibitions, I will no longer be permitted to access the proceedings in any manner (to include remote audio access to non-evidentiary hearings, physical access to remote viewing sites, or physical access to the Courtroom). Additionally, I may be subject to sanctions,

> including contempt of court, or any other sanctions as deemed necessary and appropriate by the Court.

These admonitions will be reiterated prior to the start of any remote broadcast, whether evidentiary or non-evidentiary.

## II. ACCESS TO NON-EVIDENTIARY PROCEEDINGS

This Court has agreed with the government and the defense that "granting victims remote video and telephonic (*i.e.,* audio) access to non-evidentiary pretrial matters presents minimal risk to the integrity of these proceedings." (Doc. 82 at 17) (citations omitted). The Court has also ruled that once the government verifies certain conditions have been met, it will permit non-evidentiary pretrial proceedings to be transmitted to verified victims over the Zoom for Government platform and approved telephone lines. (*Id.* at 18).

The Court has ordered the government to submit a process by which non-evidentiary pretrial hearings will be made available to identified victims "by video and audio in accordance with the government's original proposal," citing Doc. 51 at 6-12. The government's initial proposal posited using the existing Zoom for Government platform to provide victims with remote video and audio access to proceedings, regardless of the victim's location. *Id.* The government's proposal did not draw a distinction between evidentiary and non-evidentiary proceedings; the proposal was designed to provide the highest level of security possible because the government contemplated that this platform would be used to provide remote access to evidentiary, testimonial proceedings.

It appears, however, that a significant majority of victims surveyed prefer to access proceedings by *listening* to them, rather than by *watching* them. Of victim-respondents to the first VAQ, 82.7% indicated that they would prefer to listen to audio of the proceedings (Doc. 68-1, Question 5, paragraph 14). This question did not delineate between access to evidentiary and non-

evidentiary proceedings. On balance, weighing the additional resources needed to provide video access to non-evidentiary hearings against the victims' preferences, the government recommends that the Court make non-evidentiary hearings available by audio alone.

The government suggests that remote access to non-evidentiary proceedings be controlled through an online registration process similar to that employed by the U.S. District Court in the District of Massachusetts. *See, e.g.,* https://forms.mad.uscourts.gov/courtlist.html; *see also* Exhibit A-1. This online registration portal permits individuals to register online up to two days in advance for access to criminal hearings. *See, e.g.,* Exhibit A-2, which is the online form a registrant must complete to gain access to a hearing; and Exhibit A-3, which is the confirmation of application. Registrants provide their name and telephone number; in return the Court sends the application the access information for the hearing (the associated telephone number and access code that permits them to gain telephonic access to the audio link to the Zoom for Government portal). The online application further provides:

> **The access information you will receive is not to be forwarded or distributed out to any other parties.**
>
> We direct you to **Local Rule 83.3(a)** regarding photographing, recording, and broadcasting of proceedings, which still applies to teleconference proceedings. Local Rule 83.3(a) provides:
>
> "**Photographing, Recording, and Broadcasting Generally Prohibited.** Except as specifically provided in these rules or by order of the court, no person shall take any photograph, make any recording, or make any broadcast by radio, television, or other means, in the course of or in connection with any proceedings in this court, on any floor of any building on which proceedings of this court are or, in the regular course of the business of the court, may be held."
> **Violations of this rule may result in the suspension or revocation of the media credentials of an individual or media organization and the imposition of other sanctions upon court order.**

(*See* Exhibit A-2, emphasis in original). Registrants are required to check a box stating that they "acknowledge and understand" these rules before the access information for the hearing is

provided. The government would provide the Court with the names, email addresses, and telephone numbers of the verified victims to facilitate this process. In the alternative, should the Court prefer, the government's Victim Access Team could create a similar portal and independently register verified victims and provide them with the access information for remote access to non-evidentiary hearings.

## III. ACCESS TO EVIDENTIARY AND TRIAL PROCEEDINGS

The Court has further ordered that trial proceedings shall be made accessible to identified victims (a) at courthouses across the United States and (b) at secure locations outside the United States, such as U.S. embassies. (Doc. 82 at 24). In response to the government's motion for clarification (Doc. 89), the Court further clarified that proceedings could be made available at alternative secure, designated viewing locations, subject to its forthcoming review of a specific implementation proposal that demonstrates that such locations will indeed be secure, access restricted, and monitored by trained representatives of the Department of Justice. (Doc. 95 at 2-3). The Court further clarified that these proceedings may be broadcast over the Zoom for Government platform. (*Id.*).

The government's response herein addresses our proposed process to identify and designate fixed site locations, with the goal of affording access to verified victims to the fullest extent possible. In order to be efficient and cost effective, the government proposes an iterative process. First, as part of the initial application process described in Section I, *supra*, the government intends to further survey victims to determine whether they desire to view the proceedings from remote fixed sites, and the extent to which they intend to participate. Such data is essential because it will permit the government to seek the resources necessary to deploy the requisite Department of Justice personnel to monitor remote access at fixed sites. This will also permit the government to

secure access to appropriate fixed sites as set forth in the government's motion for clarification (Doc. 89) and the Court's order (Doc. 95), which authorized the government to use secure government facilities, such as FBI and United States Attorney's Office (USAO) buildings, for provision of access to evidentiary and trial proceedings to verified victims within the United States and secure foreign government buildings for access to evidentiary and trial proceedings to verified victims outside of the United States.

Based on the results of the initial VAQ, the government has preliminarily identified the following geographic locations within the United States as potential fixed sites (either at FBI or USAO facilities) based on the concentration of victims within a reasonable proximity:

| | |
|---|---|
| New York, NY | Florida, Location(s) TBD |
| White Plains, NY | Chicago, IL |
| Newark, NJ | Dallas, TX |
| Boston, MA | Phoenix, AZ |
| Philadelphia, PA | Seattle, WA |
| Pittsburgh, PA | Los Angeles, CA |
| Cleveland, OH | San Francisco, CA |
| Detroit, MI | Knoxville, TN |
| Atlanta, GA | Syracuse, NY |

Likewise, based on results from the initial VAQ, the government has identified the following geographic locations as potential fixed sites for foreign-based verified victims:

| | |
|---|---|
| London, UK | Dumfries, Scotland |
| Birmingham, UK | Edinburgh, Scotland |
| Manchester, UK | Glasgow, Scotland |
| Paris, France | Aberdeen, Scotland |
| The Netherlands | |

For example, our efforts in Scotland have identified potential fixed-site locations in Glasgow, Aberdeen, and Edinburgh. Utilizing the Court's security requirements, the Scots have identified secure buildings which require security screening to gain access to the exterior of the building itself. Each building has a larger room which can serve as a secure viewing room for

court proceedings (*i.e.*, holding an estimated 20-25 persons), and other rooms that may be used as "break-out" rooms if victims need to seek assistance from a victim advocate. We have included photographs of the viewing rooms at Exhibit B-1) from one of these proposed locations.

The government is committed to providing the fullest extent of access possible to verified victims; but the prosecution team does not have unlimited resources. To stand up a fixed site, the government must first ensure that there are enough victims to justify the cost associated with staffing a fixed site, including the costs of posting FBI monitors and victim advocates overseas. Once appropriate geographic locations have been identified, the government will ensure that each fixed site is located in a secure, access-restricted facility; that members of the public entering those buildings are required to provide identification and are screened for weapons and contraband prior to being admitted; that access to the remote viewing platform is limited to verified victims who show proper identification; and that the use of cell phones, electronic devices, and recording devices is restricted and/or prohibited.

The government is also committed to ensuring that each fixed site for remote access has appropriate resources to support victims through the process of viewing that trial. To that end, each fixed site will be staffed by trained victim advocates and will be equipped with smaller rooms for emergency counseling interviews (*i.e.*, break-out rooms) if needed during the court proceedings. Victim advocates at the fixed sites will be able to assist victims in person should they need immediate assistance at that location. FBI Monitors will also be trained to help victim advocates sensitively respond to the victims during evidentiary proceedings. Additionally, the

fixed sites will be properly equipped with appropriate furnishings, access to restrooms, and access to food options.[3]

## IV. TRAINED FBI MONITORS

In accordance with this Court's order (Doc. 82 at 25), each site will be monitored by trained personnel, including at least one FBI employee and one victim witness advocate. In Scotland, we also expect that a Scottish Police Officer will be present at each site. Trained FBI monitors will have an official list of verified victims assigned to each site, and only those verified victims will be able to attend the proceedings. Each verified victim will be subject to a TSA-type search (*i.e.,* like one received at the airport) to enter the viewing room. Cell phones, laptops, and electronics will be prohibited. During court breaks, or lunch, if an attendee leaves the room, they will be subject to a similar search upon re-entry. Finally, trained FBI monitors will be responsible for advising verified victims at the start of the proceedings of their sworn certification to abide by the Court's rules.

FBI monitors and victim advocates will be trained as follows:

- All personnel will receive one hour of training by a Zoom for Government expert who will focus on how the Zoom for Government platform works, what it does, how it connects to the Federal Court system, its security measures, identifying all potential problems that could arise from use in a remote environment, all certifications, authentication issues, security measures, proposed

[3] The government has coordinated with the Substance Abuse and Mental Health Service Administration (SAMSHA), the National Center for Victims of Crime (NCVC), and the National Organization for Victim Advocacy (NOVA) to provide mental health support to victims via toll free numbers and text. Victims have been told that they may mention the Pan Am 103 case; the service providers have been provided background about the tragedy. Victims may find helpful tips for supporting their mental health from SAMSHA along with the National Mass Violence Center (NMVC). We have posted links to the documents and the contact numbers under "RESOURCES" on the U.S. Attorney's Office for the District of Columbia webpage https://www.justice.gov/usao-dc/attack-pan-am-flight-103.

solutions to technology issues, webinar and host concerns, transmission malfunctions, and waiting room issues.

- FBI monitors will receive a second hour of training that will consist of victim advocates training FBI monitors on interacting with victims and discussing how best able to engage in an immediate triage to assist a victim.

In accordance with the Court's Orders and its Memorandum Opinion, FBI monitors will file acknowledgments with the Court indicating that they are subject to contempt proceedings as a penalty for failing to comply with their duties. This acknowledgement will indicate that they are aware that the Court will be able to hold them in contempt of court if anyone attending the fixed site violates the Court's rules during the proceedings.

## V. ADDITIONAL PROCEDURES

The government is committed to provide access to the proceedings to as many victims as feasible. Many victims, however, will be unable to remotely access the proceedings, whether because of competing obligations, because of age or infirmity, or because they live in another time zone. During the trial and evidentiary proceedings, the government will provide daily updates to victims in writing over the VNS system and through virtual briefings where the government will be able to answer questions about the proceedings.

## VI. CONCLUSION

The government respectfully submits these "reasonable and specific implementation proposals" and asserts that the government's cost-effective suggestions will enable the largest number of victims an opportunity to remotely access the proceedings in this case and will provide them with alternative methods of obtaining meaningful updates to the Court proceedings as they are unfolding in the District of Columbia. If any violations occur, that information will be brought immediately to the Court's attention by the undersigned counsel assigned to handle Victim Access

matters in this case. Matters concerning Victim Access issues will be brought *in camera, ex parte* to the Court for resolution.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

/S/ Jerome J. Teresinski
JEROME J. TERESINSKI
(PA Bar No. 66235)
Special Assistant United States Attorney
National Security Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(216) 622-3658 | (216) 633-1961
Jerome.Teresinski2@usdoj.gov