## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 22-cr-392 (DLF)** |
| **v.** | : | |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION TO CONTINUE TRIAL DATE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully opposes the defendant's Motion to Continue Trial Date (ECF 171). Because a further delay of this trial is not necessary, and would harm the government, the public, and the victims, the motion should be denied.

## PROCEDURAL BACKGROUND

The defendant made his initial appearance before Magistrate Judge Meriweather nearly three years ago, on December 12, 2022. The defendant was represented at that hearing by his current counsel, Whitney Minter, Esq., although the Federal Public Defender for the Eastern District of Virginia ("OFPD") had not yet been formally appointed in the case. *See* Minute Entry dated December 12, 2022. A week later, Magistrate Judge Upadhyaya presided over an ascertainment of counsel hearing, which led to Ms. Minter's appointment as counsel on an interim basis. *See* Minute Entry dated December 19, 2022. After a series of additional hearings were scheduled and continued, OFPD attorney Ms. Minter was formally appointed to represent the defendant. *See* Minute Entry dated January 25, 2023. Ms. Minter has appeared on the defendant's behalf at each hearing in this case from December 12, 2022, through the present. OFPD attorney

Todd Richman, Esq., made his first appearance on the defendant's behalf on February 8, 2023, and represented him continuously through September 2025.

The government made its first discovery disclosure within a week of OFPD's appointment, on January 30, 2023. It has since produced significant amounts of discovery on a rolling basis, with the most substantial of such disclosures being completed more than a year ago, on July 31, 2024. *See generally* ECF 57. Since that time, the government has made additional disclosures primarily consisting of evidence that was obtained or located after the July 2024 production.

In December 2023, the Court set the first trial date in this case – May 12, 2025 – which was at that point 17 months in the future. As Ms. Minter then noted, "that will probably be the longest window for a trial date that I've set in my career." Dec. 15, 2023, Hr'g Tr. at 7. Approximately one year later, the parties reluctantly began to conclude that the May 2025 trial date was no longer tenable. *See generally* Dec. 17, 2024, Hr'g Tr. On February 26, 2025, the parties jointly requested that the May 12, 2025, trial date be vacated. ECF 92 at 2. The Court vacated the trial date the next day. ECF 94. On May 29, 2025, the parties proposed a trial date in late April 2026, which was then approximately 11 months in the future. ECF 112 at 1. To ensure that this trial date held, the government proposed several atypical features to the pretrial schedule, including early litigation on motions to suppress and motions *in limine*. *Id.* at 2-3. The Court, noting that it did not want the trial to slip further,[1] set a trial schedule featuring early deadlines for pretrial litigation. *See* June 5, 2025, Hr'g Tr. at 14-16; ECF 117.

---

[1]    The Court specifically noted that it would "need to set some other things for the fall" of 2026 as a result of setting this case for trial in April, adding, "if this [trial] were to slip beyond summer, then we might be looking at 2027, which I don't think any of us want to do. So that's why I'm really emphasizing let's get moving." June 5, 2025, Hr'g Tr. at 18.

On September 13, 2025, Mr. Richman filed a notice of withdrawal of attorney appearance, which made no mention of the reason for the withdrawal. ECF 154. Around the same time, the defense moved to continue deadlines to file its motion to suppress statements (ECF 146, filed September 2, 2025), its responses to the government's early motions *in limine* (ECF 155, filed September 15, 2025), and later moved to continue the deadline for its reply in support of its motion to suppress statements (ECF 166, filed October 1, 2025). In support of its request for additional time to respond to the government's motions *in limine*, the defendant stated that a "member of Mr. Al-Marimi's defense team has recently become aware that a conflict exists which will require that attorney to withdraw from the case." ECF 155 at 1. The defendant has not proffered what the nature of that conflict is, and he used similar language to describe the withdrawal in his motion to continue the trial date. ECF 171 at ¶ 3.  The government did not oppose the first two requests for extensions, and it took no position on the third. New counsel for the defendant, OFPD attorneys Laura Koenig and Brooke Rupert, Esqs., entered notices of appearance on September 17 and 22, 2025, respectively. ECF 160, 162.

On October 3, 2025, the defense requested a status hearing "so counsel can fully advise the Court about the pending scheduling complications and the viability of the current trial date." ECF 166 at 1-2. On October 7, 2025, the defendant formally moved to continue the April 20, 2026, trial date. ECF 171. This Court should deny the defendant's motion for the reasons enumerated below.

## ARGUMENT

As of the current trial date of April 20, 2026, the defendant will have been in U.S. custody for more than three years. To delay the trial any further would be an extraordinary step that could be justified only by extraordinary circumstances that do not appear to be present here. Although this is a complex case, the existing timeline will permit defense counsel to vigorously and

effectively represent their client at all stages of the litigation including trial. Conversely, any further postponement of the trial would significantly prejudice the government and would impair the interests of the public and the victims in a speedy trial.

1. <u>The defense team can effectively prepare for trial.</u>

The defendant has been represented by competent counsel from OFPD since December 12, 2022. That same office, and indeed the same lead counsel, still represent the defendant today. It is therefore not the case that the recent personnel change within OFPD amounts to a wholesale disruption of the defense team. Ms. Minter has spent nearly three years learning the case and reviewing the discovery. In doing so she has worked alongside two investigators, an OFPD paralegal, and an outside paralegal to the case, ECF 171 at ¶ 2, who have developed their own base of knowledge and expertise, including about the contents of the government's discovery productions. The two new attorneys are therefore not starting from square one; they are joining a well-established team with a deep store of institutional knowledge.[2]

It will be especially feasible to quickly integrate the new attorneys because of the nature of the case. Although the evidence is extensive and complex, the facts are largely divisible into distinct subject-matter areas with relatively little overlap. For example, the attorney focusing on the forensic analysis of evidence recovered from the crime scene will need to know relatively little about the Stasi evidence relating to the La Belle Discotheque bombing, and vice-versa. This type of division of labor is how the government (who bears the burden of proof) has approached trial preparations, and it reflects the reality that not every attorney assigned to a trial team needs to become an expert on every facet of a complex case. *See Bucklew v. Luebbers*, 436 F.3d 1010, 1019

---

[2]     As discussed below, it is possible that Mr. Richman can similarly serve as a resource for consultation, depending on the nature of his conflict.

(8th Cir. 2006) (denying ineffective-assistance claim based on division of labor because "[i]t is not deficient performance for a team of attorneys to divide among them the workload of a case in a rational and efficient manner"); *United States v. Akbar*, 74 M.J. 364, 382 (C.A.A.F. 2015) (ruling that trial counsel in capital case was not constitutionally deficient in relying on work performed by "others on the defense team").

Moreover, to the extent the new attorneys need to conduct their own review of some of the discovery, they are well-equipped to do so because of how the government has provided the materials. The government has taken steps throughout its provision of the voluminous discovery in this case to facilitate defense counsel's review of the evidence. For example, even though the majority of the documents at issue in this case were created in paper, not digital, form, the government has processed them so that they could be produced in a load-ready, text-searchable format. *See, e.g.*, ECF 57 at 4. This processing has included thousands of person-hours spent manually assigning descriptive titles to each document in the FBI files (*e.g.*, "Photos of debris from Pan Am 103 crash site"), effectively creating an index that can be utilized with OFPD's document-review software. *See id.* The government has also worked with the defense, at the defense's request, to provide information that will facilitate counsel's review. *Id.* All of those efforts will aid the two new attorneys as they work to familiarize themselves with the voluminous discovery in the case and to prioritize their efforts with a view toward the materials that are relevant to their assigned areas of subject-matter responsibility.

On the topic of discovery, several points warrant clarification. First, the defense states that the government has produced "over 413,000 separate files." ECF 171 at 2. That figure may accurately state the number of individual raw data files in the productions, but it does not represent the volume of discovery. As noted above, the discovery has been produced in a load-ready format,

whereby (among other things) every page of every document is processed into a separate image file, and separate files exist that contain metadata and extracted text. The government believes the number of individual documents produced is less than 100,000.[3]

Second, a large proportion of the discovery consists of materials from the original investigation and Scottish trial of co-conspirators Megrahi and Fhimah. That case was vigorously litigated by the Scottish prosecutors and by counsel for both co-conspirators, resulting in an 82-page judgment from the trial court that comprehensively summarized the prosecution's case and the various lines of evidence and argument submitted by the defense. With the benefit of this summary, there is no need for a line-by-line review of, for example, the "thousands of pages of prior trial transcripts." ECF 171 ¶ 5. Instead, defense counsel can direct their attention to those witnesses whose testimony they deem relevant to the instant case (including defense witnesses who gave purportedly exculpatory testimony). By the same token, more than 15,000 of the produced documents are written witness statements taken by Police Scotland. The government has produced these in the interest of thoroughness, but there is no need for the defense to read each one: they can instead target their review based the evidence and witnesses that the Scottish government and the Megrahi/Fhimah defense put forward at the trial that resulted from the original investigation (as well as by means of keyword-searching as discussed above).[4]

---

[3]    Of these, approximately 49,000 are single-page scans of untranslated documents from the archives of the Czech Republic that the government does not understand to be relevant but that have been produced in an abundance of caution. A further 15,000 are the Police Scotland witness statements discussed just below. And, as the defense notes, there is some degree of duplication within the files.

[4]    Lest there be any doubt, the parties are on equal footing here: the government has not read, and does not plan to read, all 15,000 of the Scottish witness statements. It is relying on the same methods of triage that are available to the defense.

In short, while the discovery here is undoubtedly large, this case is no different from many modern criminal cases that involve voluminous discovery that can never be reviewed manually page-by-page, no matter how long the trial is delayed. Ample time exists for the defense to use the ordinary tools of digital document analysis to conduct a targeted review, as is now routine in large cases.

In addition to providing user-friendly discovery, the government also has been — and will continue to be — unusually transparent about its anticipated case-in-chief. Over two years ago, in July 2023, the government met with counsel for the defendant and provided a reverse proffer of the evidence in the case. Ms. Minter and Mr. Richman were both present. The government is willing to do so again with Ms. Minter and the two new attorneys who recently joined the defense team, focusing on the types of evidence that the government is likely to introduce in its case-in-chief. The government would be willing to answer questions from defense counsel during this reverse proffer as well, which we did in the past. This exercise could in turn help the defense choose where to focus its efforts in its review of the discovery materials that the government has provided to date. Meanwhile, the government has already filed a pair of motions *in limine* (ECF 147, 148) that enumerate a substantial portion (likely more than half) of the documentary exhibits that the government intends to offer at trial — an extraordinary roadmap of the government's case-in-chief this far in advance of trial. This is indeed an extraordinary effort on the government's part in a case of this magnitude, and we are willing to facilitate this process to ensure a smooth path to trial.

Finally, the government disputes the premise that "becom[ing] familiar with the facts" and "managing the upcoming filing deadlines," ECF 171 ¶ 6, are conflicting demands that cannot be pursued simultaneously. To the contrary, litigating pretrial motions and preparing for Rule 15

depositions is exactly the process by which the new attorneys can most quickly get up to speed on their respective areas of responsibility.

The schedule between now and trial is certainly full of substantive litigation. As the parties noted, and the Court agreed ahead of setting the April trial date, it is necessary in a case this complex to conduct much of the litigation earlier than typical. The pretrial schedule reflects that necessity, but it does not follow that new counsel cannot effectively prepare for trial while conducting this litigation. Pretrial depositions *are* effectively miniature portions of the trial, requiring counsel to be well versed enough to conduct an effective cross-examination as if trial were ongoing. Preparing for any depositions will aid new counsel immensely in becoming ready for trial. The same is true of substantive litigation – preparing for it will provide a strong foundation to be prepared for trial as well. New counsel can of course use the institutional knowledge OFPD has amassed over nearly three years to assist in that preparation.

    2.   <u>Granting the defendant's motion would prejudice the government and harm the public and victims.</u>

The crime charged herein will have occurred 37 years ago by the time of the April trial date. That means a witness who was 40 years old at the time of the attack would be age-77 at trial. Many potential witnesses are in their 80s. Most live across an ocean from the United States. Traveling to the United States for trial is a significant endeavor for most of these witnesses, and while many are willing to do so, some are physically unable. The inescapable reality is that the longer trial is delayed, the more of the government's witnesses will become unavailable to testify due to death or infirmity. The risk is not hypothetical. In the past few months, undersigned counsel have learned that one potential witness had a stroke and is no longer available; another has become responsible for care of an ailing family member and can no longer travel for trial; and yet another has been diagnosed with a serious disease that requires intensive treatment. At best, a continuance

of any appreciable length would likely result in additional requests by the government to conduct pretrial depositions and/or allow live video testimony. At worst, essential government witnesses may become unavailable (possibly without enough warning to preserve testimony first). Any continuance of the case poses a high risk of prejudice to the government's case.

In addition to the government, the public has an interest in the timely resolution of this case. *See*, *e.g.*, *Zedner v. United States*, 547 U.S. 489, 500-01 (2006) (holding that a defendant cannot prospectively waive application of the Speedy Trial Act, in part because sometimes the public's interests in a speedy trial are at odds with a defendant's). The bombing of Pan Am Flight 103 was a crime of historic proportions, and this case is understandably a matter of importance to the public in the United States and worldwide. The public interest strongly weighs in favor of a speedy trial, both because of the inherent value of prompt adjudication and because of the danger, described above, that further delay would irreparably damage the prospects of a full and fair determination of the facts.

Among the broader public, the victims of the offense deserve special consideration for their interest in seeing this case resolved. Like the witnesses, they too are advancing in age, and they have an interest in seeing a resolution to this case. They did not ask to be a part of this case. They have suffered for decades and were unfortunately thrust into that suffering and loss by the horrific acts caused by the bombing of Pan Am Flight 103. Their interest in seeking justice has not waned. In considering the motion for a continuance, therefore, the Court should give due regard to the victims and their statutory "right to proceedings free from unreasonable delay." 18 U.S.C. 3771(a)(7).

3.  <u>The Court should conduct an inquiry into the conflict that predicates the continuance request.</u>

The defendant has moved to continue the trial date based entirely on the need to bring two new attorneys up to speed with the case. *See generally* ECF 171. This necessity, in turn, arose from the withdrawal of one of the defendant's prior counsel, who had represented him for two-and-a-half years. *See id.* at ¶ 4 (noting that two new counsel were added to address the loss of one defense counsel). The defense has asserted that Mr. Richman's withdrawal was required because of a conflict, but they have declined to explain the nature of that conflict. OFPD has similarly not filed a motion for Mr. Richman's withdrawal. *See* LCrR 44.5(d). The government does not question the genuine and sincere nature of the defense's assertion that Mr. Richman's withdrawal is necessary, but it is uncertain as to the basis for it. For example, is it a legal conflict of interest? If so, is it waivable? In light of the above-described consequences of any delay triggered by Mr. Richman's withdrawal, before granting the continuance motion, the Court should inquire into the nature of the conflict (*ex parte*), to determine whether the conflict does conclusively make Mr. Richman unavailable, thus necessitating the substitution of new counsel. This is precisely the type of inquiry that the Court would have made under the local rules if a motion to withdraw had been filed. *See id.* ("The Court may deny a motion to withdraw if the attorney's withdrawal would unduly delay trial of the case or be unfairly prejudicial to any party, or otherwise not be in the interests of justice").[5]

---

[5]   Even if the Court were to find that Local Rule 44.5(d) did not apply specifically here because OFPD represents the defendant, not any particular OFPD attorney, the rationale underlying the requirement that the Court review an attorney's motion to withdraw should likewise apply here where defense seeks a continuance predicated on that attorney's withdrawal and the corresponding need to get new counsel up to speed. *See, e.g., United States v. Cooper*, 91 F.Supp.2d 90, 114 (D.D.C. 2000) (concluding that the specific Assistant United States Attorneys who had entered appearances in the case were the attorneys for the government for the purposes of Local Criminal Rule 44.5(e), not the United States Attorney).

Such an inquiry is doubly necessary because the nature of the conflict has implications for Mr. Richman's availability as a resource for the current defense team. As noted above, the newly assigned attorneys have the benefit of the collective years of experience accrued by OFPD during its representation of the defendant. Mr. Richman's knowledge and work product is surely a significant part of that institutional knowledge. If the conflict means that he must henceforth be completely walled off from the case, that is a very different matter than if he can serve as resource to newly appointed counsel. In the latter scenario, the justification for any continuance becomes even weaker.

*       *       *

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for a continuance and maintain the currently scheduled trial date.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


*/s/ Erik M. Kenerson*
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
CONOR MULROE (NY Bar No. 5289640)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
National Security Section
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 252-7201
Erik.Kenerson@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys
Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530