UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 22-cr-392 (DLF) |
| | : | |
| **ABU AGILA MOHAMMAD** | : | |
| **MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SUR-REPLY REGARDING DEFENDANT'S MOTION TO SUPPRESS STATEMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Sur-reply to the defendant's reply [ECF 174] in support of the motion to suppress the defendant's statement [ECF 159].

The arguments in the defendant's opening brief were based entirely on a detailed narrative of events he claimed to "vividly recall[]." ECF 159 at 1. The pleading recounted how, during the "chaotic period" after the Qaddafi regime fell, the defendant was taken into custody. *Id.* at 4. His captors brought him to a detention facility and "moved him past [scenes of prisoner abuse] to the second floor, where they left him… alone in a small room." *Id.* at 5-6. "Eventually, three men in civilian clothes entered the room" and gave him "single, handwritten sheet" to memorize, which ordered him to confess to two terrorist attacks that he "had nothing to do with." *Id.* at 6. "The next day," he was brought for an interview at which "[a]ll the question were leading," and at which the defendant was forced to sign a written statement that he was not allowed to read. *Id.* at 6-7.

The government's opposition brief identified the many problems with this story, even beyond its incompatibility with the anticipated credible testimony of the interviewing officer. *See generally* ECF 163. In their reply, ECF 175, the defense fails to resolve any of those discrepancies. Instead, the reply contains a tangle of new factual points that are seemingly at odds with their

original submission and with each other. These points are only relevant if the defense intends to advance a new and different argument, namely, that Libyan authorities fabricated the written statement as part of effort to curry favor with the United States government. Because these points were made for the first time in their reply, the government seeks authorization to file this sur-reply.[1]

To frame the issues in advance of the hearing on this motion, we note the following inconsistencies:

- The defense finds it "troubling" that the Libyan government provided the Scottish and U.S. authorities with a copy of the signed statement rather than the original. ECF 175 at 9-10.[2] It later describes "chain-of-custody concerns for the alleged confession document." *Id.* at 11. But the defense has already acknowledged that the defendant was interviewed while in custody, resulting in a written statement about two terrorist attacks, complete with "details about the incidents," that the defendant was purportedly ordered to sign. ECF 159 at 6-7. It is not clear whether, by now questioning the provenance of the document in the government's custody, the defendant is walking back his original story or trying to suggest that the statement he signed was altered or replaced with a fabricated substitute after the fact.

- The defense believes the "convenient timing" of events "begs close scrutiny," in part because the date of the interview was "the day after a group of armed men attacked the U.S. Special Mission office in Benghazi, Libya, killing several American diplomats." ECF 175 at 10. If the suggestion is that the "masked men" coerced the defendant's confession as a ploy to mend

---

[1] To be clear, the government has the burden of establishing voluntariness. But as argued in the opposition brief, the government's evidence at the hearing will establish *prima facie* that the statement was not coerced.

[2] In the government's experience it is typically assumed that a country's government, when sharing its own investigative files with foreign authorities, would provide copies rather than originals. The government confirmed this fact to the defense "very recent[ly]" because that is when the defense asked the question. ECF 175 at 9.

relations with the United States after the attack, they must have worked quickly, given the defendant's claim that he was threatened the day before the interview took place. And if that is the defense's position, then they are conceding that the government is correct about the timing of the interview, which would nullify all of the defense's other points related to the timing of events post-2012.

- The defense notes that "My Brother's Bomber," a televised documentary about the Lockerbie attack that showed excerpts from the Stasi files documenting the defendant's presence in Berlin in 1986, aired several months before the Libyan authorities provided the defendant's signed statement to the Scottish authorities. The desired inference seems to be that someone in Libya watched the English-language program and was inspired to borrow details from it to frame the defendant.[3] If the defendant maintains his original position that he signed the statement under duress, this would mean the interview must have happened no earlier than October of 2015, which would raise its own set of problems: (1) it would be inconsistent with the timeline from the original narrative, which begins with the defendant's arrest in the chaotic aftermath of the revolution and then proceeds immediately to the encounter with the "masked men"; (2) it would raise the question why the defense did not see fit to mention the multiple years spent in captivity prior to the interview as one of factors being on voluntariness; and (3) it would totally negate the defense's point above about the "convenient timing" of the interview coming the day after the Benghazi attack.

---

[3] The on-screen Stasi record purports to show that the defendant used the alias "Said Agwa" in Berlin. An examination of the full Stasi file, however, shows that this was an isolated error in the report and that "Said Agwa" was a different person. If the defendant's confession was fabricated based on the televised depiction of the records, the authors are fortunate they did use the "Agwa" alias as a corroborating detail.

For these reasons, along with those in the government's opposition brief and to be argued at the forthcoming hearing, the Court should deny the motion to suppress.

> Respectfully submitted,
>
> JEANINE FERRIS PIRRO
> UNITED STATES ATTORNEY
>
> By:  */s/ Conor Mulroe*
> CONOR MULROE (NY Bar No. 5289640)
> ERIK M. KENERSON (OH Bar No. 82960)
> BRITTANY KEIL (D.C. Bar No. 500054)
> Assistant United States Attorneys
> JEROME J. TERESINSKI (PA Bar No. 66235)
> Special Assistant United States Attorney
> 601 D Street NW, Washington, D.C. 20530
> (202) 740-4595 // Conor.Mulroe@usdoj.gov
>
> KATHLEEN CAMPBELL (MD Bar No. 9812170031)
> JENNIFER BURKE (MD Bar No. 9706250061)
> Trial Attorneys, Counter Terrorism Section
> National Security Division
> 950 Pennsylvania Avenue NW, Washington, D.C. 20530