UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ABU AGILA MOHAMMAD<br>MAS'UD KHEIR AL-MARIMI,<br><br>      *Defendant*. | No. 22-cr-392 (DLF) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the defendant's unopposed motion to introduce at a suppression hearing a redacted transcript of a ▬▬▬▬▬▬▬▬▬▬ sealed Rule 15 deposition, Dkt. 263, and the government's unopposed responsive proposal to introduce a redacted audio recording and a redacted transcript of the ▬▬▬ deposition testimony, Dkt. 276. For the reasons that follow, the Court will grant the motion and adopt the parties' proposal.

**I.      LEGAL STANDARDS**

"The First Amendment guarantees the press and the public access to aspects of court proceedings," *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997), if (1) "there is an unbroken, uncontradicted history of openness"; and (2) "public access plays a significant positive role in the functioning of the proceeding," *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (citation modified).  Applying that standard, courts have recognized a public right of access to a range of proceedings and documents, including criminal trials, voir dire, preliminary hearings, and completed plea agreements.  *See id.* at 795–96.

Even a recognized right of access to a given proceeding or document, however, is "not absolute."  *Id.* at 795 (citation modified); *see Press-Enter. Co. v. Superior Ct. of Cal.*, 478 U.S. 1,

9 (1986). "Where there is a First Amendment right of access to a judicial proceeding, the presumption of access can be overridden" if, and only if, "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Brice*, 649 F.3d at 796 (citation modified); *see Press-Enter.*, 478 U.S. at 9–10 ("The presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." (citation modified)).

The public also enjoys a separate common law right of access to judicial records. *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020); *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." (footnote omitted)); *In the Matter of the Application of WP Co. LLC*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016) ("The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." (citation modified)). But while there is a "strong presumption in favor of public access to judicial proceedings," *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citation modified), the common law "right to inspect and copy judicial records is not absolute," *Nixon*, 435 U.S. at 598. As such, the "presumption may be outweighed by competing interests." *In re Leopold*, 964 F.3d at 1127.

The D.C. Circuit identified in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), six factors for a district court to consider in determining whether a judicial record may be sealed: "(1) the need for public access to the documents at issue; (2) the extent of previous public access

to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *EEOC*, 98 F.3d at 1409 (citing *Hubbard*, 650 F.2d at 317–22).

## II.  ANALYSIS



See Mot. for Rule 15 Dep. ▮▮▮ During the deposition, ▮▮▮ See id. at 1–4; Gov't Resp. to Mot. to Accept Redacted Dep. Tr. at Suppression Hr'g (Resp.) 2–3, Dkt. 276. ▮▮▮ the Court will hold an evidentiary hearing on Al-Marimi's motion to suppress the alleged confession. *See* Dkt. 159. ▮▮▮ deposition testimony ▮▮▮ "substantial[ly] similar to the testimony ▮▮▮ at the suppression hearing." Resp. 3.

Both parties have proposed that the Court admit a redacted transcript of ▮▮▮ Rule 15 deposition "in lieu of live, duplicative testimony" at the suppression hearing. Mot. to Accept Redacted Dep. Tr. at Suppression Hr'g (Mot.) 1, Dkt. 263; *see* Resp. 1. The government has further proposed, without objection, that the Court admit a redacted audio recording of ▮▮▮ testimony. *See* Resp. 1, 18 n.8; Def.'s Reply in Support of Mot. to Accept Redacted Dep. Tr. at Suppression Hr'g (Reply) 8–9, Dkt. 287-2. For the reasons that follow, the Court will grant the parties' proposal.

3

### A. Proper Legal Framework

Although both parties ask the Court to admit a redacted transcript and audio recording of ▆ Rule 15 deposition at the upcoming suppression hearing, they offer different legal frameworks for their proposal.

The government argues that the Rule 15 deposition and the suppression hearing are "distinct proceedings subject to different public-access standards." Resp. 4. In particular, the government notes that, while the public has a qualified First Amendment right of access to suppression hearings, it does not have a similar right of access to a Rule 15 deposition unless and until testimony from the deposition is offered in a judicial proceeding. *Id.* Because the public's right of access to ▆ Rule 15 deposition testimony does not attach until ▆ testimony is introduced at the suppression hearing, the government contends that ▆ deposition "can be admitted as an exhibit, played in court, or otherwise made part of the record at the suppression hearing," *id.* at 1, so long as any redactions are appropriate under the *Hubbard* factors, *see id.* at 20–22.

Al-Marimi, in contrast, appears to argue that the Court must apply the traditional First Amendment analysis to the parties' proposal. *See* Reply 5 ("[T]he standard that the Court must apply in balancing the public's right of access with Mr. Al-Marimi's rights to a fair trial and the presumption of innocence is governed by *Press-Enterprises II*.").[1] That framing is not without merit. While the public likely does not have a First Amendment right of access to ▆ Rule 15 deposition, *see In re Associated Press*, 162 F.3d 503, 512–13 (7th Cir. 1998), ▆

---

[1] Elsewhere, Al-Marimi asserts that, "to the extent that the Court finds that the proposed procedure of submitting a redacted public transcript of the [Rule 15] testimony constitutes a partial closure of the suppression hearing, the *Hubbard* factors justify such a partial closure." Reply 2. As noted above, however, the *Hubbard* factors apply to the sealing of judicial *records*, not proceedings.

4

███████████████, the Court will hold a suppression hearing to which the public likely does have a qualified right of access, *see Matter of Pub. Def. Serv. for D.C. to Unseal Certain Recs.*, 607 F. Supp. 3d 11, 22 (D.D.C. 2022). Further, ██████████████████████ Rule 15 deposition with the specific intent to introduce portions of the deposition at the suppression hearing (as well as to potentially admit the deposition at trial), ██████████████████████ ██████████████████████████████████████████████████ *Contrast, e.g.*, *In re Associated Press*, 162 F.3d at 505–06, 510–13 (Rule 15 deponent was unavailable to testify at trial and, at the time of the Rule 15 deposition, the parties had not yet decided whether to introduce the deposition testimony at trial). Indeed, many of the facts ███████████████ ██████████████████████ the "same facts" relevant to Al-Marimi's suppression motion. Resp. 3. Under these unique circumstances, substituting ██████ live testimony at the suppression hearing with a redacted transcript or audio recording of ██████████ Rule 15 deposition could be viewed as a circumvention of the public's First Amendment right of access to the suppression hearing. So conceived, the parties' proposal is akin to sealing a portion of the suppression hearing itself, a step that is appropriate only if the proposal satisfies a First Amendment analysis.[2]

The Court need not decide whether the parties' agreed upon proposal is properly assessed under the traditional First Amendment framework or the *Hubbard* factors. Under either analysis,

---

[2] The government rejects any such framing, citing *In re Associated Press*, 162 F.3d 503 (7th Cir. 1998). *See* Resp. 13–15. But the issue in that case was whether the district court properly excluded the public from a Rule 15 deposition that was later introduced at trial in video form. *See In re Associated Press*, 162 F.3d at 512–13. The question whether the introduction of the deposition video at trial operated to effectively seal a portion of the trial was not at issue. Nor could it have been—unlike here, a video recording of the deposition was ultimately played "in its entirety for the jury in open court," and the district court later "released the video and its transcript to the public." *Id.* at 506. The Seventh Circuit's analysis thus does not speak to the circumstances at issue in this case.

the proposal is appropriately tailored to protect the interests of both the defendant and the government, while sufficiently safeguarding the public's right of access.

### B. First Amendment

Assuming for the purposes of deciding that the public has a First Amendment right of access to suppression hearings, the parties' proposal satisfies the traditional First Amendment analysis for partially closing the proceeding.

First, the proposed limited closure of the suppression hearing serves several "compelling interest[s]." *Brice*, 649 F.3d at 796 (citation modified). Al-Marimi asserts his "rights to be presumed innocent and to a fair trial." Reply 3. In particular, he points to the extensive pretrial publicity of this case, arguing that, "if the public were to have access to ▮▮▮▮ complete testimony, months in advance of the trial, [his] rights to be presumed innocent and to have a fair trial risk being jeopardized." Mot. 4–5. The government, for its part, advances an interest in protecting ▮▮ safety and in ensuring ▮▮ is both willing and able ▮▮ to testify at trial. *See* Resp. 16–18.

Second, there is a "substantial probability" that these interests would be harmed absent partial closure. *Brice*, 649 F.3d at 796 (citation modified). Introducing ▮▮ full testimony at the suppression hearing in any form would heighten the risk that pretrial publicity regarding ▮▮ intensify, jeopardizing his rights to be presumed innocent and to a fair trial. *See Press-Enter.*, 478 U.S. at 14 ("Publicity concerning the proceedings at a pretrial [suppression] hearing . . . could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial." (citation modified)). At the same time, introducing even an abridged version of ▮▮ testimony in video form could jeopardize ▮▮ safety ▮▮▮▮

6



Resp. 17–18; *see id.* at 18

Finally, the Court concludes that "there are no alternatives to closure that would adequately protect the[se] compelling interest[s]." *Brice*, 649 F.3d at 796 (citation modified). The Court cannot order the parties to introduce ▮ full testimony without harming Al-Marimi's rights to be presumed innocent and to a fair trial. Nor can it require the parties to introduce a video of ▮ testimony, ▮ testify live at the suppression hearing, without risking ▮ safety and decreasing the likelihood ▮ will be able and willing to return to testify at trial. As such, the Court is satisfied that introducing ▮ Rule 15 testimony in a redacted, non-video form is the minimum closure necessary to safeguard the parties' interests and is narrowly tailored to protect the public's First Amendment right of access. *See Press-Enter.*, 478 U.S. at 9–10.

C.  *Hubbard*

Alternatively, if ▮ Rule 15 deposition is viewed as wholly extrinsic to the suppression hearing, the parties' agreed upon proposal amounts to a request to seal the video recording of ▮ deposition in full, while granting the public access to portions of the transcript and audio recording.

For many of the same reasons already stated, the Court concludes that the parties' proposal satisfies the *Hubbard* factors.[3]  *See Hubbard*, 650 F.2d at 317–22.  As to the first factor, the public has minimal, if any, need for access to the full transcript or audio recording, or to any portion of the video recording of ▮ testimony.  The portions of the testimony on which the parties will rely during the suppression hearing will be introduced in open court, and the public does not have an interest in learning ▮ identity at this time.  As to the second factor, the public has not previously had access to the records at issue.  As to the third, fourth, and fifth factors, both Al-Marimi and the government have advanced weighty interests that support partial sealing, and, for the reasons already stated, full access to the Rule 15 deposition would pose a significant risk of prejudice to both parties.  Finally, while the sixth factor might arguably weigh in favor of disclosure, the Court agrees with the government that the public's common law right of access "would be more than adequately vindicated by the [parties'] proposal, in which attendees at the suppression hearing could hear ▮ testimony and all members of the public could subsequently review a [redacted] transcript." Resp. 22.

\* \* \*

For the foregoing reasons, the Court grants both (1) the defendant's unopposed motion to introduce at the suppression hearing a redacted transcript of the sealed Rule 15 deposition ▮, Dkt. 263; and (2) the government's unopposed proposal to introduce portions of an audio recording of the deposition in addition to the redacted transcript, Dkt. 276.

Accordingly, it is

---

[3] In reaching this conclusion, the Court assumes without deciding that the transcript, audio recording, and video recording are "judicial records" to which the public has a common law right of access.  *In re Leopold*, 964 F.3d at 1127.

**ORDERED** that the parties' proposal—which includes the defendant's unopposed motion, Dkt. 263, and the government's unopposed responsive proposal, Dkt. 276—is **GRANTED**. It is further

**ORDERED** that the parties shall confer ▮▮▮▮▮▮▮▮▮▮ and promptly propose redactions to the deposition transcript and audio recording. It is further

**ORDERED** that any redactions shall be limited to those necessary to protect the interests identified in this memorandum opinion and order. It is further

**ORDERED** that the parties shall file a redacted version of ▮▮ Rule 15 deposition transcript on the public docket on or before the conclusion of the suppression hearing; to the extent that the parties disagree over the scope of the redactions, they shall submit separate filings. Finally, it is

**ORDERED** that the parties shall file, on or before January 28, 2026, either (1) joint proposed redactions to this memorandum opinion and order; or (2) separate proposed redactions.

**SO ORDERED.**

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

January 27, 2026

9