**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS *IN LIMINE* REGARDING GOVERNMENT'S TRIAL EXHIBITS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defendant's motion *in limine* regarding the government's proposed exhibits. The government requests the Court overrule the defendant's objections.

## FACTS

As the Court is aware, this case arises out of the bombing of Pan Am Flight 103 on December 21, 1988, which exploded over Lockerbie, Scotland, while *en route* from London's Heathrow Airport to John F. Kennedy International Airport in New York City. The explosion resulted in the deaths of 270 people, 259 of whom were aboard the flight, and another 11 residents of Lockerbie. The details of the crash, as well as the extensive investigation that followed, are outlined in ECF 26 and the transcript from the Motion to Suppress Hearing. As a result of the investigation that has spanned 38 years, the defendant is charged with destruction of an aircraft

resulting in death, in violation of 18 U.S.C. §§ 32(a)(2), 34, and 2; and destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(1), 34, and 2.[1]

In preparation for the trial, the government shared a preliminary exhibit list with the defense, indicating what exhibits it might introduce at trial. See Attachment A. In an effort to assist the defense, the government italicized certain exhibits to indicate those that we intended to have available rather than offer affirmatively. For the italicized items, the government does not intend to introduce those items unless the defense asks questions on cross-examination or puts forth a witness that makes the items relevant.

## ARGUMENT

### I. The identified exhibits are admissible under 401 and 403

As the defense agrees, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is material, i.e., "of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence generally is admissible. Fed. R. Evid. 402. As the government outlines below, the proposed exhibits are clearly relevant.

The next step that the Court must consider is the Rule 403 balancing test. As the D.C. Circuit has repeatedly emphasized, "Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of unfair prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008). *See also United States v. Manner*, 887 F.2d 317, 322 (D.C. Cir. 1989) (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984) and *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir.1978) (each

[1] The defendant was also charged with destruction of a vehicle used in foreign commerce by means of an explosive, resulting in death, in violation of 18 U.S.C. § 844(i), but that charge was dismissed by the Court.

quoting and adding emphasis to Fed. R. Evid. 403). With the scales so calibrated, the law of this circuit is to "lean toward admitting evidence in close cases." *Manner,* 887 F.2d at 322 (citing *United States v. Payne*, 805 F.2d 1062, 1066 (D.C. Cir. 1986) and *Moore*, 732 F.2d at 989). That approach is consistent both with "the 'thrust of the Federal Rules,' which favors 'admissibility,'" and with the Supreme Court's teaching about the "fundamental and comprehensive" need to "develop all relevant facts in the adversary system," which is required both for the "ends of criminal justice" and the "very integrity of the judicial system and public confidence in [it]." *Day*, 591 F.2d at 879 (quoting J. Weinstein & M. Berger, Evidence P 403(03) at 403-18 (1977) and *United States v. Nixon*, 418 U.S. 683, 709 (1974)).

The defense makes generalized objections for each exhibit, merely citing that the exhibit "may risk" the jury confusing the issues. That is not the legal standard. Rule 403 focuses not on "prejudice" but "on the 'danger of unfair prejudice,' and gives the court discretion to exclude evidence only if that danger 'substantially outweighs' the evidence's probative value." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (quoting Fed. R. Evid. 403). As illustrated below, the exhibits are highly probative, and their value is not substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

A. <u>100 Series: Pan Am Commercials</u>

The government's theory of the case is that the bombing of Pan Am Flight 103 was motivated by the Libyan government's desire to inflict revenge on the people of the United States. The status of Pan American World Airways as a — indeed <u>**the**</u> — major U.S.-based passenger airline makes this revenge motive more likely because it explains the co-conspirators' choice of target. Pan Am's marketing of itself as the premier U.S. airline is

relevant to the public's (including the co-conspirators') perception of it as such. Additionally, Pan Am's marketing as an airline that prided itself on on-time departures also explains the co-conspirator's choice of target, since it makes it more likely their plan would succeed if security took a backseat to punctuality. Evidence on this point is especially appropriate because many jurors will not be familiar with Pan Am, which ceased to exist as a major airline decades ago. As the Supreme Court has explained, making a case with "tangible things…tells a story with descriptive richness" and the "persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them." See *Old Chief v. United States*, 519 U.S. 172, 187 (1997). Making Pam Am's corporate identity tangible to the jury is critical to the government's ability to present a coherent and compelling narrative at trial.

B. <u>200 Series: Crime Scene Photos</u>

The government expects the defense to challenge the chain of custody of the crime scene evidence that was collected in this case, as well as the integrity and sufficiency of the investigation. These photos are evidence of the methodical searches that were conducted, and they capture and depict the details of how the evidence was collected and maintained. These are also photos of the crime scene itself, which is relevant to show that a crime occurred, which is something the government must prove.

C. <u>800 Series: Maltese Travel Records</u>

These exhibits are Immigration Records Office (IRO) cards. These cards were filled out by all passengers entering and exiting Malta through Luqa Airport in 1988. The identified government's exhibits, documenting the travel of the defendant and his co-conspirators, are relevant to prove the conspiracy. While this case does not involve conspiracy as a charged offense,

it still a "conspiracy case" in that the defendant is alleged to have committed the offense in concert with others in pursuit of a shared objective. *See* ECF 7 at ¶ 10 (Indictment, alleging that defendant conspired with other ESO associates to commit terrorist acts against the United States). The government expects to request that the jury be instructed on the theory of co-conspirator liability at trial. Courts have found that when determining whether the evidence supports a finding of a conspiracy, "we look at whether the defendants 'shared a common goal,' any 'interdependence between the alleged participants,' and 'any overlap among alleged participants,' such as the presence of core participants linked to all the defendants." *U.S. v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (*quoting U.S. v. Graham*, 83 F.3d 1466, 1471 (D.C. Cir. 1996)). The government's travel record exhibits show the coordination and participation of members of the conspiracy. Further, the timing of the documented events is evidence of the preplanning and organization that went into the conspiracy.

The defense objects to exhibits related to "Maltese Travel"[2] because "[t]hat others traveled to Malta in 1988 does not have tendency to make a fact in issue more likely and may risk confusing the issues or misleading the jury." These exhibits are related to the travel of named co-conspirators that occurred generally around the same time or in tandem with the defendant's travel. For example, Exhibits 826 & 827 are IRO cards in Abdelbaset Ali Al-Megrahi's name, documenting his travel from Tripoli to Malta on October 8, 1988, and his return flight departing Malta on October 10, 1988. Exhibits 824 & 825 are IRO cards in the defendant's name, documenting his flights from Tripoli to Malta and Malta to Tripoli on the same dates that Megrahi travelled. The evidence shows that the defendant and Megrahi, a named co-conspirator, flew in and out of Malta

[2] The defense grouped the material by subject and noted the specific exhibit numbers that are relevant to their objections. The government has addressed identified the specific exhibits that will be affirmatively offered in the government's case-in-chief in the charts that follow.

on the same day on more than one occasion, make it more likely that the defendants were working together, in furtherance of the conspiracy.

Another example of coordinated travel of the co-conspirators occurred in December 1988. Exhibit 845, an IRO card in Fhimah's name, documents Fhimah's travel from Tripoli to Malta on December 4, 1988. Exhibit 830, an IRO card in the defendant's name, documents the defendant's travel from Libya to Malta on December 7, 1988. Exhibit 832, IRO card in the Megrahi's name documents Megrahi's travel to Malta on December 7, 1988. The fact that all three co-conspirators arrived on the island within days of each other is evidence of preparation in furtherance of the conspiracy.

The defense objects to "documents related to Megrahi Travel to Switzerland" because Megrahi's travel "does not involve Mr. Al-Marimi and runs the risk of confusing the issues or misleading the jury." Megrahi's travel to Switzerland is relevant to the contour of the conspiracy. Exhibits 1564 and 1565 are registration cards from the Zurich Continental Hotel in the name of Abdelbaset Mohamed Megrahi dated October 18, 1988, and December 16, 1988, respectively. On those two occasions, Megrahi travelled to Switzerland within days of traveling with the defendant. Moreover, Megrahi and Badri Hasan, another ESO member and co-conspirator, had rented office space in a building that was owned by and down the hall from MEBO, the company that produced the timer that was used to detonate the bomb on Pan Am Flight 103. Further, in order to facilitate his trips to Switzerland, Megrahi filled out a Swiss visa application, Exhibit 1550, presenting himself as a Flight Dispatcher for LAA in Tripoli. The fact that Megrahi stayed in Switzerland, in the city where the MST-13 timer was made, on several occasions immediately before or after traveling with the defendant makes it more likely that these travels were in furtherance of the conspiracy.

The defense objects to the "Czech Republic Documents" because "[e]vidence of Mr. Megrahi's travel to Prague, which does not involve Mr. Al-Marimi, runs the risk of prejudicing Mr. Al-Marimi by confusing the issues or misleading the jury." Government's Exhibits 900-911, materials gathered in the Czech Republic, are evidence of the conspiracy. Specifically, Megrahi's travel to Prague, where the explosive Semtex is manufactured, just after traveling with the defendant in October and just before and after meeting and traveling with the defendant in December, is evidence of actions taken in furtherance of the conspiracy. This is evidenced by Exhibits 901 and 902, two Czech visa applications that were stamped on October 10, 1988, and October 18, 1988, and on December 8, 1988, and December 16, 1988, respectively. Exhibit 905, a letter from the Libyan Military Procurement office requesting accommodations for Megrahi on October 10, 1988, and requesting that the bill be sent to the Libyan Purchasing office, is evidence that Megrahi travelled to Prague to do work for the Libyan government. Government's Exhibit 904, a bill from the Hotel InterContinental Prague, notes that "Lib. Arabska Jamahiria Military Office" in Prague was billed for Megrahi's hotel stay. Exhibit 908, a letter from the People's Bureau of the Socialist people's Libyan Arab Jamahiriya to the Hotel Intercontinental in Prague, confirms that all costs connected with Megrahi's accommodations in December 1988 would be paid for by the Bureau. In short, the Czech travel documents are relevant to show that the Libyan government was actively supporting travel of Megrahi in furtherance of the conspiracy.

| Exhibit Number or Series | Description | Defense Objection | Government Response |
|---|---|---|---|
| 100 Series | Pan Am videos | The promotional videos do not make a material fact at issue more or less likely. | See Section I.A. above. |

| | | | |
|---|---|---|---|
| 201 | Photographs of searches | Photographs of search and those participating are not relevant. | See I.B. above. |
| 216 | Map of Sector G | Extraneous handwriting on document. | The government has no objection to redacting the handwriting at the top of the map. |
| 505 | Photograph identified by law enforcement officer. | Photograph depicts Mr. Al-Marimi behind a bar and in a jail jumpsuit for another criminal case. | The government is unlikely to use this photograph in its case-in-chief; however, it has been identified as an item that could become relevant during trial. Should this item become relevant during trial, the government would provide a basis for admission prior to its introduction. |
| 708 | Maltese Clothing Receipt | This document has little to no probative value because portions are so faint as to be illegible. | The government is unlikely to use this photograph in its case-in-chief; however, it has been identified as an item that could become relevant during trial. Should this item become relevant during trial, the government would provide a basis for admission prior to its introduction. |
| 821, 826-827, 833-863 | Maltese Travel | That others traveled to Malta in 1986 and 1988 does not have a tendency to make a fact in issue more likely and may risk confusing the issues or misleading the jury. | See I.C. above. |
| 900 Series | Czech Republic Documents | Evidence of Mr. Megrahi's travel to Prague, which does not involve Mr. Al-Marimi, | See I.C. above. |

| | | | |
|---|---|---|---|
| | | runs the risk of prejudicing Mr. Al-Marimi by confusing the issues or misleading the jury. | |
| 1400 Series | Senegalese Documents | The Senegalese police documents are of limited relevance to the charges against Mr. Al-Marimi, and whatever marginal relevance they may have is substantially outweighed by the danger of unfair prejudice and confusion of the issues — jurors are likely to improperly conflate the conduct of the Libyans arrested in Senegal with the culpability of Mr. Al-Marimi, and the government has not established a sufficient nexus between those events and the charged offenses. | As it stands, the government is unlikely to use evidence regarding Senegal in its case-in-chief.[3] |
| 1535<br>1536<br>1540 | Documents related to Scottish Witness | These documents are of limited, if any relevance to the charges against Mr. Al-Marimi under FRE 401, as none of them mention or identify him. Whatever marginal relevance the Government may claim is substantially outweighed under FRE 403 by the danger that the jury will treat Mr. | The government is unlikely to offer these exhibits in its case-in-chief. |

[3] The Court's rulings on the issues briefed in ECF 398-1 (sealed motion regarding a Rule 15 deposition) will have a strong bearing on whether the government elects to present evidence regarding Senegal.

| | | | |
|---|---|---|---|
| | | Al-Marimi's alleged association with those identified in the documents as substantive evidence of guilt — effectively convicting him on the basis of his alleged associations rather than his own proven conduct. | |
| 1554-1556<br>1558<br>1561-1565<br>1567-1577 | Documents related to Megrahi travel to Switzerland | Evidence of Mr. Megrahi's travel to Switzerland, which does not involve Mr. Al-Marimi, runs the risk of confusing the issues or misleading the jury. | With the exception of Exhibits 1564 and 1565, the government is unlikely to offer these exhibits in its case-in-chief.<br><br>1564 and 1565 relate to co-conspirator Megrahi's travels during October and December 1988. See I. C. above. |
| 1578 | Libyan Witness Swiss visa application | Evidence of Libyan Witness' Swiss travel in 1986, which does not involve Mr. Al-Marimi, runs the risk of confusing the issues or misleading the jury. | The government is unlikely to offer these exhibits in its case-in-chief. |
| 1901 | Image of Qaddafi dressed in the garb of the Amazonian Guards (aka the "Revolutionary Nuns" of Libya) | The Amazonian Guard reportedly surrounded Qaddafi for protection from shooters; thus, the undue prejudice of this particular photo outweighs any probative value given that many other photos of Qaddafi exist that can be used for identification. | The government does not intend to introduce anything about the meaning of Qaddafi's clothing in this image. The defense can voir dire jurors about their knowledge of it if they are so inclined. |

## II. The exhibits are not "needlessly cumulative"

The government bears the burden of proof, and accordingly, must be "accorded substantial leeway to submit evidence of its choosing to prove its case." *Old Chief*, 519 U.S. at 200. Probative evidence is often helpful to the government and harmful to the defense, but that is not the measure of "unfair prejudice" under Rule 403. *Henderson v. George Wash. Univ.*, 449 F.2d 127, 134 (D.C. Cir. 2006). In a case with such a large crime scene, a large number of victims, and a lengthy investigation, there is bound to be a lot of evidence, whether it be photographs, physical evidence, documentary evidence or witness testimony. But the mere fact that there is a lot of evidence does not, on its own, mean that it is cumulative. *See United States v. Long*, 328 F3d 655 (D.C. Cir. 2003) (discussing a 403 inquiry involving 404(b) evidence, and stating "it is difficult, if not impossible, to draw a line at which such evidence, by virtue of its sheer volume, necessarily becomes unfairly prejudicial"); *see also United States v. Brown*, 597 F.3d 399, 406 (D.C. Cir. 2010) (*citing to* 22 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 5220, 306 (1st ed. 1978) (stating that evidence should not be excluded simply because it is repetitive, but because the "evidence on one side is so full that no jury that rejected it would be likely to change its mind because of the introduction of the proffered evidence"). As indicated below, the items are not needlessly cumulative, and in fact, are tailored to present a comprehensive overview of the crime scene in an efficient and concise manner.

| Exhibit Number or Series | Description | Defense Objection | Government Response |
|---|---|---|---|
| 200-209 | Photos of crash site, divided by sector. | Repeated images of crash debris and victims risk distracting and confusing the jury. | These are various photos of the crime scene in Scotland. The crime scene covered over 845 square miles, with |

| | | | |
|---|---|---|---|
| | | | thousands of pieces of evidence recovered. The crime scene was divided into sectors. Each sector was assigned a Detective Inspector to organize and oversee the search and collection of evidence. Exhibits 201-209 and 228 are collections of photographs that show different views and perspectives of each sector. There are approximately 30 photos from nine main sectors. While the government does not intend to introduce all of the photos, it is hardly cumulative to show photos from different locations and from different perspectives. |
| 212/213/214 (and 302.002) | Photographs of Reconstruction at Longtown | Repeated images of crash debris risk distracting and confusing the jury. | The defense has challenged some of Mr. Feraday's opinions in this case. Parts of his opinion were based on the evidence collected and the reconstruction of the plane. The government has a right to show how the evidence was recovered, examined, preserved and analyzed in this case. |
| 601 | Photos of La Belle Discotheque scene. | Repeated images of explosively damaged building and debris risk distracting and confusing the jury. | The defendant describes the explosion that took place at the La Belle nightclub as well as the extent of the damage. The government intends to nominate a select |

| | | | |
|---|---|---|---|
| | | | number of photos to present to the jury. |

**III. The relevance of the exhibits is not substantially outweighed by the danger of unfair prejudice**

As argued above, the standard for relevant evidence is not merely that a piece of evidence "poses a significant risk of unfair prejudice" as the defense argues. In this case, the crime is one of death and destruction on a massive scale. The evidence of this crime may be upsetting or disturbing or even "jarring," but that does not make it inadmissible. *See United States v. Khatallah*, 313 F.Supp.3d 176, 195 (D.D.C. 2018) (admitting autopsy photos and physical injuries where government is entitled to present a compelling case with evidence of its choosing). The D.C. Court of Appeals has explained:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.

*Gartmon*, 146 F.3d at 1021. The bombing of Pan Am Flight 103 was a horrific crime, one that occurred over 35 years ago, and the government has the right to fully explain to jury the crime that was committed.

As indicated below, the government does intend to limit the evidence it presents to prevent any substantial danger of unfair prejudice.

| Exhibit Number or Series | Description | Defense Objection | Government Response |
|---|---|---|---|
| 200-209 | Photos of crash site, divided by sector. | Each series contains graphic photos and poses significant risk of unfair prejudice. | The government does not intend to offer:<br>202.026<br>202.027 |

| | | | |
|---|---|---|---|
| | | | 202.028<br>203.013<br>203.014<br>204.013<br>205.020<br>205.023<br>206.010<br><br>The remaining photos do not create a substantial risk of unfair prejudice. The defendant is charged with causing death, and that is one of the elements the government must prove. In this case, there were 270 people killed and while the government does intend to show photos of the victims, the photos are from a distance, with unidentified injuries. Moreover, the government intends to show a limited number of the victims, because the government has a right to show the extent of the crime scene and the destruction caused. |
| 309.001<br>309.003-005<br>309.007<br>309.011-014<br>309.035<br>309.039<br>309.040<br>309.048 | Explosives testing. | The image depicts explosion, with mannequins resembling people, in an attempt to recreate the conditions of the explosion, and poses a risk of unfair prejudice. | The government is willing to make appropriate redactions as to mannequins if needed. |
| 508 | Video depicting Mr. Al-Marimi in custody and | The video depicts Mr. Al-Marimi in custody and wearing a jail jumpsuit | The defendant identifies himself in this video. The government will have the |

| | | | |
|---|---|---|---|
| | wearing a jail jumpsuit during prosecution for an unrelated criminal case. | during prosecution for an unrelated criminal case; the government has other, less prejudicial means of identification. | in-court identification of Jamal, which the defense is expected to challenge. There is no other identification more probative than the identification of the defendant. |
| 601 | Photos of scene at La Belle Discotheque | The proposed exhibit contains graphic photos and poses significant risk of unfair prejudice. | The government does not intend to introduce every photo. The government will nominate photos it will seek to introduce in accord with the Court's ruling admitting evidence of the La Belle bombing. |

## IV. The government will lay the appropriate foundation for all exhibits

The government agrees that a proper foundation must be laid for each exhibit. As indicated below, all exhibits will be introduced with witnesses who can testify to the foundations. As to the defendant's arguments regarding witnesses who can testify to the collection of specific items of the evidence, the government intends to present the law enforcement officer who oversaw the entire crime scene operation, then-Detective Chief Inspector Gordon Ferrie. He will speak to the collection of evidence throughout all of the Scottish sectors. DCI Ferrie will testify to the location of the sectors, how searches were conducted, how evidence was tagged, labelled and transported and what documentation was used. He will explain where the evidence was held and how it was logged and maintained. His testimony will lay the foundation for the crime scene items that the government intends to admit at trial. While he was not present for the collection of each and every item, his testimony will demonstrate that the "possibilities of misidentification and adulteration have been eliminated." *United States v. Mejia,* 597 F.3d 1329, 1336 (D.C. Cir. 2010). The D.C. Circuit has recognized that in order for evidence to be admissible, "a complete chain of

custody need not always be proved." *United States v. Mitchell*, 816 F.3d 865, 871 (D.C. Cir. 2016) (citing *United States v. Garcia*, 757 F.3d 315, 319 (D.C. Cir. 2014)). Further, the government expects to present testimony outlining the way the evidence has been maintained from 1988 to the present. *See* Attachment B (the "Scottish Declaration"). Here, the testimony will establish that the evidence the government intends to present is sufficiently tied to the crime in this case.

| Exhibit Number or Series | Description | Defense Objection | Government Response |
|---|---|---|---|
| 200-209 | Photos of crash site, divided by sector. | Government must present witness testimony that the photographs fairly and accurately depict what they observed at the scene, time and place of the image. | The government intends to present testimony from law enforcement officers who were present at the scenes where the evidence was collected. |
| 217 | Map of sectors. | Government must present witnesses to lay foundation for recovery of evidence as indicated on map. | The government intends to present testimony from law enforcement officers who were present at the scenes where the evidence was collected. Further, the government intends to present the law enforcement officer who oversaw the entire crime scene operation, DCI Gordon Ferrie. |
| 302.001-302.396 | Photographs from RARDE report. | Government must present sufficient witness testimony to lay foundation for how and where the depicted items were recovered. | Many of these exhibits were admitted through Mr. Feraday. There will be evidence from DCI Ferrie and others that discusses how evidence was collected generally and how it was maintained and preserved. |

| | | | |
|---|---|---|---|
| 303 | AAIB Report | Government must present sufficient witness testimony to lay foundation for report. | The government is unlikely to introduce this exhibit in its case-in-chief. |
| 304.002 | Two-dimensional layout of plane | Government must present witness testimony that the photographs fairly and accurately depict what they observed at the scene, time and place of the image. | The government will present testimony of witnesses who observed the layout. |
| 304.003 | Forward cargo hold diagram | Government must present sufficient witness testimony to lay foundation for diagram. | The government will present testimony of witnesses who were familiar with the layout of the plane. |
| 305 | Feraday RARDE Examination Notes | Government must present sufficient witness testimony to lay foundation for document. | The government is unlikely to introduce this exhibit in its case-in-chief. |
| 306 | Interim FAI Report | Government must present sufficient witness testimony to lay foundation for document. | The government is unlikely to introduce this exhibit in its case-in-chief. |
| 307 | Feraday Folder Notes | Government must present sufficient witness testimony to lay foundation for document. | The government is unlikely to introduce this exhibit in its case-in-chief. |
| 308 | Spectra Printouts | Government must present sufficient witness testimony to lay foundation for document. | The government is unlikely to introduce this exhibit in its case-in-chief. |
| 309.001-309.058 | FAA test photographs | Government must present sufficient witness testimony to lay foundation for how and where the depicted items were recovered. | The government will present testimony of witnesses who were present during the trials |
| 310 | Report on Test Explosions | Government must present sufficient witness testimony to lay | The government is unlikely to introduce this exhibit in its case-in-chief. |

| | | | |
|---|---|---|---|
| | | foundation for document. | |
| 507 | Photo purporting to be Mr. Al-Marimi with Abdelbaset Al-Megrahi. | The government has not indicated that it plans to call any witness with personal knowledge that Mr. Al-Marimi is in the car. Without such evidence, this photo is irrelevant under Rules 401/402. | The government will present witness testimony identifying Mr. Megrahi. The jury will have a sufficient basis to conclude that the defendant is in the exhibit by comparing it to Exhibit 508, where the defendant self-identifies. |
| 803 | Air Malta weekly flight schedule. | This document has not been provisionally admitted. The government's witness must lay sufficient foundation before it can be admitted as a business record. | This document is still pending a ruling from the Court. *See* ECF 326 at 3-4. |
| 824-863; 870 | IRO cards | These documents have not been provisionally admitted so the government must present sufficient witness testimony to lay foundation that the documents are what they purport to be. | The government intends to present testimony from a Maltese Airport Officer who worked in immigration control at Luqa Airport in 1988 who can identify the cards. |
| 868, 869 | Luqa airport photos | Government must present witness testimony that the photographs fairly and accurately depict what they observed at the scene, time and place of the image. | The government will present a witness with knowledge. |
| 901, 902, 909 | Megrahi Czech visa | Absent Court accepting certifications, the government must present sufficient witness testimony to lay foundation that the | The government has moved for admission of these documents in ECF 490. |

| | | | |
|---|---|---|---|
| | | documents are what they purport to be. | |
| 1002<br>1021<br>1023<br>1025<br>1027<br>1029<br>1030 | Frankfurt airport photos | Government must present witness testimony that the photographs fairly and accurately depict what they observed at the scene, time and place of the image. | The government will present a witness with knowledge or other foundational testimony (but most of these exhibits are not photos). |
| 1303<br>1306-1309 | Documents from Toshiba | These documents have not been provisionally admitted so the government must present sufficient witness testimony to lay foundation that the documents are what they purport to be. | The government will present a witness with knowledge or other foundational testimony if it moves for admission of these documents. |
| 1400 Series | Senegalese Documents | These records have not been provisionally admitted, and the government must present sufficient witness testimony that the proffered witness has personal knowledge of, or is otherwise qualified to authenticate, records created by a foreign law enforcement agency under foreign procedures. | The government will present a witness with knowledge or other foundational testimony if it moves for admission of these documents. |
| 1503, 1505, 1507-1512, 1516-1518, 1521, 1523-4; 1526-9; 1532-3, 1535-6; 1540-1545; 1547-1578 | Swiss Documents | These documents have not been provisionally admitted so the government must present sufficient witness testimony to lay foundation as to how these documents were recovered and | Exhibit 1529 was identified and moved into evidence as part of a Rule 15 deposition. *See* February 24, 2026, Depo. Tr. at 97.<br><br>Exhibits 1549, 1550, and 1559 are currently |

| | | | |
|---|---|---|---|
| | | maintained. For the government must present witness testimony that the photographs fairly and accurately depict the item(s) pictured. | pending rulings from this Court. *See* ECF 450 at 2.<br><br>The government will introduce testimony at trial regarding how the Scottish police received Exhibits 1564 and 1565 and anticipates seeking their admission under Fed. R. Evid. 803(16).<br><br>For all other exhibits listed in this box, the government is unlikely to seek their admission in its case-in-chief. |
| 1627 | Unboxed MEBO Timer | Government must present sufficient witness testimony to lay foundation as to how this piece of evidence was recovered, transferred, and maintained. | The government will present such testimony if we seek to introduce this exhibit. |
| 1921-1926 | Passports | The government must present sufficient witness testimony to lay a proper foundation under Rules 602/901. | The government plans to lay the foundation to authenticate these documents under Rule 901(8), as they are more than 20 years old and were found in possession of the Scottish government as outlined in the Scottish Declaration.<br><br>Additionally, the government plans to present testimony from the Swiss visa officer who issued the visa on the left side of page 18 of Exhibit 1925, who will confirm that he personally issued that visa, which will add |

| | | | |
|---|---|---|---|
| | | | support to the government's contention that the document is an authentic Libyan passport.<br><br>The other passports will be authenticated pursuant to Rule 901(b)(8), but if the Court is not satisfied by that alone, they can be authenticated through their distinctive characteristics and through comparison to Exhibit 1925. *See* Fed. R. Evid. 901(b)(3) & (4), |

## V. Rules 1002 and 1003 do not preclude the admissibility of Exhibits 500 and 502

The defense asserts, with regard to the defendant's statement taken in Libya and without any elaboration, that "there has been a genuine question raised about the original's authenticity and circumstances exist that make it unfair to admit the duplicate." ECF 483 at 19 (table). The preceding quote represents the sum total of all arguments the defense makes regarding why a copy of the record of interviews conducted in Libya, which were authenticated by sworn testimony subject to cross-examination, the substance of which has never been challenged, and which the Court admitted over an authentication challenge during that testimony, are inadmissible under Fed. Rs. Evid. 1002, 1003, and 1004.[4] As a result, the government and Court are left to ponder what

[4] The defense has not moved the Court to reconsider its ruling admitting Exhibit 500 as a copy over defense objection. *See* Jamal Depo. Vol. II at 26. The defense motion should be denied for that reason alone, but for the reasons stated herein, a motion to reconsider would be denied on the merits regardless.

precisely the defense means when it says it has raised a genuine issue about the original's authenticity and that the circumstances make it unfair to admit, and whether that unnamed genuine issue and those unnamed circumstances meet the standards to preclude the duplicate version offered by the government in Exhibit 500.[5] Without specifying what he believes the "genuine issue" and "unfair circumstances" to be, the defendant cannot meet his burden of excluding the copy under Rules 1002 and 1003, and the Court should deny the defendant's motion for insufficient pleading. Regardless, neither a genuine issue about the original nor unfair circumstances are present here.

A. Legal Principles

There are at least two exceptions relevant here to the general proposition, as stated in Fed. R. Evid. 1002, that an original is required to prove the contents of a writing. First, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. A duplicate, in turn, is defined as "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Fed. R. Evid. 1001(e). The defense has not contended that Exhibit 500 is anything but a duplicate of the original. Second, an original is not required if, among other things, an original

[5] The defense has also challenged Exhibit 502. Exhibit 502 is the entirety of materials received from Libya, including not only the statements taken by Jamal, but also a cover letter from the Libyan Attorney General's Office and a statement taken of an ESO operative (not the defendant) by someone other than Jamal. The government does not anticipate admitting Exhibit 502 in its entirety at trial, but should the government seek admission (for instance, if the defense opens the door to admission), that admission would not be barred by Rules 1002, 1003, or 1004.

Separately, as the Court knows, the government is attempting to obtain the original and/or original carbon copy of the statements taken by Jamal. If it succeeds in doing so, this issue will be moot. Accordingly, the government assumes *arguendo* for purposes of this response that the original and/or original carbon copy are unavailable.

cannot be obtained by any available judicial process. Multiple Circuit Courts of Appeals have held that the opponent of the introduction of a duplicate or secondary evidence about a writing bears the burden to show that there is a genuine issue as to the original or that admitting the duplicate would be unfair.[6] *See Tyson v. Jones & Laughlin Steel Corp.*, 958 F.2d 756, 761 (7th Cir. 1992); *United States v. DiMatteo*, 716 F.2d 1361, 1368 (11th Cir. 1983), *overruled on other grounds by United States v., DiMatteo*, 469 U.S. 1101 (1985); *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d. Cir. 1988); *United States v. Georgalis*, 631 F.2d 1199, 1205 (5th Cir. 1980).

There is scant case law analyzing Rule 1003's "genuine issue" standard. Those cases that do exist, however, demonstrate that the opponent's showing must be significant to rise to the "genuine issue" standard. Indeed, one of the treatises on which the defense relies, ECF 483 at 17, has concluded that, to preclude admission of a duplicate under Rule 1003, "the opponent must show that no reasonable jury could conclude the original is authentic." Wright & Miller, *Fed. Prac. & Proc.* § 8004 (2d ed.). The defense's burden is not satisfied by speculation, *Jones & Laughlin*, 958 F.2d at 761, or bald assertions. *See United States v. Habteyes*, 356 F. Supp. 3d 573, 548 n.4 (E.D. Va. 2018).

B. Analysis

1. Rule 1003

Although it offers no analysis in its current motion, the defense has previously offered three reasons why it believes it has established that a genuine issue exists with the original report of the statements at issue such that a copy thereof should not be admitted under Rule 1003: (1) unexplained alterations to the original, (2) failure to establish a chain of custody on the original,

---

[6] The government agrees with the defense that the D.C. Circuit has not explored these issues in depth.

and (3) Jamal's alleged lack of credibility. *See* ECF 392 at 3 n.3. None of those three reasons, alone or in combination, are sufficient to carry the defendant's burden.

For the reasons previously stated, Jamal testified credibly. But even if this Court were to disagree, that would not be a reason to exclude the statement that Jamal authenticated. That is because when deciding whether evidence is admissible under Fed. R. Evid. 104(b), the Court does not weigh credibility of witnesses. Its role is instead to determine whether a jury could reasonably find the conditional fact – here that Exhibit 500 is an accurate copy of the statements taken by Jamal – by a preponderance of the evidence. *See*, *e.g.*, *Huddleston v. United States*, 485 U.S. 681, 690 (1988) ("In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [] by a preponderance of the evidence"). The Court does not itself make the preponderance finding. *Id.* Here, a reasonable juror could conclude, based on Jamal's testimony, that Exhibit 500 accurately reflects the statements he took in the fall of 2012.

Nor does the alleged lack of chain of custody regarding the original raise a genuine question about it.[7] Jamal created the original. He testified that Exhibit 500 faithfully reproduces that original, and that it bears a red stamp that signifies that its text is an exact copy of the original. *See*, *e.g.*, Jamal Depo. Tr. Vol. II at 22-25. Jamal has since produced a second copy of the statements he took that is substantively identical to Exhibit 500. *See* Exhibit G to ECF 426. There

[7] As the defendant does not state what the "genuine issue" created by alleged problems with the either the chain of custody for the original is – or the "unexplained alterations" – the government will not speculate as to what the defendant means. The government reserves the right to respond if and when the defense puts forth a theory of that that genuine issue or unfairness may be.

has been no contrary evidence presented, or even proffered, by the defense, and Jamal's testimony is more than adequate for a reasonable juror to conclude that it faithfully represents the contents of the original.

The defendant's contention that "unexplained alterations" create a genuine issue about the original fares no better. It is uncontested that the underlines present in Exhibit 500 and Exhibit G do not alter the text of the statements taken by Jamal or otherwise affect the substance of the document.[8] Moreover, according to Jamal's declaration, the underlines that are present in Exhibit 500 were likely made prior to him having provided the original to the Libyan Official. *See* Jamal Decl. at 3. The presence of the red stamp in Exhibit 500 indicates that it is a true copy of the original. The defense has proffered no evidence, or even theory, as to whether, or in what respects, the copy in Exhibit 500 differs from the original. This is insufficient to support a finding of any "genuine issue" about the original or any unfairness in admitting a copy.

As noted *infra*, because the defense has offered nothing beyond speculation and bald assertions in support of its claim that it has raised a genuine issue or some unfairness as to the admission of Exhibit 500, the defense has not met its burden to prevent the admission of Exhibit 500, which is a duplicate of the original, under Rule 1003. A brief examination of cases where courts have held that a genuine issue was raised with respect to the original further demonstrates how the defendant has failed to carry his burden in this case. For example, in *Elliott v. Cartagena*, 84 F. 4th 481, 488-89 (2d Cir. 2023), the proponent of the evidence had *admitted* that the purported duplicate at issue was not in fact a duplicate of the original. In *Opals on Ice Lingerie v Bodylines Inc.*, 320 F.3d 362, 371 (2d Cir. 2003), each party presented competing and different documents

---

[8] For purposes of this pleading, the government uses "underlines" to refer only to those underlines that do not have corresponding "correction" symbols.

that they both claimed were copies of the original, and neither party was able to produce the original. In *Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*, 614 F. Supp. 2d 481, 483-85 (S.D.N.Y. 2009), the author of letters at issue testified that he did not draft the letters attributed to him; he recognized neither their contents and stated that the signatures on them were not in fact his signatures. The defense motion, even if the Court construes that motion as incorporating the defense's previous arguments on this topic, does not approach the level of specificity needed to sustain its burden to show that Exhibit 500 should not be admitted under Rule 1003.

2. Rule 1004

The defense offers even less analysis under Rule 1004 than it does under Rule 1003. Rule 1004 establishes that an original is not required if, among other reasons, the original cannot be obtained by any available judicial process, or if all of the originals are lost or destroyed, and not by the proponent acting in bad faith. The defendant has made no attempt to show that the original is in fact obtainable by available judicial process. The government believes the document to be currently possessed by a non-U.S. citizen located in Libya, and thus outside of the reach of the Court's subpoena. The United States does not have a mutual legal assistance treaty with Libya. If the government is unsuccessful in its ongoing attempts to obtain the original or original carbon copy, the Court will have adequate grounds to conclude that the original is not obtainable by judicial process. Accordingly, even if the Court finds Exhibit 500 to be inadmissible under Rule 1003, it is admissible under Rule 1004.

Although normally, the Court would determine whether the evidence meets the requirements of Rule 1004, under certain circumstances the Rules of Evidence specifically place the burden with the jury for resolving disputed issues related to the content of a writing. Thus, to the extent that the defendant is claiming either that the original never existed or that Exhibit 500 does not accurately reflect the content of the original, the Rules of Evidence compel the Court to

admit Exhibit 500 and let the jury decide the issue. *See* Fed. R. Evid. 1008(a) (in a jury trial, the jury determines any issue about whether an asserted writing ever existed) & (c) (in a jury trial, the jury determines any issue about whether other evidence of the content of a writing accurately reflects the content); *see also United States v. Wilde*, 674 Fed. Appx. 671, 673 (9th Cir. 2017) (unpub.) (citing Rule 1008 in permitting an agent to testify as to the contents of an email that could not be located); *United States v. Grayson*, 2025 WL 2366262 at *4 (6th Cir. 2025) (unpub.) (citing Rules 1004 and 1008 in admitting disputed copies where original was considered destroyed, and noting that it was up to the jury to decide if a disputed copy accurately reflected the content of the call at issue).

**VI. Exhibit 505 is not precluded under FRE 404(b) or 403**

Exhibit 505 is a close-up photo of the defendant that was used in an identification procedure with Jamal. The relevance of Exhibit 505 if the government offers it is obvious, as the government is required to prove the identification of the defendant. As noted above, the government expects the defense to challenge the in-court identification of the defendant by Jamal, making any other identification procedures relevant. The defense invokes Rule 404(b) but fails to argue why it is applicable here. The government does not agree that the photo itself is evidence of any other act, such that this falls under 404(b). The government expects that Jamal will testify to the fact that defendant was detained when the statement of the defendant was taken in 2012. The jury will not be told that this photo was part of an unrelated prosecution (unless defense opens the door). So his photo in prison garb with bars will not be any more prejudicial than Jamal's testimony and is relevant to proving the accuracy of Jamal's expected in-court ID.

However, insomuch that a juror could infer this photo as evidence of other crimes, wrongdoing or acts, the defense correctly points out that evidence of other crimes, wrongs or acts

are admissible for purposes such proving identity. *See* ECF 483 at 19. This photograph is evidence of identity which is expressly contemplated by the Rule. Other-acts evidence is admissible "so long as the evidence is offered for any other relevant purpose," including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2). *United States v. Moore*, 75 F. Supp 3d 444, 451 (D.D.C 2014) (*citing United States v. Lawson*, 410 F.3d 735, 741, 3 (D.C. Cir. 2005)).

The defense then moves to preclude, citing Rule 403, stating that the availability of other evidence is a factor in considering the probative value of the evidence. The government does not disagree that can be *a* factor, but that is not dispositive. *Old Chief*, 519 U.S. at 179. Regardless, the defense makes no mention of any other evidence the government has in establishing identity and in fact, Jamal is the only person who can identify the defendant as the person he interviewed in 2012 who gave a statement about his involvement in the bombing of Pan Am Flight 103. The defendant's own reasoning supports the admission of Exhibit 505.

## VII. Hearsay Responses

| Exhibit Number or Series | Description | Defense Objection | Government Response |
|---|---|---|---|
| 202-210 | Photos of crash site, divided by sector. | Written summaries of photos, included in each exhibit, are hearsay. | The government does not intend to offer the written summaries, which were provided to the defense for convenience. |
| 211 | Photographs of pieces of luggage container. | Tags included in the photographs include statements about what the item purportedly is and where it was recovered. | The tags are not offered for the truth of the matters asserted thereon. They are offered to show the accuracy and thoroughness of the recordkeeping and investigation. Even if a tag were inaccurate, the government would |

| | | | |
|---|---|---|---|
| | | | introduce that tag.<br><br>Second, the government expects to lay the foundation that the majority of the tags were filled out at the time of recovery, while the recovering officers were observing the item, thus making them admissible under the present-sense impression exception. *See* Fed. R. Evid. 803(1).<br><br>Finally, these tags were all created prior to 1998, and their authenticity will be established by persons familiar with the crime scene process and procedures in this case, thus making them admissible under the ancient documents exception. *See* Fed. R. Evid. 803(16). |
| 213 | Pieces of recovered metal and debris. | Tags included in final photograph include statements about what the item purportedly is and where it was recovered | The tags are not offered for the truth of the matters asserted thereon. They are offered to show the accuracy and thoroughness of the recordkeeping and investigation. Even if a tag were inaccurate, the government would introduce that tag.<br><br>Second, the government expects to lay the foundation that the majority of the tags were filled out at the time of recovery, while they were |

| | | | |
|---|---|---|---|
| | | | observing the item, thus making them admissible under the present-sense impression exception. *See* Fed. R. Evid. 803(1).<br><br>Finally, these tags were all created prior to 1998, and their authenticity will be established by persons familiar with the crime scene process and procedures in this case, thus making them admissible under the ancient documents exception. *See* Fed. R. Evid. 803(16). |
| 217<br>218 | Map of Sectors | Map purports to show recovery of evidence at particular locations. | There is no statement identified by the defense.<br><br>The government intends to present the testimony of a witness with knowledge or other foundational testimony to authenticate the maps. |
| 303 | AAIB report | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government does not intend to introduce this exhibit in its case-in-chief, but is marked for refreshing recollection or impeachment. Should this item become relevant during trial, the government would provide a basis for admission prior to its introduction. |
| 304.001-003 | Diagrams of plane | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government intends to present a witness with knowledge or other foundational testimony. |

| | | | |
|---|---|---|---|
| 305 | Feraday RARDE Examination Notes | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government does not intend to introduce this exhibit in its case-in-chief. |
| 306 | Interim FAI Report | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government does not intend to introduce this exhibit in its case-in-chief, but is marked for refreshing recollection or impeachment. Should this item become relevant during trial, the government would provide a basis for admission prior to its introduction. |
| 307 | Feraday Folder Notes | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government does not intend to introduce this exhibit in its case-in-chief. |
| 308 | Spectra Printouts | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government does not intend to introduce this exhibit in its case-in-chief. |
| 310 | Report on Test Explosions | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government does not intend to introduce this exhibit in its case-in-chief, but is marked for refreshing recollection or impeachment. Should this item become relevant during trial, the government would provide a basis for admission prior to its introduction. |
| 302.348 | Photograph of "MEBO" circuit board diagram | Handwritten notes indicate "MEBO," which is an out of court statement, about the origins of the timer. | An objection to this document is currently pending before the Court. *See* ECF 398-1 at 3 n.2. |
| 313.000 | Handwriting report | The report constitutes hearsay because these are the expert's out of court | The government does not intend to introduce the report in evidence, but it |

| | | | |
|---|---|---|---|
| | | statements offered for the truth of the matter asserted. The expert can testify about his conclusions and the bases for his conclusions, and use his report to refresh his recollection if needed. | may use some of the charts and illustrations as demonstrative exhibits with the witness. |
| 506<br>506-t | Law enforcement officer statement to Scottish law enforcement. | These statements constitute hearsay because they are out of court statements offered for the truth of the matter asserted. To the extent that the government seeks to introduce particular statements as prior consistent statements, the government can seek to elicit individual statements on redirect after Jamal's credibility is attacked on cross-examination. | The government does not intend to introduce these exhibits in its case-in-chief. |
| 602 | OPK/Box – full file | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government specifically noted that these exhibits were for identification only. It does not intend to introduce them in its case-in-chief. |
| 605 | OPK/Rinde – full file | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government specifically noted that these exhibits were for identification only. It does not intend to introduce them in its case-in-chief. |
| 606 | Typed report from Rinde file | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government specifically noted that these exhibits were for identification only. It does not intend to introduce them in its case-in-chief. |

| | | | |
|---|---|---|---|
| 607 | Handwritten report from Rinde file | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government specifically noted that these exhibits were for identification only. It does not intend to introduce them in its case-in-chief. |
| 610 | Masud & Shadi MfS cards | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government specifically noted that these exhibits were for identification only. It does not intend to introduce them in its case-in-chief. |
| 803 | Air Malta weekly flight schedule | The document contains out of court statements, and the government has not yet shown it meets the requirements of the business records exception | This exhibit is pending before the Court. *See* ECF 326 at 2-4. If the Court does not provisionally admit it, the government will present a witness with knowledge or other foundational testimony if it seeks admission. |
| 824-863, 870 | Maltese Embarkation and Disembarkation Records | These immigration records are out-of-court statements offered to prove the truth of the matter asserted — namely, the identity, nationality, and travel history of the declarant — so, the Government must establish that they qualify under a recognized exception, including whether they constitute business records under FRE 803(6) or public records under FRE 803(8) prior to admission. | The government intends to present testimony that will establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6) and/or 803(8). |
| 867 | Fhimah Diary | The writing contained in the exhibit constitutes hearsay because they are out of court statements offered for the truth of the | Fhimah is a co-conspirator and the portions of his diary that the government seeks to introduce were made |

| | | | |
|---|---|---|---|
| | | matter asserted. | during and in furtherance of the conspiracy. They are thus admissible under Fed. R. Evid. 801(d)(2)(E). |
| 901<br>902<br>909 | Megrahi's Czech visa | The contents of visas and visa applications are hearsay as they contain out of court statements offered for the truth of the matter asserted, namely, that the bearer was authorized to travel to and enter a particular country during a particular period | The government has moved for admission of Exhibits 901 and 902. *See* ECF 490 at 4-6.<br><br>The government does not anticipate moving to admit Exhibit 909 in its case-in-chief, but it notes that Exhibit 909 is a blank visa application exemplar. It thus contains no assertions and is not hearsay. |
| 1002<br>1021<br>1023<br>1025<br>1027<br>1029<br>1030 | Frankfurt airport and airline documents | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | Exhibit 1002 are photographs, which are not statements. For the other exhibits, the government will present the appropriate foundational testimony if it seeks their admission. |
| 1108-1120 | Heathrow airport and airline documents | Without a sufficient witness or foundation, the documents constitute inadmissible hearsay. | The government will present either appropriate witness testimony or certifications to establish hearsay exceptions. |
| 1303<br>1306<br>1307<br>1308<br>1309 | Japanese (Toshiba) documents | The owner's manual, sales summary, address list, and handwritten notations contained within or appended to these documents are out-of-court statements. The printed business documents may qualify as business records with the proper foundational testimony, but the handwritten notations | The government will present appropriate witness testimony if it seeks admission of these exhibits. |

| | | | |
|---|---|---|---|
| | | constitute a separate layer of hearsay requiring their own independent exception, as the author, timing, and circumstances of those notations have not been established. | |
| 1400 Series | Senegalese documents | These foreign law enforcement records are out-of-court statements offered to prove the truth of the matter asserted — namely, that items were seized, that certain persons were arrested, fingerprinted, interrogated, transferred and released, and that seized items were destroyed. They do not qualify as public records under FRE 803(8) because that exception expressly excludes records prepared by law enforcement personnel in criminal investigations. | As noted previously, the government is unlikely to admit these items in its case-in-chief. If it does, it will present appropriate testimony to authenticate the documents and establish the applicability of any hearsay exceptions. |
| 1503<br>1505<br>1507-1512<br>1518<br>1521-4<br>1526-7<br>1532-3<br>1535-6<br>1540-1545<br>1547-1549<br>1557 | Swiss documents (MEBO) | These assorted business documents are out-of-court statements offered to prove the truth of the matter asserted, and the government has not identified an applicable hearsay exception for each document or category of document. The government seeks to introduce these documents through a law enforcement witness, and Mr. Al-Marimi maintains that such witness cannot serve as a custodian or | The government is unlikely to admit these items in its case-in-chief. If it does, it will present appropriate testimony to authenticate the documents and establish the applicability of any hearsay exceptions. |

| | | | |
|---|---|---|---|
| | | qualified witness required to lay business records foundation. Similarly, the law enforcement reports are expressly excluded from the public records hearsay exception. | |
| 1549-1556; 1558-1578 | Swiss Documents (Travel) | Visa applications and hotel registrations are out-of-court statements offered to prove the truth of the matter asserted — namely, the identity, travel intentions, and lodging history of the declarant. | Exhibits 1549, 1550, and 1559 are currently pending before the Court. *See* ECF 450 at 2.<br><br>As described above, the government expects to move for the admission of Exhibit 1564 and 1565 under Fed. R. Evid. 803(16) at trial.<br><br>The government does not intend to introduce the remaining exhibits in its case-in-chief. |
| 1921-1926 | Passports | The contents of these passports are hearsay because they are out-of-court statements offered for the truth of the matter asserted. | Passports *qua* passports are more properly characterized as public records than business records, *U.S. v. Pluta,* 176 F.3d 43, 49 (2nd Cir. 1999) *citing to* 31 M. Graham, *Federal Practice and Procedure* § 6759, at 404 n.2 (interim ed. 1997) ("public records and reports of foreign governments," including "passport records," are within scope of Rule 803(8)). As such, the passports are admissible as public records. |
| | | | |

### VIII. Accuracy

The government and the defense are working on the translations of the identified exhibits, which will be addressed on or before June 22, 2026.

## CONCLUSION

For the above reasons, the Court should overrule the defense objections to the government's proposed exhibits.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Brittany Keil***
ERIK M. KENERSON (OH Bar No. 82960)
CONOR MULROE (NY Bar No. 5289640)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 252-7763 // Brittany.keil@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530