**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**DECLARATION OF PAUL GRAINGER**

PAUL GRAINGER hereby states the following:

I am a Detective Superintendent with the Police Service of Scotland (commonly known as Police Scotland) and have completed 27 years' police service. I have undertaken various senior investigative roles within Police Scotland in areas such as Counter Terrorism, Serious and Organised Crime, serious crimes of violence and other complex investigations.

In the exercise of these duties I have become highly familiar with the procedures of Police Scotland, including generally applicable procedures for obtaining and maintaining custody of evidence.

Since 2018 I have fulfilled the role of Senior Investigating Officer for the investigation of the bombing of Pan American Airways ("Pan Am") 103 over Lockerbie, Scotland in 1988. This has remained a live criminal investigation in Scotland since the attack took place, over 36 years ago. Among other things, I have knowledge of the history of the case and of the specific procedures

used for the collection of evidence, including documentary evidence obtained from businesses and government entities.[1] Those procedures have ensured that all potentially relevant evidence was collected, documented, and securely maintained for possible use in a future criminal prosecution. This document provides a brief overview of those procedures.

During the criminal investigation into the bombing, whenever a piece of evidence was obtained, or "seized,"[2] by Scottish police officers, the evidence was immediately given an "Evidence Label." For example, the following label was attached to a document obtained from Air Malta in 1991:


Form 25b

PRODUCTION LABEL NO. DC 1112

Dumfries & Galloway Constabulary

CASE AGAINST (Block Capitals)

DESCRIPTION OF ARTICLE PASSENGER LIST FOR FLIGHT KM 230 10.10.88

FOUND AIR MALTA, LUQA AIRPORT, MALTA

ON 21ST MARCH 1991

SIGNATURE(S) OF PERSON(S) IDENTIFYING ARTICLE

[1] The investigation also involved special procedures applying to the collection and processing of physical evidence and debris from the crime scene in Scotland and England. Given that this declaration is being submitted in connection with the U.S. government's motion related to documentary productions or exhibits, I have focused on the collection of documentary items and have not included a detailed explanation of the crime-scene processing procedures which were on an unprecedented scale given the geographical spread of debris as a result of the bombing. However, Police Scotland can provide detailed information about those procedures during the trial or for any preliminary proceeding at which such information would be relevant.

[2] "Seize" is the official term used to describe the Scottish police's obtaining custody of a piece of evidence; however, this does not necessarily mean that the item was taken by force or compulsion. Items that are provided voluntarily, and items that are found without any owner, are still considered to have been "seized."

The label contains several pieces of information. On the top, the name "Dumfries and Galloway Constabulary" identifies the geographical police constabulary conducting the investigation.[3] In the upper-right corner, a "label number" is assigned – in this case, no. DC1112 – that acts as a unique identifier for the piece of evidence. In the middle, handwritten notes provide a description of the article ("Passenger list for flight KM 230 10.10.88"), a description of where it was found ("Air Malta, Luqa Airport, Malta"), and the date of its collection ("21st March 1991"). Finally, at the bottom, the label bears signatures from persons who are capable of identifying the item. These would typically include the signatures of the seizing officer(s) as well as any other persons who identify, examine, or handle the item. The signatures create an auditable record of the item's chain of custody.

Every piece of evidence collected by the Scottish police forces during the investigation received a label, and each label was allocated a unique label number.

Apart from the labels, the police would also generate and retain further records relating to seized evidence. These include Production Books where all evidence seized is recorded and ledgers to record evidence movement.

All evidence is also logged in HOLMES (an acronym for Home Office Large Major Enquiry System), an information technology system predominantly used by UK police forces for the investigation and management of major incidents. The system is designed to manage serious and

[3] Dumfries and Galloway was one of the eight legacy regional forces in Scotland from 1975 to 2013, when they were merged into a single national force, the Police Service of Scotland.

complex crimes by collating and analysing vast amounts of information quickly and effectively. HOLMES provides modules for managing statements, documents, physical evidence, actions,[4] and disclosure,[5] ensuring a consistent and methodical approach to investigations. This system was used from the beginning of the enquiry into the destruction of Pan Am Flight 103. All evidence seized is recorded and cross referenced on the HOLMES system to provide strong assurance around evidential integrity.

Another important category of police documentation is "Witness Statements," which reflect verbatim statements provided by persons with knowledge about relevant facts and evidence. The process of generating witness statements involved Scottish police officers interviewing the witness and then recording verbatim the witness's responses to record them in a handwritten document (written from the witness's first-person perspective), which the witness would then read and, after making any necessary amendments, sign and adopt as his or her formal statement.

When a person giving a statement referred to a piece of evidence, the Witness Statement would identify it by the description of article recorded on its label. When the statements are recorded in the HOLMES computer system, the label numbers are added. Accordingly, one can conveniently associate any piece of evidence with the corresponding Witness Statement(s) that describe the circumstances of the item's original seizure and other relevant events. Staying with the same

[4] An "action" is a written instruction to carry out a task in connection with a particular line of enquiry.

[5] Disclosure is the process through which the police are obliged to reveal to Scottish prosecutors all information that may be relevant to the issue of whether the accused is innocent or guilty.

example as above, a Witness Statement from Air Malta's Ground Manager, General Operations at Luqa Airport, dated April 3, 1991, states in part (highlighting added):

> On Thursday 21st March, 1991 by prior arrangement I was interviewed at my office by a Scottish Police Officer (witness Detective Constable Derek Henderson S452BC) and an American (witness Special Agent John Bevington S5502B).
>
> In response to a previous request I gave these officers the following documents,
>
> Passenger list for Flight LN147 - 051088 (not a production)
>
> Prod No. Copy Air Malta Flight Coupons for KM231 - 081088
> (Label No. DC1114)
> I had been asked to supply all passenger manifests and flight coupons for flights from Tripoli to Malta on 081088. The Air Malta coupons are the only ones I am able to supply. I also handed over the
> Prod No. Passenger List for Flight KM230 - 101088 (Label No. DC1112)

Scottish police officers would generally lodge their own Witness Statements documenting the collection of evidence. For example, a statement of April 3, 1991, by Detective Constable Derek Henderson (who is mentioned in the Witness Statement above and whose signature appears on the Evidence Label) reads in part as follows (highlighting and redaction added):

> On Thursday 21st March, 1991 I interviewed the witness [redacted] (S5045G), General Manager, Ground Operations, Air Malta within his office at Luqa Airport, Malta. At this time I was accompanied by the witness John Bevington (S5502B), Special Agent, Federal Bureau of Investigation.
>
> [redacted] handed over the
>
> Prod No. Passenger List for Flight KM230 - 101088
> (Label No. DC1112)

In short, the Witness Statements, which discuss items of evidence by reference to their description and Label Numbers, provide substantial information about the provenance and authenticity of the evidence that has entered Scottish police custody.

As soon as a piece of evidence was seized, it entered the custody of the police and was thereafter continuously kept in secure conditions and protected from tampering. In particular, with regard to documents obtained from businesses and government entities, the documents themselves and any associated Statements would be provided to the HOLMES Team, which would make the appropriate entries into HOLMES, including creating cross-references that associate each document with the persons who provided and seized it. The documents would then be lodged in the production store.

The production store, then and now, was a secure area with restricted access, and only authorised personnel were permitted entry. The store has always been protected by an alarm system. The productions and documents are stored in a manner which allowed easy reference, and it was normal procedure to have the location of the item recorded on HOLMES, again for ease in locating any specific item. Documents and Statements are stored in boxes in numerical order and a check on HOLMES would identify which number was associated to which document/statement, etc.

In 2000-2001, two suspects were tried by a Scottish criminal court for their alleged participation in the bombing of Pan Am Flight 103. During the preparation of evidence in the case for court, many of the documents had Certificates of Authentication appended to them. Scottish legislation provides a procedure by which, by the addition of a docquet, a copy document may be treated as the equivalent of the original; a statement in a business document shall be admissible as evidence of any fact or opinion stated in it; and a business document may be taken to have its certified provenance. Consideration of documentary productions and certificates should be undertaken at the earliest possible stage but can also be carried out at any point prior to trial. This will have the effect that the written record can be accepted in place of adequate oral testimony. The purpose of these certifications was to facilitate the use of the corresponding business records in the Scottish trial, given the specific requirements of Scottish law that apply in that context. An example appears above. From the perspective of Police Scotland, the absence of a Certificate of Authentication is not a reason to doubt the provenance or authenticity of any document, provided that the document's evidence label and any associated documentation establish that the document came from the business in question.



Form 26.1-A.11
Certified copy document
- by authorised representative of possessor of original

CERTIFICATE OF AUTHENTICATION

I,[1] Wilfred J Borg, Air Malta PLC, Head Office, Luqa, LQA05, Malta.
Division Co-ordinator
being the authorised representative of [2] Air Malta PLC, Head Office, Luqa, LQA05, Malta which is in possession and control of the original of the copy document described below to which this certificate is attached hereby certify that it is a true copy of the original which in the possession and control of [3] Air Malta PLC, Head Office, Luqa, LQA05 Malta of which I am the authorised representative.

Date: 18/5/99 (Signed) Borg
[4] Division Coordinator

[describe document:]
Accepted Passenger List KM230 10 OCT 88

[1] Insert name, address and title of office held.
[2] insert name and address of person or body in possession and control of document.
[3] Insert name of person or body as at note 2 above.
[4] Insert authorised capacity in which certificate signed.

5

It is also worth noting that Schedule 8 Certificates of Authentication were introduced under new legislation contained within the Criminal Procedure (Scotland) Act 1995, which is why documents relating to a business prior to 1995 did not have them as standard. During pre-trial preparation,

under a process referred to as precognition, it was often the case that a supplementary statement would be obtained and where a document had previously been "seized" then a new Schedule 8 Certificate of Authentication and often a business docquet (that is, certification) would be attached to the production and the witness would sign this accordingly. It would also be referred to in the witness statement of both the officer conducting the interview and the witness.

Also as part of the preparations for trial, the various pieces of documentary evidence that were to be relied upon were electronically scanned so that they could be used in digital form in court. During the trial, 1,867 documentary productions or exhibits were entered into evidence by the Crown Office and Procurator Fiscal Service ("Crown Office," the Scottish prosecuting authority). Throughout the proceedings, the court never expressed any doubt as to whether the documentary exhibits being offered by the Crown Office were what they purported to be, that is, the authentic records of the person or entity from which they originated. The trial resulted in a guilty verdict against one of the defendants, which result has been affirmed by a higher Scottish court despite multiple appeals.

The scanned copies of the documentary productions or exhibits that were used in the Scottish trial are the same versions that the Scottish authorities provided to the U.S. Department of Justice, pursuant to a Mutual Legal Assistance request, for use in the prosecution of Mr. Al-Marimi. The items were scanned by the Crown Office for the Scottish trial so that digital copies could be used during the trial and viewed by the presiding panel of Judges on their computers. In advance of the scanned copies being transferred to the US Department of Justice, the Crown Office conducted a comprehensive review to ensure that the scanned copies remained identical to the original physical

version. As a result of this comprehensive review, it is assured that the digital versions of the documents in the possession of the U.S. prosecution team are faithful copies of the original documents seized by Police Scotland.

At the original trial, the Scottish High Court of Justiciary ultimately concluded that Megrahi did not act alone. The Lord Advocate in Scotland has remained committed to pursuing all those that were involved in the bombing in the pursuit of justice for all 270 people that lost their lives. To that end, the criminal investigation has remained open in Scotland since the bombing in 1988. On this basis, the evidence that was seized has continued to be stored as criminal productions or exhibits by the Scottish police in line with strict procedures, practices and security measures. Since Police Scotland continues to investigate the case actively, the documents and other evidence have never been disposed of or archived; instead, they have remained in the direct physical custody of the police, stored in a secure manner that prevents access by anyone except authorised personnel. All movements of productions are recorded on HOLMES.

From a judicial perspective, as noted above, there have been multiple appeals, which has necessitated keeping the evidence in such a condition that its integrity cannot be called into question.

Recently, select items of physical and documentary evidence were temporarily transferred to the custody of the Federal Bureau of Investigation (FBI) for use in the U.S. trial of Mr. Al-Marimi. This transfer of custody was conducted under the auspice of an agreed Production Movement Strategy formulated to be consistent with the protocols of Police Scotland and of the FBI. The

items transferred included various paper documents (digital versions of which were already separately provided, as noted above), as well as evidence recovered from the crime scene and other tangible objects.

In sum, Police Scotland's handling of the evidence in this case, including its provision of evidence in digital and physical form to the U.S. authorities, has conformed to the highest standards of reliability. The chain of evidence relating to each of these items is accurate and properly recorded, and the integrity of the item can be confirmed by records, labels and witnesses. Accordingly, notwithstanding the passage of time, the Court can be assured that the various documentary records now in the possession of the U.S. authorities are the same items, or scanned versions of the same, that were obtained from the businesses and other entities by the Scottish police during the original investigation

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 10, 2025.

PAUL GRAINGER
Detective Superintendent, Police Service of Scotland