**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 22CR392 (DLF)** |
| | **)** | |
| **ABU AGILA MOHAMMAD** | **)** | |
| **MAS'UD KHEIR AL-MARIMI,** | **)** | |
| **Defendant.** | **)** | |

# DEFENDANT'S MOTION TO EXCLUDE TESTIMONY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16, FEDERAL RULE OF EVIDENCE 702, AND *DAUBERT v. MERRELL DOW PHARMACEUTICAL*

The government has provided notice that it seeks to adduce testimony at trial from Mr. Christopher Protheroe and Mr. Peter Claiden, as rebuttal experts in the field of air accident investigations. Government's Expert Disclosure Letters for Christopher Protheroe and Peter Claiden, dated March 5, 2026 and June 23, 2026.

## ARGUMENT[1]

### I. Standard on Admissibility Pursuant to Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence (FRE), which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

[1] Mr. Al-Marimi has previously raised a significant number of the arguments below (ECF 442), however, as the government's supplemental notice incorporates the original expert notices, Mr. Al-Marimi repeats those arguments here.

> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court emphasized that Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific [and technical] evidence. *See Daubert*, 509 U.S. at 588; *Kumho*, 526 U.S. at 152.

*Daubert* establishes that Rule 702 focuses on two threshold inquiries: reliability and relevance. The "reliability" component requires that the expert's testimony come from scientific knowledge, meaning it must be both based on the "methods and procedures of science" and "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 591. "In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert* at 590. The "relevance" component requires the court to find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

As neither Mr. Protheroe's, nor Mr. Claiden's, expert notices provide sufficient information about what their testimony would be or how they are qualified to provide an expert opinion, their testimony must be excluded.

## II. The government's notices for Mr. Protheroe and Mr. Claiden do not provide sufficient notice of their intended testimony.

Federal Rule of Criminal Procedure 16(a)(1(G)(iii) requires:

(iii) Contents of the Disclosure. The disclosure for each expert witness must contain:

- a complete statement of all opinions that the government will elicit from the witness in its case- in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16. Notably, the government is required to provide this notice for rebuttal witnesses, not just its case-in-chief witnesses.[2] The recent amendments to the Rule mean that there is not yet extensive case law to define what "a complete statement" means. But "the amendment requires a complete statement of all opinions the expert will provide," although it "does not require a verbatim recitation of the testimony the expert will give at trial." Fed. R. Crim. P. 16, Advisory Committee Notes (2022 Amendment).[3] And the Eastern District of Texas reasonably described the amended Rule as requiring an expert notice that is "more specific than a generalized summary but less specific than an expert report in a civil case." *United States v. Vaughan*, No. CV 4:22-CR-00162, 2025 WL 844363, at *2

[2] "The amendment to (a)(1)(G) also clarifies that the government's disclosure obligation includes not only the testimony it intends to use in its case-in-chief, but also testimony it intends to use to rebut testimony timely disclosed by the defense under (b)(1)(C)." Fed. R. Crim. P. 16, Advisory Committee Notes (2022 Amendments).

[3] The government appears to agree with this, citing the same at ECF 359 at 3.

(E.D. Tex. Mar. 18, 2025) (*See* Fed. R. Crim. P. 16 advisory committee's note to the 2022 amendment). The Court concluded that:

> to be sufficient under Rule 16 as amended, a Notice must clearly state what opinions the expert will give and the bases for those opinions, such that the notified party can discern what opinions the expert holds, why the expert holds those opinions, and how those opinions relate to the facts of the case.

*Id.*

The government originally provided a separate notice for each witness. Each is less than two full pages, and neither detailed which defense expert the witness purports to counter. Both notices indicate that the expert will testify to "general background information regarding the process of investigating aviation accidents and incidents." Government's Expert Disclosure Letters. It further said that they will testify to "the information and conclusions found in the AAIB report published in July 1990." *Id.*[4]

The Air Accidents Investigation Branch (AAIB) Aircraft Accident Report No. 2/90 is over 150 pages long. It includes information about nearly every aspect of the incident itself, as well as the ensuing investigation. It provides details about the crew, the aircraft construction, the maintenance of the airplane, the weather, and the recovery of crash debris and its condition. The report further explains the

[4] The government also cites to several statements by Mr. Protheroe. Many of these simply repetitively document his use of certain evidence in the reconstruction of the aircraft. Others, including his 28-page statement, are like the AAIB report, as they include a broad range of acts that necessarily must have been undertaken by others, or reflect conclusions that cannot be based on his expertise alone. Without the ability to identify which opinions the government intends to have Mr. Potheroe testify to, counsel cannot raise any hearsay, Confrontation Clause or other critical objections.

disintegration of the aircraft, explosions, and shock waves. Citing to the report, therefore, does not sufficiently identify the testimony that the experts will provide. The proposed testimony, if limited only to the bounds of the report, would permit evidence about a tremendous range of subjects and does not allow counsel to prepare for cross examination or any necessary testimony from defense experts. Moreover, counsel and the Court stand unable to determine if this testimony even meets the standard for admissibility under FRE 702 or *Daubert*. In order to testify as to these subjects, the Court must first determine that these witnesses will help the trier of fact to understand the evidence or to determine a fact in issue, and that their testimony is based on sufficient facts or data, the product of reliable principles and methods, and reliably applied them to the facts of the case. FRE 702. This cannot be established, if there is no understanding of what that testimony will be. Likewise, counsel for Mr. Al-Marimi cannot object to relevance or reliability of the proposed expert testimony – and the Court cannot fulfill its gatekeeping role under *Daubert* – without being able to evaluate the specific opinions put forth by the witnesses.

Arguably, citing to the entirety of a 162-page report is a full disclosure, as it is difficult to imagine that much substantive testimony would not inherently be included in those pages. But something so broad does not allow the defense "adequate information about the content of the witness's testimony and potential impeachment." Fed. R. Crim. P. 16, Advisory Committee Notes (2022 Amendments).

The government subsequently provided a supplemental notice for both experts. This notice indicated that each would respond to the expert notice and testimony of Mr. Taylor, the defense explosives expert. It further stated that each would testify consistent with their statements, attached as exhibits.

## III. Because the notices fail to appropriately identify the subject areas and conclusions which the experts will testify to, they also fail to prevent a suitable disclosure of Mr. Protheroe's or Mr. Claiden's qualifications.

FRE 702 requires that these witnesses be qualified as experts by knowledge, skill, experience, training, or education as to the topic they opine about. But the expert notices do not permit defense counsel to measure their proposed testimony against their merits as an expert in that subject, if the subject is so broadly defined. The government's notices each briefly describe the expert's job history and years of experience, but give no further detail on their qualifications to opine on the myriad topic areas encompassed by the AAIB Report. Each notice then directs defense counsel to the respective *curriculum vitae* for that expert witness. Both Mr. Protheroe and Mr. Claiden appear to have many years of experience, but, as the notice does not sufficiently spell out what each would testify to, counsel for Mr. Al-Marimi cannot determine if their training and experience qualifies them to testify in any particular area.

The AAIB report, as described above, contains a tremendous amount of information about a wide variety of subjects. It is highly unlikely that anyone could qualify as an expert in every single area. It is especially unlikely here, because the report was authored, not by these gentlemen alone, but by 18 additional people and

with input from 22 outside agencies and organizations. That means, not only that Mr. Protheroe and Mr. Claiden are almost certainly not qualified to testify as to certain subjects, but also that testimony about those subjects would be inadmissible hearsay. But counsel for Mr. Al-Marimi cannot determine if that is the case – or raise any substantive argument against their testimony – if the notice does not specify the proposed testimony. In short, the Court cannot assess if the witness is "qualified as an expert by knowledge, skill, experience, training, or education" as to a subject, if there is no understanding of what he purports to be an expert about.

While the statements attached to the amended notice provide a narrower range of proposed testimony, the government has not limited the scope of Mr. Claiden or Protheroe's testimony to what is included in the new statements. Accordingly, the entirety of the AAIB report remains part of their proposed testimony and, as such, are overly broad.

## IV. The proposed experts are not explosives experts.

The testimony presented by Mr. Claiden and Mr. Protheroe must, in fact, rebut evidence presented in the defense case: "Rebuttal evidence should be presented to refute, contradict, impeach or disprove the evidence that the adversary has already elicited." *Shelton v. United States*, 983 A.2d 979, 985 (D.C. 2009) (citing *Beynum v. United States,* 480 A.2d 698, 704 (D.C.1984). "In order to protect a defendant from surprise, the government should not advance new arguments on rebuttal." *Id* (citing *Porter v. United States,* 826 A.2d 398, 409 (D.C.2003).

Mr. Claiden and Mr. Protheroe are not experts in the field of explosives or explosive devices. Mr. Protheroe's *curriculum vitae* does not list any specific education, training or experience that would qualify him as an expert, although he notes "fire and explosions" in the ten subject matters that he encounters in the course of conducting accident investigations. Mr. Claiden, for his part, acknowledges outright that he is not an explosives expert in his statement. As such, neither can be qualified as explosives experts.

Mr. Al-Marimi does not argue that an expert's testimony can never be rebutted by an expert from another field. But Mr. Feraday was noticed as an "an expert in the field of forensic examination and analysis of explosives, with specific expertise in the examination and analysis of improvised explosive devices and their means of initiation." *Government's Expert Notice of Allen Feraday*, dated October 23, 2024. Mr. Taylor and Mr. May have been noticed as explosives experts in response to Mr. Feraday and their proposed testimony focuses entirely on that field. Accordingly, the testimony from Mr. Claiden and Mr. Protheroe must directly address the testimony provided by the defense explosives experts. Anything that does not seek to respond to their evidence about explosives and the related subjects is not responsive to Mr. Taylor or Mr. May and should not be permitted at trial.

**CONCLUSION**

The government's proposed expert testimony should be denied, as the notice provided does not meet the requirements of Rule 16(a)(1)(G)(iii). Moreover, should the government subsequently narrow its expansive expert notices, Mr. Al-Marimi

requests the opportunity to object on the merits of the notice, once he is provided sufficient detail about the expected testimony.[5] Finally, to the extent that Mr. Claiden and Mr. Protheroe are qualified as experts in some field, their testimony must be limited to that which directly rebuts the testimony of the defense explosive experts.

Respectfully submitted
By Counsel,
Geremy C. Kamens,
Federal Public Defender

By: ________/s/______________________
Whitney E.C. Minter
Va. Bar # 47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)

[5] Mr. Al-Marimi raises the above objections based on the notice of expert testimony filed by the government. He reserves the right to object to testimony or exhibits as appropriate at trial.