**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**MR. AL-MARIMI'S MEMORANDUM IN SUPPORT OF
JURY INSTRUCTIONS RELATING TO JURISDICTIONAL ELEMENT**

Mr. Al-Marimi respectfully submits this memorandum in support of his position on the disputed jury instructions regarding the *mens rea* elements of Counts One and Two. *See* ECF No. 591. Count One charges the placement of a destructive device likely to endanger the safety of an aircraft resulting in death in violation of 18 U.S.C. §§ 32(a)(2) & 34. Count Two charges destruction of aircraft resulting in death in violation of 18 U.S.C. §§ 32(a)(1) & 34.

Section 32(a) is introduced by the *mens rea* descriptor "willfully." The term "willfully" modifies the conduct (e.g., damages, destroys) and object (e.g., aircraft) elements of the crime. *See McFadden v. United States*, 576 U.S. 186, 191 (2015); *Flores-Figueroa v. United States*, 556 U.S. 646, 650–53 (2009) ("As a matter of ordinary English grammar, it seems natural to read [a] statute's word 'knowingly' as applying to all the subsequently listed elements of the crime. . . . In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the

1

sentence."). So, the government must prove that Mr. Al-Marimi knew his alleged conduct targeted an aircraft.

Mr. Al-Marimi submits that the government also must prove, in addition to the other statutory elements, that he knew that the aircraft towards which his alleged conduct was aimed was within the special aircraft jurisdiction of the United States, or else was used, operated, or employed in interstate, overseas, or foreign air commerce. In other words, the term "willfully" also modifies the jurisdictional elements: "any aircraft in the special aircraft jurisdiction of the United States," defined in 49 U.S.C. § 46501, and "any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce," defined in 49 U.S.C. § 40102 (hereinafter the "special aircraft" element). *See* 18 U.S.C. § 32(a)(1); 18 U.S.C. § 32(a)(2) (referring back to § 32(a)(1) by reference to "any such aircraft").

Under the alternative interpretation, even if Mr. Al-Marimi did not know that his actions would implicate the asserted jurisdiction of the United States, he could still be tried and found guilty thousands of miles away from his alleged conduct. That interpretation of the "special aircraft" element ignores the grammar, structure, and purpose of § 32(a) and is inconsistent with how courts have interpreted comparable criminal statutes.

## LAW AND ARGUMENT

Whether a criminal statute requires the government to prove that a defendant acted with a specified *mens rea* "is a question of congressional intent." *Rehaif v. United States*, 588 U.S. 225, 228 (2019); *see United States v. Yermian*, 468 U.S. 63, 68

(1984) (inquiry considers the statute's text, structure, and purpose). Generally, courts apply "a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* at 228–29 (quoting *Untied States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). This "interpretive maxim" is sometimes called "a presumption in favor of 'scienter[.]'" *Id.* at 229.

Most federal offenses are made up of substantive elements, which primarily define the behavior the statute calls a violation of federal law, and jurisdictional elements, which tie the substantive offense to one of Congress's constitutional powers. *Torres v. Lynch*, 578 U.S. 452, 457 (2016). Unlike substantive elements, jurisdictional elements are typically not subject to the presumption in favor of scienter. *Rehaif*, 588 U.S. at 229; *United States v. Griffin*, 119 F.4th 1001, 1015 (D.C. Cir. 2024).

However, the categorization of statutory elements is not mutually exclusive. "[A]n element that makes evident Congress's regulatory power also might play a role in defining the behavior Congress thought harmful." *Torres*, 578 U.S. at 471. Such "dual function elements" contain "'an element of the offense Congress intended to describe and to punish[.]'" *United States v. Carnell*, No. 23-cr-139 (BAH), 2024 WL 639842, at *7 (D.D.C. Feb. 15, 2024) (quoting *United States v. Feola*, 420 U.S. 671, 676 n.9 (1975)). Therefore, to determine the applicability of a *mens rea* requirement to a particular statutory element, the question "is not whether the requirement is

jurisdictional, but whether it is jurisdictional only." *Id.* (quoting *Feola*, 420 U.S. at 676 n.9). An element is jurisdictional only if "Congress did not intend for the scienter to apply to it, such that 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'" *Id.* (quoting *Torres*, 578 U.S. at 468).

The "special aircraft" element of § 32(a) is not a "jurisdictional only" element. The statutes' text, structure, and purpose indicate that Congress intended to attach the *mens rea* requirement "willfully" to all aspects of the proscribed conduct.

## I.    The text of 18 U.S.C. § 32(a) indicates a congressional intent to apply "willfully" to the "special aircraft" element.

The statutory text is the "best evidence" of congressional intent. *Tataranowicz v. Sullivan*, 959 F.2d 258, 276 (D.C. Cir. 1992). When reviewing statutory text, courts begin by "assuming that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Fischer*, 64 F.4th 329, 335 (D.C. Cir. 2023).

Especially for relatively short statutory phrases, "[a]s a matter of ordinary English grammar it seems natural to read the statute's [scienter] as applying to all the subsequently listed elements of the crime." *Flores-Figueroa*, 556 U.S. at 650. In *Flores-Figueroa*, the Supreme Court explained that adverbs that modify transitive verbs—verbs with objects—typically extend to all aspects of the action. *Id.* The Court illustrated this concept through examples: "If a child knowingly takes a toy that belongs to his sibling, we assume that the child not only knows that he is taking something, but that he also knows that what he is taking is a toy *and* that the toy belongs to his sibling. If we say that someone knowingly ate a sandwich with cheese,

4

we normally assume that the person knew both that he was eating a sandwich and that it contained cheese." *Id.* at 651. "The manner in which the courts interpret criminal statutes is fully consistent with this ordinary English usage." *Id.* at 652.

The same ordinary understanding applies to § 32(a). When a defendant is charged with "willfully . . . destroy[ing] . . . any aircraft in the special aircraft jurisdiction of the United States," the Supreme Court's logic in *Flores-Figueroa* counsels that the defendant know not only that his conduct targets an aircraft, but that the aircraft is in the special aircraft jurisdiction of the United States. *See United States v. Vaglica*, No. 23-cr-429 (CKK), 2024 WL 4244279, at \*2 (D.D.C. Sept. 19, 2024) ("The text supports Vaglica's position that the statute's *mens rea* of 'knowingly' applies to everything that follows it, including the reference to the presence of a 'person protected by the Secret Service.'").[1] Because the attendant nature of the object follows the adverb and is part of the definition of the object, "the most natural reading of the text is that the *mens rea* of [willfully] applies to the element" that the aircraft be in the special aircraft jurisdiction of the United States. *See id.*

## II.    The structure of 18 U.S.C. § 32(a) indicates a congressional intent to apply "willfully" to the "special aircraft" element.

Congress's intent to apply "willfully" to the "special aircraft" language is also made clear by the streamlined grammatical structure of the statute. First, the statute's proscriptions are relatively short and straightforward. Like the statute at issue in *Rehaif*, this is "not a case where the modifier 'knowingly' introduces a long statutory

---

[1] The D.C. Circuit interpreted § 1752 in *United States v. Griffin*, 119 F.4th 1001 (D.C. Cir. 2024), with a notable dissent, and that decision controls to the extent it is contrary with *Vaglica* and other lower-court interpretations. Mr. Al-Marimi discusses *Griffin* below.

phrase, such that questions may reasonably arise about how far into the statute the modifier extends." 588 U.S. at 225. Instead, the text of § 32(a) "simply lists the elements that make a defendant's behavior criminal." *Id.*

Additionally, the "special aircraft" element is not separated from "willfully" by any significant or elaborate punctuation. "Willfully" is followed by an em-dash, beginning the list of subsections that enumerate the acts subject to § 32(a)'s penalty provision. Thereafter, the only punctuations within each subsection are commas. There are no independent clauses separated by interruptive punctuation in either charged subsection that would suggest that "willfully" does not extend to the full text.[2] *See X-Citement Video*, 513 U.S. at 68–69; *see also United States v. Nofziger*, 878 F.2d 442, 457 (D.C. 1989) (Edwards, J., dissenting) (finding that commas that create two independent clauses indicate that the "knowingly" modifier does not extend to every element in a statute) (citing *United States v. Ron Pair Enters.*, 489 U.S. 235, 241–42 (1989)).

The D.C. Circuit recently considered the applicability of a *mens rea* modifier in in a different criminal statute. *United States v. Griffin*, 119 F.4th 1001 (D.C. 2024). The statute in question in *Griffin*, 18 U.S.C. § 1752, punishes whoever "knowingly enters or remains in any restricted building or grounds without lawful authority to

---

[2] Section 32(a) does not expressly cross-reference to other statues, but the "special aircraft" element is defined elsewhere in the U.S. Code. Some courts have reasoned that separated structure to be "a signal that the definition qualifies as a jurisdictional only element." *Carnell*, 2024 WL 639842, at *11. This reasoning is inconsistent with the textual analysis discussed above. Further, to the extent it applies, it should weigh less in the analysis when, as here, the criminal statute does not expressly cross-reference but rather sets out uninterrupted descriptions of proscribed conduct.

do so," with "restricted buildings or grounds" defined to mean "any posted, cordoned off, or otherwise restricted area." The court held that a conviction under this statute requires that the defendant knew "that he had entered or remained in a 'posted, cordoned off, or otherwise restricted' area where he was not authorized to be." *Id.* at 1004. While a defendant did not need to know the particular reason why an area was restricted, the government had to show that the defendant did know that the area was in fact restricted. *Id.*

Section 32(a)(1) has a structure akin to § 1752. It proceeds by laying out the *mens rea* ("Whoever willfully"), then the conduct ("sets fire to, damages, destroys, disables, or wrecks"), then the object ("any aircraft"), and ends by describing a quality of the object ("in the special aircraft jurisdiction of the United States"). Likewise, § 1752 begins with the *mens rea* ("whoever . . . knowingly"), then the conduct ("enters or remains in"), then the object ("any restricted building or grounds"), and ends with a quality of the action ("without the lawful authority to do so"). For both statutes, the independent clauses and interruptive punctuation come from within other provisions of law that explain when or why the object possesses the identified qualities.

Regarding § 1752, the D.C. Circuit held that the *mens rea* term modified most but not all of the terms incorporated after the adverb. *Id.* at 1015. To remain consistent with the *Griffin* decision, the Court should interpret § 32(a) as requiring the government to show that Mr. Al-Marimi willfully acted with respect to an aircraft he knew was in the special aircraft jurisdiction of the United States. While the government need not prove that Mr. Al-Marimi knew the particular circumstances

that brought the plane within the special aircraft jurisdiction of the United States, in accordance with *Griffin*, the government must prove that Mr. Al-Marimi knew that the plane was in the special aircraft jurisdiction of the United States. This interpretation does not impose any absurd demands, like requiring proof that a person knew the reason an area was restricted, *see Griffin*, 119 F.4th at 368; it simply requires proof that a person know the nature of the object of his conduct, without knowing why it has such a nature.

Otherwise, "willfully" would apply only to the first seven words of the statute. The Supreme Court has explained that such an assertion is not an easy one to make. *Flores-Figueroa*, 556 U.S. at 650 ("The government cannot easily claim that the word 'knowingly' applies only to the statute's first four words, or even its first seven.").

### III. The purpose of § 32(a) and the "special aircraft" element indicates the "special aircraft" element should not be treated as a purely jurisdictional element.

While jurisdictional elements "often . . . have nothing to do with the wrongfulness of the defendant's conduct" and therefore "need not be one in the mind of the actor at the time he perpetrates the act," the D.C. Circuit has recognized that "things are not always so straightforward." *Griffin*, 119 F.4th at 1017. The D.C Circuit explained that a dual-role element should be treated as "jurisdictional only," and therefore not require a showing of *mens rea*, when it "(a) implement[s] Congress's purpose to federalize pre-existing state law rather than defining a new substantive crime, and (b) do[es] not transform innocent conduct into criminal conduct." *Id.* (discussing *Feola*, 420 U.S. at 676 n.9). The court further explained that this latter consideration considers the "risk of unfairness to defendants." *Id.*

8

Here, the "special aircraft" element clearly plays a role in defining the behavior Congress thought harmful. And it should not be treated as jurisdictional only because Congress did not intend to federalize a preexisting state law and it would be unfair to Mr. Al-Marimi as a foreigner not to require knowledge of the condition enabling his prosecution in the United States.

### A. The "special aircraft" element plays a role in defining the behavior Congress thought harmful.

Section § 32(a) was originally enacted in 1956 to punish "[w]hoever willfully sets fire to, damages, destroys, disables, or wrecks any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce." An Act to Punish the Willful Damaging or Destroying of Aircraft or Motor Vehicles, and Their Facilities, and For Other Purposes, 18 U.S.C. § 32 (1956); *see also* Civil Aeronautics Act, Title I § 1(14) (1938) (defining "civil aircraft" as "any aircraft other than a public aircraft").

In 1984, Congress enacted the Aircraft Sabotage Act as part of the Comprehensive Crime Control Act of 1984. *See* U.S. Dep't of Just., Criminal Resource Manual § 1421 (1999), https://www.justice.gov/archives/usam/criminal-resource-manual-1421-changes-18-usc-32-1984-aircraft-sabotage-act. The purpose of the Act was to "implement fully the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation (also known as the Montreal Convention)." *Id.* To accomplish this goal, the Act amended § 32(a) to include the "special aircraft" element with the purpose of "expand[ing] United States jurisdiction over aircraft sabotage." *Id.* § 2, https://www.justice.gov/archives/jm/criminal-resource-manual-2-aircraft-sabotage-18-usc-32.

9

In enacting the 1984 amendments, Congress outlined its findings. 18 U.S.C. § 31 ed. note (Statement of Findings and Purpose for 1984 Amendment) (cited in 18 U.S.C. § 32 ed. note (Effective Date of 1984 Amendment)). First, Congress addressed the need to "establish its jurisdiction over certain offenses affecting the safety of civil aviation" in compliance with the Montreal Convention. *Id.* In addition to asserting jurisdiction, Congress also found that there was particular harm that needed to be protected against, finding that "such offenses place innocent lives in jeopardy, endanger national security, affect domestic tranquility, gravely affect interstate and foreign commerce, and are offenses against the law of nations." *Id.* The change in language did not just "make evident Congress's regulatory power," but also "play[ed] a role in defining the behavior Congress thought harmful." *Griffin*, 119 F.4th at 1017. The purpose of adding in the "special aircraft" language was not just to "connect[] the law to one of Congress's enumerated powers." *Feola*, 578 U.S. at 467. The element was added for the express purpose of combatting international terrorism.

### B. Section 32(a) defined a new substantive crime.

Section 32(a) did not federalize preexisting state law. Instead, Congress defined a new substantive crime. The purpose of drafting § 32(a) was to "expand United States jurisdiction over aircraft sabotage" to be in compliance with the Montreal Convention. DOJ Criminal Resource Manual, § 2; *see also* "Message to the Congress Transmitting Proposed Legislation To Combat International Terrorism" (Apr. 26, 1984), https://www.reaganlibrary.gov/archives/speech/message-congress-transmitting-proposed-legislation-combat-international-terrorism (stating the

10

Aircraft Sabotage Act seeks to address the issue that "certain criminal acts related to aircraft sabotage or hijacking are not adequately covered by United States law").

The government agrees. In its Response to Mr. Al-Marimi's Motion to Dismiss for Lack of Extraterritorial Jurisdiction, the government acknowledged that a "principal purpose of the act was to provide federal jurisdiction over individuals who were accused of committing crimes involving aircraft sabotage and over whom the *courts would not otherwise have jurisdiction under domestic law*." ECF No. 272, at 7 (quoting *United States v. Yousef*, 927 F. Supp. 673, 679 (S.D.N.Y. 1996)).

So, unlike a law dual-nature jurisdictional element that serves to create a federal forum for an otherwise criminal act subject to state jurisdiction, § 32(a)'s "special aircraft" element helps define a new substantive crime. That supports treating the element as requiring the prescribed *mens rea* versus treating it as jurisdictional only. *Cf. Griffin*, 119 F.4th at 1017–19 (noting when § 1752 was enacted in 1971, Congress recognized that "almost everything proscribed . . . is presently outlawed in some form or other at the State or local level").

### C. Interpreting the "special aircraft" element as jurisdictional only is unfair to foreign defendants like Mr. Al-Marimi.

The second consideration relied on by the D.C. Circuit in *Griffin* to determine whether a dual-purpose element should be treated as jurisdictional only was whether such an interpretation posed a "risk of unfairness to defendants." 119 F.4th at 1018 (quoting *Feola*, 420 U.S. at 685). The court reasoned that, because assault and trespass are otherwise unlawful, a person does not need "to know that the target of his assault was a federal officer" or "that the restriction [for a restricted area] was

11

predicated on the presence of the Vice President." *Id.* at 1019.

Mr. Al-Marimi does not contend here that the destruction of an aircraft or the placement of an explosive device onto an aircraft would otherwise be legitimate or proper conduct. But, consistent with Mr. Al-Marimi's earlier extraterritoriality and due process arguments, when those acts are allegedly committed by a foreign national outside of the United States, it is unfair for the United States to convict and punish such a person without proof that he knew his conduct targeted aircraft subject to the United States' asserted jurisdiction. *See* ECF 252.

In *Griffin*, the majority reasoned that one purpose of scienter is to help separate wrongful from innocent acts. 119 F.4th at 1019 (quoting *Rehaif*, 588 U.S. at 231–32). But that is not the complete universe of considerations that render a prosecution fair or unfair. The D.C. Circuit previously acknowledged that "the absence of innocence" does not "circumscribe the reach of an explicit *mens rea* requirement." *United States v. Burwell*, 690 F.3d 500, 516 (D.C. Cir. 2012) (contemplating "ignoring the lack of an innocence rationale where a statute contains an express requirement" of *mens rea*). Indeed, the Supreme Court has minimized the importance of any innocence rationale when, as here, a statute provides an express *mens rea* requirement. *Ruan v. United States*, 597 U.S. 450, 458 (2022) (synthesizing cases that inferred a *mens rea* requirement in otherwise silent statutes "to separate wrongful conduct from otherwise innocent conduct" and cases that applied an express, general *mens rea* requirement to "the words directly following it"); *see, e.g.*, *X-Citement*, 513 U.S. at 73 (reading *mens rea* modifier "knowingly" to extnd to a

dependent clause in a different subsection because the element was "the crucial element separating legal innocence from wrongful conduct").

With respect to fairness, other circuits have focused on a person's reasonable expectations about being haled into a U.S. court. *See* ECF 252, at 18–19.[3] Here, it is unfair to subject a foreign national to rendition to the U.S. for prosecution and potentially decades of imprisonment here without requiring knowledge of the dual-purpose jurisdictional element adopted by Congress. Thus, this consideration also favors extending "willfully" in § 32(a) to the statute's "special aircraft" element.

## CONCLUSION

Mr. Al-Marimi has submitted a proposed jury instruction consistent with his understanding of § 32(a)'s *mens rea* requirement. The Court should so instruct the jury. Should the Court conclude the statute is ambiguous after using other available interpretive tools, it should apply the rule of lenity. *Griffin*, 119 F.4th at 1014–15 (citing *Shular v. United States*, 589 U.S. 154, 165 (2020)).

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: _____/s/_____
Whitney E.C. Minter
Va. Bar #47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi

---

[3] As this Court has observed, the D.C. Circuit has not required a nexus between proscribed overseas conduct and the United States to satisfy the requirements of Due Process. ECF 466 (citing *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013)). That rule does not compel any decision on the distinct issue presented here.

1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia  23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)