**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

# GOVERNMENT'S SUPPLEMENT REGARDING EVIDENCE OF VICTIMS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Supplement regarding evidence of the victims of the charged offense. Among other things, this pleading responds to questions raised by the Court about the use of in-life photographs of victims in other mass-casualty terrorism cases. *See* 7/30/26 Tr. at 70-73.

The parties have reached a stipulation whereby the government will enter a list of all 270 victims' names and their countries of citizenship. The parties have not reached an agreement on the government's use of in-life victim identification photographs or testimony from family members. For the reasons discussed below, the Court should allow the government to present such exhibits and testimony to prove the resulted-in-death element of the charged offenses as well as the conspiracy to take revenge against the United States by killing a random assortment of American civilians on a U.S.-based airline flight. Specifically, the government proposes presenting, in lieu of graphic evidence or testimony identifying the victims and their causes of death after the attack, a limited number of witnesses (at most, eight) to provide brief testimony about a victim and admit an identification photograph of the victim alive, and to introduce into evidence a passport photograph and related records for most American victims.

The government respectfully requests that the Court rule promptly on how many life witnesses the government will be permitted to call. For these family members, the decision whether to testify at trial is a complicated one that involves facing painful memories. With trial so soon, the government needs to identify and prepare potential witnesses, but the government does not wish to have victims grapple with the difficult decision of whether to testify, only to be later told they cannot do so. *See* 18 U.S.C. § 3771 (guaranteeing victims the "right to be treated with fairness").

**A. Courts routinely admit in-life photographs in terrorism trials.**

1. Response to the Court's inquiry.

At a pretrial hearing, the Court asked the government about whether victim in-life photographs were shown to the jury in two high-profile terrorism cases involving mass casualties: *United States v. McVeigh*, arising from the 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City (168 victims killed) and *United States v. Moussaoui*, the prosecution of an alleged conspirator in the 2001 attacks on the World Trade Center and Pentagon (2,977 victims killed). The courts' approaches in both those cases support admission of victim photographs here.

In *McVeigh*, the government witnesses introduced in-life photos of some of the victims during their testimony at trial. The defendant was charged with various federal explosives offenses that resulted in death as well as eight counts of federal murder related to a subset of federal law enforcement officer victims. The in-life victim identification photos, and other photographs of the crime scene, were admitted into evidence. During closing argument, the prosecutor noted:

> This is a murder case. And as all murder cases, we must introduce you to the victims, and we did so in this case, through the testimony of fewer than 30 witnesses out of 130 that the United States of America called. You got to know them a little bit, just a little bit, through their photograph, photograph taken before their death, and a snapshot, perhaps, of people, co-workers, friends, who had worked with those individuals before they died, many times seeing those people on the day they died.

Gov't closing argument in *McVeigh*.[1] On appeal, McVeigh challenged the victim-related testimony presented during the guilt phase of his trial, although he apparently did not claim error resulting specifically from the in-life photographs referenced in the government's closing. *See United States v. McVeigh*, 153 F.3d 1166, 1198–99 (10th Cir. 1998). The court held that the trial court did not abuse its discretion in allowing victims' relatives to testify about their deceased family members—through whom the in-life photographs presumably were admitted—including references to a "grandchild and beautiful daughter-in-law and an almost second daughter-in-law" and a "deceased husband's involvement in their sons' sports teams." *Id.* at 1201.[2]

*Moussaoui*, a death penalty case, involved a posture unlike this case. Before trial, the defendant pled guilty to death-eligible conspiracy charges, so the case proceeded to a jury trial on the penalty phase only. The structure of that penalty phase was a matter of dispute between the parties; the briefs and rulings do not appear to be readily available from electronic sources, but based on contemptuous reporting, the defense sought to divide the proceeding into separate sub-phases, with first one focusing exclusively on the "threshold factor" of Moussaoui's intent, without which he would not be eligible for death. *See* Lyle Denniston, "Death penalty and the images of 9/11" (SCOTUSBlog Oct. 20, 2005).[3] On the defense's proposal, "the jury would not hear and see the sights and sounds of the devastation on the day of the terrorist attacks" in the first phase. *Id.* The court appears to have granted the defense's request, and the first phase of the trial involved

---

[1] *Available at* https://famous-trials.com/oklacity/725-mcveighclosing.

[2] Notably, the guilt phase of the trial also included truly graphic testimony concerning the immediate impact of the bombing, including descriptions of dead children from the day care center, which the Tenth Circuit also upheld as admissible. *McVeigh*, 153 F.3d at 1201 (even "'[g]raphic depictions' of a murder are relevant to support 'other evidence about how the crime occurred.. even when the element is uncontested—indeed, even when the defendant offers to admit to the element....'" (quoting *Gonzalez v. DeTella,* 127 F.3d 619, 621 (7th Cir. 1997)). As discussed below, the government in this case does not intend to present any similarly graphic testimony.

[3] *Available at* https://www.scotusblog.com/2005/10/death-penalty-and-the-images-of-911/.

"evidence regarding the conspiracies alleged in the Indictment, including evidence of the activities of the 9/11 hijackers and Moussaoui in the months preceding the 9/11 attacks, the similarities between Moussaoui's actions and those of the 9/11 hijackers, and the overlap between the al Qaeda leadership directing them all." *United States v. Moussaoui*, 591 F.3d 263, 275 (4th Cir. 2010).

At the second phase, the government introduced evidence proving the results of the conspiracy. They included things like a "Photograph of the World Trade Center complex before the attacks on September 11, 2001" and a "Photograph of the World Trade Center complex taken after the attacks on September 11, 2001." *See United States v. Moussaoui*, Prosecution Trial Exhibits.[4] They also included a large college with photos of all but 92 of the thousands of victims.



Gov. Ex. P200336. in *Moussaoui.*[5]

[4] *Available at* https://coop.vaed.uscourts.gov/moussaoui/exhibits/prosecution.html.
[5] *Available at* https://coop.vaed.uscourts.gov/moussaoui/exhibits/prosecution/P200336.html.

The government also included numerous individual photos of victims; as just one example, victim S.L. was the subject of nine different photos, including of her "at age 4," "at her high school graduation," and "in front of NYC skyline, including the World Trade Center." *See Moussaoui* Prosecution Trial Exhibits.

2. <u>Other cases.</u>

In addition to the cases noted by the Court, the government is aware of other precedent for the admission of in-life victim identification photographs in terrorism cases.

*United States v. Khatallah* (DDC 14-cr-141) arose from the attack on the U.S. Special Mission in Libya in 2012, which resulted in the deaths of four Americans. For identification purposes, the court allowed the government to call family members of the victims and to enter photos of the victims while they were alive. The family member testimony was brief (approximately four to eight transcript pages) and included short explanations of why the decedents were in Libya and when was the last time the witness spoke to them. *See, e.g.*, *Khatallah* Trial Tr. at 2038-40. The testimony was limited by the court to avoid topics like the decedents' future "child rearing plans." *E.g.*, *Khatallah* Trial Tr. at 2132. *See also, e.g.*, *id.* at 2039 (court allowing just "[o]ne question" about whether witness and decedent had a child together); *id.* at 2041 (sustained objection to prosecutor asking "what are the circumstances around" an in-life photograph of victim and spouse at a friend's wedding).




*Government exhibits admitted in Khatallah*

*United States v. Sharifullah*, (EDVA 25-cr-143) was the Abbey Gate trial, arising from a suicide bombing at the Hamid Karzai International Airport in Kabul as U.S. forces evacuated. The defendant was charged with a single count of conspiracy to provide material support to a foreign terrorist organization resulting in death. Government witnesses identified the 13 service members who died in the attack using photographs that depicted the victims in their military uniforms taken before their deaths, along with their ranks and ages. In one of the photos, the servicemember was holding a child. These photos and another photograph depicting other victims *in situ*, were admitted into evidence at trial.




*Government exhibit admitted in Sharifullah*

In addition, the government has identified additional cases where government witnesses testified using life photos of victims to identify victims at trial.

*United States v. El Shafee Elsheikh* (EDVA 20-cr-239) was an ISIS hostage case that resulted in beheadings. The defendant was charged with hostage taking and material support resulting in death, as well as conspiracy to murder U.S. citizens. The government was permitted to use life photographs of the victims during the trial.

*United States v. Arcangel Pretel Ortiz, et al.*, (SDFL 22-cr-20104) involved the assassination of the President of Haiti. There, the government used a life photograph to identify the deceased victim during trial.

**B. The victims' identities are probative of the resulted-in-death element and of the conspiracy to retaliate against the United States.**

The cases discussed above are consistent with the well-established principle that, when a defendant is charged with a homicide offense, the government may prove the identity of the decedent(s) by introducing photographs and eliciting brief testimony about them while alive.

To satisfy the elements of the offenses charged, the government must prove that the destruction of Pan Am Flight 103 "resulted in the death of any person." 18 U.S.C. § 34. The indictment alleges specifically that 270 deaths resulted from the offense conduct, and names those 270 people. *See* ECF 7 at 4-13. Identity is therefore at issue because the government must prove that at least one of those people named in the indictment died as a result of the attack. The government intends to prove that all 270 deaths resulted from the attack.

The government is not aware of any D.C. Circuit case addressing the use of in-life identification photos to prove the identity of one or more homicide victims. The Tenth Circuit, however, held in *United States v. Pettigrew* that because "[a] photograph of a victim while living is admissible to prove the identity of the victim," it was not an abuse of discretion to admit such photos even though they "could stir up sympathy and emotions in the jurors." 468 F.3d 626, 638 (10th Cir. 2006); *see also United States v. De Parias,* 805 F.2d 1447, 1453 (11th Cir. 1986) ("Photographs of homicide victims are relevant in showing the identity of the victim"). As the *Pettigrew* court explained, the type of photo matters: the government's choice of a photo with the decedent "posed with her family" presented greater danger of unfair prejudice than one of the decedent alone. *Id.* Nonetheless, the trial court instruction to "base your verdict solely upon the evidence without prejudice or sympathy," which the prosecutor echoed during closing argument, supported the district court's balancing decision under Rule 403. *Pettigrew*, 468 F.3d at 638. *See also, e.g. United States v. Joe*, 8 F.3d 1488, 1499 (10th Cir. 1993) (upholding admission of identification photographs and noting that "[u]nlike the graphic photographs in [other cases], the photographs in this case merely showed the victims' faces prior to injury"); *United States v. Fell*, 5:01-cr-12-01, 2018 WL 7247414, at *2 (D. Vt. Apr. 4, 2018) ("The Government points out that the identity of the victims and in particular proof that they were formerly alive is relevant to the

charged offense… The court will permit the introduction of a photo of each of the victims to establish identity through the testimony of a witness."); *United States v. Briseno*, 88 F. Supp. 3d 849, 851 (N.D. Ind. 2015) (over objection, allowing government in opening statement to "to show a photo of each victim alive, and later that photo *juxtaposed with a black-and-white photo of the victim after he was killed*" (emphasis added)); *Canizalez v. Janda*, No. CV 12–3370–CJC (PJW), 2013 WL 1415022 (C.D. Cal. Feb. 14, 2013) (in habeas context, rejecting claim that trial "was unfair because the trial court allowed the admission of a photograph showing all three victims while they were alive" and noting, as state appellate court had, that trial court "appropriately limited the evidence to a single life photograph that was unexceptional, neutral and objective").[6]

Moreover, the nature of the charged conduct and related conspiracy in this case means that the victim's identities and characteristics are relevant for reasons beyond just serving to prove the "death resulted" element. As the government will argue and prove at trial, the bombing of Pan Am 103 was a calculated act of revenge intended to kill civilians and to inflict as much devastation against the American people as possible. The deaths of hundreds of random civilians – each with their own lives and families and each brought together only because of their presence on a U.S.-based airline flight – was not merely a consequence of the conspiracy; it was precisely the object of the conspiracy. The human cost of the defendant's actions is therefore not just a sentencing factor; it is intrinsically part of the government's proof of the conspiracy that underlies the attack, and the government should be allowed to fully present that evidence during the guilt phase.

---

[6] The government is aware of one case where, in a manslaughter prosecution, the court excluded life photos because the identity of the decedents was not at issue. *See United States v. Tsosie*, 10-cr-0773 JB, 2011 WL 2730949, at *4 (D.N.M. June 23, 2011).

### C. The government seeks to introduce in-life victim identification evidence in lieu of presenting graphic testimony and evidence that would likewise serve to prove that death resulted.

As proposed below, the government seeks to present a limited number of witnesses (at most, eight) to provide brief testimony about a victim and admit a photograph of the victim alive for identification, and to introduce into evidence a passport photograph and related records for most American victims. It bears emphasizing what the government is *not* seeking to introduce: testimony from medical examiners and detailed photographs of the injuries that caused the deaths of the victims. In homicide cases, such evidence is commonly admitted despite its potential to inflame, upset, or provoke sympathy. That includes in major terrorism cases. For example, in *United States v. Tsarnev*, arising from the bombing of the Boston Marathon in 2013, the government offered examiner testimony and autopsy photos. "Several jurors cried and others appeared upset as they were shown graphic photos of" one of the victims with the injuries that killed her. FOX 2 News, "U.S. ending Boston Marathon bomb case with grisly photos of victims" (Mar. 30, 2015).[7] *See also United States v. Salameh*, 152 F.3d 88, 122 (2d Cir. 1998) (upholding admission of "disturbing" victim photographs despite offer to stipulate where "[t]o prove the charges in the indictment, the government had to demonstrate that the World Trade Center bombing caused death and personal injury").

Here, the government is offering no medical examiner testimony or autopsy photos. That is not because such testimony would not be relevant or because the information does not exist. The Fatal Accident Inquiry conducted under Scots law reflects findings that would be relevant to establishing the cause of death in this case; for example, that "a body thrown from the aircraft at about 31000 feet would have taken approximately two and a half minutes to reach the ground" and

[7] *Available at* https://fox2now.com/news/u-s-ending-boston-marathon-bomb-case-with-grisly-photos-of-victims/

that "[t]wo passengers had injuries which were less severe than others and it is possible that they survived for a short time after" hitting the ground. Even if, as appears to be the case here, the defendant chooses "not to put at issue" the resulted-in-death "element of the charged offense," this "is irrelevant to the admissibility of evidence offered to prove that element." *United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir. 2008). The government is entitled to prove that element beyond a reasonable doubt through evidence. That the government has made efforts to "self-police" to avoid unfair prejudice supports the reasonableness of its proposal concerning victim identification evidence.

Thus, in considering the range of "evidentiary alternatives" as is required under Rule 403, *see Old Chief v. United States*, 519 U.S. 172, 184 (1997), the Court should take note that the government's preferred evidence carries far less risk of unfair prejudice than other possible alternatives.[8]

**D. *Old Chief* requires that the government's evidence not be sterilized.**

The Supreme Court's decision in *Old Chief* is the landmark case on Rule 403. It provides a powerful articulation of why trial courts must not reduce the government's evidence to a series of "abstract premise[s]." 519 U.S. at 187.

*Old Chief* rightly recognizes what is too often overlooked: the weight of the "obligations that the law places on" jurors, not least the "obligation to sit in judgment." *Id.* at 187-88. This duty

[8] The government submits that this approach is not only fairest to the parties, but also fairest to the victims. The Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, provides, among other things, that victims have "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." In the government's view, "[r]espect for the victim's dignity" means not providing more painful detail than is necessary about the manner of the victims' deaths. However, respect for the victim's dignity also means not reducing them to an abstraction. If any of the victims had survived the bombing of Pan Am Flight 103, they would be statutorily entitled to sit in the courtroom each day just as the defendant himself gets to sit in court each day. None survived, and so none will attend the trial. But that does not mean they should be invisible.

cannot properly be discharged without an appreciation of the "human significance" of the questions they are deciding, since a jury cannot be expected to return a verdict they do not regard as "morally reasonable" as well as factually accurate. *Id.* Given the magnitude of this task, *Old Chief* teaches, the government must be allowed to use "the persuasive power of the concrete and particular" to tell a "colorful story with descriptive richness," thereby "giv[ing] life to the moral underpinnings of the law's claims." *Id.*

If there was ever a case where *Old Chief*'s lessons are applicable, it is here. The jury is being asked not just to sit in judgment of a fellow human being but to render a judgment of extraordinary gravity: to decide unanimously and beyond a reasonable doubt that he is responsible for a crime of almost unfathomable cruelty and that he be held to account. Throughout the trial, as the jurors grapple with this profound responsibility, they will be seated across the room from the defendant, a man who is now of advanced age and visibly frail. In deciding whether a guilty verdict is the "morally reasonable" outcome, the jury must not be blinded to the "human significance" of the facts being proven. The lives that were lost as a result of the bombing of Pan Am 103 are part of the story the government is obliged to tell, and while the government does not intend to call 270 family members, the need for "descriptive richness" compels a reasonable amount of testimony about the people who died.

Another important truth recognized by *Old Chief* is "the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be." *Id.* at 188. "If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." *Id.* (quoting Saltzburg, A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence, 66 Calif. L.Rev. 1011, 1019 (1978)).

In the government's trial preparations, it has become clear that laypersons hearing about the case expect that the government's trial presentation will include some "descriptive richness" about the victims, including, at the very least, a photograph of what they looked like, and a brief accounting of their backgrounds. The absence of such evidence will tend to be held against the government as "the party who disappoints" these expectations; in the worst case, the omission could be taken as a sign of insufficient respect for the victims of the offense.

This aspect of *Old Chief* is another reason to allow the government to present evidence about the victims' backgrounds. Moreover, regardless of the extent of victim evidence allowed, the government requests that the Court provide a preliminary instruction along the lines of the following:

> The government has alleged that certain people died as a result of the crimes charged. As a result, you may hear evidence about those people, including their names and a limited amount of information on their backgrounds. Please know that I have decided in a pretrial ruling that only limited evidence on this topic is appropriate for your consideration. If you feel that the government has not presented you with enough evidence about the people who died, you should not hold that against the government.

**E. The government's proposal.**

In view of the above arguments, the government respectfully requests that the Court approve the following proposal.

1. <u>Life witnesses</u>

First, the government intends to call family members to provide brief testimony establishing the identity of some of the victims, which will include offering a photograph of the victim while they were alive and brief testimony about them. Although the government would prefer to offer such testimony related to each and every one of the 270 victims, we recognize that Rule 403 would present a barrier to such extensive proof of this type at the guilt phase of the case. The government therefore proposes calling **no more than 8** life witnesses to ensure that the

probative value of such identification evidence—which would help to satisfy the jury that the names on the stipulation were, indeed, living human beings—will not be substantially outweighed by the risk of unfair prejudice.

The government fully appreciates that the guilt phase of a criminal proceeding is not the time for victim-impact statements. That principle has been fully communicated to the victims, and the victims fully understand that, if the case proceeds to sentencing, that will be their opportunity to speak about how the crime affected them. The family-member testimony the government intends to offer would not dwell on the lasting pain of the victims' loss. It would instead be narrowly tailored to serve the legitimate purposes discussed above by, for example, establishing the decedent's age, where they lived, their occupation or place in school, and similar facts, along with a description of the family-member witness's relationship to the victim and the last time the family-member witness saw them. *See McVeigh*, 153 F.3d at 1201 ("[R]easonable background information about a witness is always admissible, precisely because it allows the jury to make better informed judgments about the credibility of a witness and the reliability of that witness' observations[.]").

2. Passport photos

Additionally, the government possesses passport applications, including passport photos, for most of the victims who were U.S. citizens. These records originate from the U.S. Department of State, and we anticipate a forthcoming motion *in limine* to admit them as certified public records.

## CONCLUSION

For the above reasons, the court should grant the government's motion in limine and allow photographs of victims taken while they were alive to be admitted at trial to prove the identity of the victims.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Conor Mulroe***

CONOR MULROE (NY Bar No. 5289640)
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 740-4595 // Conor.Mulroe@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530