**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**MR. AL-MARIMI'S SUPPLEMENTAL RESPONSE REGARDING RULE 902(4) AND MLAT PRODUCTIONS**

Pursuant to the Court's August 19, 2026 Minute Order, Mr. Al-Marimi respectfully supplements his response to the government's arguments under Federal Rule of Evidence 902(4)(B). *See* ECF 626-1 (gov't brief); ECF 643 (defense's initial response). Mr. Al-Marimi responds further to the government's contention that certain records produced in response to a request under a bilateral Mutual Legal Assistance Treaty (MLAT) are automatically authenticated and admissible.

At the outset, Mr. Al-Marimi emphasizes that the government has not identified any precedent for this approach. Its sole case citation is inapt for the reasons previously explained. ECF 643, at 7 (discussing *United States v. Pintato-Isiordia*, 448 F.3d 1155, 1157 (9th Cir. 2006), which addressed documents certified in accordance with the 1961 Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents; the government has disclaimed reliance on the 1961 Hague Convention). The defense's research has not located any caselaw on the question of whether certifications produced in response to MLAT requests suffice under Rule 902(4)(B).

To recap, the government's novel theory is that Rule 902(4)(B) provides that certain records are self-authenticating when "certified as correct by . . . a certificate that complies with . . . a rule prescribed by the Supreme Court." Fed. R. Evid. 902(4)(B). The government then points to Criminal Rule 27, which provides that a party "may prove an official record . . . in the same manner as a civil action." [1] Fed. R. Crim. P. 27. Civil Rule 44(a)(2)(A)(ii) in turn provides for the authentication of foreign official record or a copy "that is attested by an authorized person and is accompanied either by a final certification of genuineness or by a certification under a treaty or convention to which the United States and the country where the record is located are parties." Fed. R. Civ. P. 44(a)(2)(A)(ii); *see* Wright & Miller § 2435. The government argues that the bilateral MLATs between the United States and Switzerland, the Czech Republic, and the United Kingdom are qualifying treaties such that certifications produced in response to MLAT requests satisfy Civil Rule 44(a)(2)(A)(ii), and Criminal Rule 27, and Rule of Evidence 902(4)(B)—ultimately authenticating the records at issue.

There are at least two problems with this approach, beyond the lack of support in precedent. First, Rule 902(4)(B) expressly applies only to copies of official records and copies of documents that were recorded or filed in a public office authorized by law. *See* Wright & Miller § 7138 (noting "another distinction between Rule 902(4) on the one hand and Rules 902(1), (2), and (3) on the other hand; the former applies only

[1] Criminal Rule 27 "is only a method of authentication for official records and does not in itself make such records admissible." Wright & Miller, *Fed. Prac. & Proc.* § 441, *available on* Westlaw. Criminal Rule 27 "incorporates fully by reference Rule 44 of the Civil Rules." *Id.*

to copies while the latter apply only to originals”). While Exhibits 901 & 902 and the air traffic control records purport to be copies, the Swiss visa application in Exhibit 1552 purports to be an original. As such, the government cannot proceed under Rule 902(4) with respect to Exhibit 1552 (or any similar original documents).

Exh. 902







Exh. 1552







Second, as anticipated by Mr. Al-Marimi’s previous filing, a certification produced in response to an MLAT is not automatically the sort of certification capable of satisfying the demands of Civil Rule 44(a)(2)(A)(ii) and, by extension, Rule 902(4)(B). To understand why, it is important to understand the function of the “final certification of genuineness” for which a Civil Rule 44(a)(2)(A)(ii) treaty-based certification acts as a substitute.

Under Civil Rule 44, absent the alternative treaty-based certification or good cause for not producing a final certification (subsection (a)(2)(C)), a copy of a foreign official record must be attested to by an authorized person and accompanied by a final certification of genuineness. Fed. R. Civ. P. 44(a)(2)(A)(ii). That final certification

"must certify *the genuineness of the signature and official position of the attester* or of any foreign official whose certificate of genuineness relates to the attestation or is in a chain of certificates of genuineness relating to the attestation." Fed. R. Civ. P. 44(a)(2)(B) (emphasis added). As the Fourth Circuit has explained, Civil Rule 44—like Rule of Evidence 902(3), which broadly mirrors Civil Rule 44—contains two requirements for the authentication of a foreign document:

> First, there must be some indication that the *document* is what it purports to be. Thus, the proffered document must be executed by a proper official in his official capacity, or the genuineness of the document must be attested to by a proper official in his official capacity. Second, there must be some indication that the *official* vouching for the document is who he purports to be. Thus, the rules require that one of a specified group of foreign officials must issue a final certification attesting to the genuineness of signature and title of the person executing or attesting to the document, or of another official who has certified the signature and position of the person executing or attesting to the document.

*United States v. Squillacote*, 221 F.3d 542, 562 (4th Cir. 2000); *see also* Fed. R. Civ. P. 44, Notes of Advisory Committee on 1966 Amendment ("The final certification . . . relates to the incumbency and genuineness of signature of the foreign official who attested the copy of the record . . . ."); Wright & Miller § 7138 n.57 ("Finally, Rule 44 requires that, in addition to the custodian attesting to the accuracy of a copy, a sealed certificate that he is the custodian must be provided.").[2]

In the normal course, either a U.S. consular or diplomatic official with

[2] The discussion in the cited footnote contrasts Rule of Evidence 902(4) with Civil Rule 44(a)(2). When reviewing those contrasts, it is important to keep in mind that the situation here involves the government seeking to use Civil Rule 44 to satisfy Rule 902(4); thus, while the footnote accurately states Rule 902(4) may be broader than Civil Rule 44 in other circumstances, here all the limitations in Civil Rule 44 apply.

knowledge of the foreign country's bureaucracy or a foreign consular or diplomatic official with such knowledge who is assigned to the U.S. steps in to meet the second requirement. *See* Wright & Miller § 2435. Because foreign bureaucracies can be complex and evolving, the rule also provides for a situation involving a "chain of certificates," where multiple certificates link together until a qualifying U.S. or foreign official with knowledge can certify one of the links. *Id.* Accordingly, the Committee's Notes advise that the good-cause exception applies when no such knowledgeable U.S. or foreign official is available or willing to cooperate. Fed. R. Civ. P. 44, Notes of Advisory Committee on 1966 Amendment.

With this background, it makes sense why the caselaw applying the treaty-based alternative in Civil Rule 44(a)(2)(A)(ii) overwhelmingly discusses the 1961 Hague Convention, and why defense research could not locate any case applying that provision in the context of MLAT productions.[3] The 1961 Hague Convention, also known as the "Apostille Convention," created a mechanism where a document could be certified in its state of origin via an "apostille," thereby removing the need for further certification by the destination state.[4] "An apostille is an international

---

[3] *See* Wright & Miller § 2435 n.6 (collecting cases, all of which addressed the 1961 Hague Convention); *see also, e.g.*, *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278 (11th Cir. 2022); *Corovic v. Mukasey*, 519 F.3d 90 (2d Cir. 2008)); *United States v. Pintado-Isiordia*, 448 F.3d 1155 (9th Cir. 2006); *Soonhee Kim v. Ferdinand*, 287 F. Supp. 3d 607 (E.D. La. 2018).

[4] *See* State of N.Y., *Apostille or Certificate of Authentication*, https://dos.ny.gov/apostille-certificate-authentication ("Under the Hague Convention, signatory countries have agreed to recognize public documents issued by other signatory countries if those public documents are authenticated by the attachment of an internationally recognized form of authentication known as an Apostille."); U.S. Dep't of State, *Preparing your Document for an Apostille Certificate*, https://travel.state.gov/content/travel/en/replace-certify-docs/authenticate-your-document/apostille-requirements.html.

method for verification of foreign documents similar to notarization." *Carrizosa*, 47 F.4th at 1305 n.13.

Critically, the 1961 Hague Convention expressly addresses the second requirement for authentication under Civil Rule 44. Article 2 exempts covered documents from "legalisation," defined to mean "only the formality by which the diplomatic or consular agents of the country in which the document has to be produced certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears." HCCH, *12: Convention of 5 October 1961 Abolishing the Requirement of Legalisation for Foreign Public Documents* (Jan. 24, 1965), *available at* https://www.hcch.net/en/instruments/conventions/full-text/?cid=41. Articles 3 and 4 denote apostilles "placed on the document itself" as the "only formality that may be required" to certify those facts. *Id.*

In short, the treaties and conventions referred to in Civil Rule 44 must provide for the authentication of documents and provide some mechanism to certify the genuineness of a related attestation or certificate. That is the only way that the rule makes sense in the context of the evidentiary framework approved by Congress and the international legal system that provides the backdrop to those rules. The 1961 Hague Convention fits the bill; its express purpose is to provide a mechanism—apostilles—to obviate the need for "legalisation."

Conversely, the MLATs at issue here do not fit the bill. They do not address the issues encompassed within "legalisation" or provide any mechanism equivalent

to an apostille. Rather, they address the provision of various forms of legal assistance, including the provision of documents, records, and articles of evidence. In other words, the MLATs are a mechanism by which the government can request the issuance of documents and accompanying certificates from a foreign country, but they do not govern the genuineness of any certificate so produced.[5]

If there was any remaining doubt, the Committee's Notes confirm the limited scope of the treaty-based alternative in Civil Rule 44(a)(2)(A)(ii):

> The amendment to paragraph (a)(2) adds a sentence to dispense with the final certification by diplomatic officers when the United States and the foreign country where the record is located are parties to a treaty or convention that abolishes or displaces the requirement. In that event the treaty or convention is to be followed. This changes the former procedure for authenticating foreign official records only with respect to records from countries that are parties to the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents. Moreover, it does not affect the former practice of attesting the records, but only changes the method of certifying the attestation.
>
> The Hague Public Documents Convention provides that the requirement of a final certification is abolished and replaced with a model *apostille*, which is to be issued by officials of the country where the records are located. See Hague Public Documents Convention, Arts. 2–4. The *apostille* certifies the signature, official position, and seal of the attesting officer. The authority who issues the *apostille* must maintain a register or card index showing the serial number of the *apostille* and other relevant information recorded on it. A foreign court can then check the serial number and information on the *apostille* with the issuing authority in order to guard against the use of fraudulent *apostilles*. This

[5] For example, while the bilateral MLAT with the Czech Republic provides that certain documents and records shall be admissible for the truth of the matters set forth therein and shall, "upon request, be authenticated by an official responsible for maintaining them" though the use of a particular form, it does not provide any mechanism to ensure the genuineness of that official's position or signature. *See* Treaty Between the United States of America and the Czech Republic on Mutual Legal Assistance in Criminal Matters, Art. 10, *available at* https://www.congress.gov/105/cdoc/tdoc47/CDOC-105tdoc47.pdf. The MLAT provides a means for the U.S. government to request a sufficient certification, but unlike the 1961 Hague Convention, it does not mandate that any certification produced is sufficient.

> system provides a reliable method for maintaining the integrity of the authentication process, and the *apostille* can be accorded greater weight than the normal authentication procedure because foreign officials are more likely to know the precise capacity under their law of the attesting officer than would an American official.

Fed. R. Civ. P. 44, Notes of Advisory Committee on 1991 Amendment (underline added).

## CONCLUSION

For the reasons explained above, the certifications at issue here are not sufficient under the federal rules. The Court should reject the government's novel argument.

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: ________/s/______________________
Whitney E.C. Minter
Va. Bar #47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)