**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S FURTHER MOTIONS *IN LIMINE* REGARDING GOVERNMENT TRIAL EXHIBITS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the defendant's further motions in limine regarding the government's trial exhibits. The government requests the Court overrule the defendant's objections.

## FACTS

As the Court is aware, this case arises out of the bombing of Pan Am Flight 103 on December 21, 1988, when it exploded over Lockerbie, Scotland, while *en route* from London's Heathrow Airport to John F. Kennedy International Airport in New York City. The explosion resulted in the deaths of 270 people, 259 of whom were aboard the flight, with another 11 residents of Lockerbie. The details of the crash, as well as the extensive investigation that followed, are outlined in ECF 26, as well as the transcript from the Motion to Suppress Hearing. As a result of the investigation that has spanned 38 years, the defendant is charged with destruction of an aircraft

resulting in death, in violation of 18 U.S.C. §§ 32(a)(2), 34, and 2; and destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(1), 34, and 2.[1] The case is set for trial.

The government has shared preliminary exhibit lists with the defense. Most of the defense objections were noted and litigated in ECFs 483, 495, 507 and 531-1. However, the defense now raises objections in an additional Motion in Limine, ECF 646. The government responds below.

## ARGUMENT

### I. Family Visa Applications

The defense objects to certain portions of the defendant's family member's visa applications being received in evidence. *See* ECF 646 at 5. The defense does not contest the admissibility of the documents generally, and instead it argues that portions of them are irrelevant or excludable under Fed. R. Evid. 403. *See id.* at 1-3. The government agrees to redact portions of the visa applications, including the notes section. Others, including the family members' listed occupations, are relevant in the government's view. The government is willing to work with the defense on proposed redactions and only bring any disputes to the Court if the parties cannot agree. The defense did not seek the government's position on redactions prior to filing its motion.[2] The government's proposal is that it submit proposed redactions to the defense, that the parties meet

[1] The defendant was also charged with destruction of a vehicle used in foreign commerce by means of an explosive, resulting in death, in violation of 18 U.S.C. § 844(i), but that charge has been dismissed by the Court.

[2] The defense complains that the government "has not acknowledged these portions of the visa applications in its briefing or put forward any relevance argument. Notably, other portions of the visa application exhibits already are redacted, but not these notes." ECF 646 at 3. The government provided the exhibits to the defense in the form in which it received them from the State Department. The government would have been (and still is) willing to engage in a discussion regarding any requested redactions the defense may have.

and confer, regarding those proposed redactions and that they then bring any disputed issues to the Court's attention prior to the pretrial conference.

**II. U.S. – Libya Exhibits**

As part of its case-in-chief, the government expects to call Alison Pargeter, an expert in Libyan history. The Court has reviewed the expert notice and the associated litigation at ECFs 363, 363-1, 387, 399. On May 4, 2026, the Court ruled that the majority of Ms. Pargeter's testimony was admissible. The exhibits that the government has proffered as part of her testimony, Exhibits 400-412, are relevant and conform to the Court's May 4 ruling.[3] Specifically, the defense objects to Exhibits 405, 406, 407, 408, 409, 410 and 411 under both Federal Rules of Evidence 403 and 404.

In their arguments for the exclusion of exhibits 405, 406, and 407, the defense uses language such as "highly likely to enflame the jury's passions," "remains prejudicial," and "risks inciting emotions." These are not legal standards. In fact, the D.C. Circuit has stated that even if the conduct portrayed by the testimony is "outrageous" and "may dramatically" injure the defendant's cause, it is not sufficient reason to exclude the testimony. *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir 1998). *See also United States v. Munoz*, 36 F.3d 1229, 1233 (1st Cir. 1994) (The damage done to the defense is not a basis for exclusion; the question under Rule 403 is "one of 'unfair" prejudice--not of prejudice alone.")(c*iting United States* v. *Moreno Morales*, 815 F.2d 725, 740 (1st Cir. 1987)). As the D.C. Circuit has repeatedly emphasized, "Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." *United States v. Pettiford*, 517

[3] Pursuant to the Court's Minute Order on August 21, 2026, the government is not intending to introduce Exhibit 404.

F.3d 584, 590 (D.C. Cir. 2008) (*quoting Gartmon*, 146 F.3d. at 1021); *see also United States v. Manner*, 887 F.2d 317, 322 (D.C. Cir. 1989) (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984), and *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir.1978)). With the scales so calibrated, the law of this circuit is to "lean toward admitting evidence in close cases." *Manner,* 887 F.2d at 322 (citing *United States v. Payne*, 805 F.2d 1062, 1066 (D.C. Cir. 1986); *Moore*, 732 F.2d at 989). That approach is consistent both with "the 'thrust of the Federal Rules,' which favors 'admissibility,'" and with the Supreme Court's teaching about the "fundamental and comprehensive" need to "develop all relevant facts in the adversary system," which is required both for the "ends of criminal justice" and the "very integrity of the judicial system and public confidence in [it]." *Day*, 591 F.2d at 879 (quoting J. Weinstein & M. Berger, Evidence P 403(03) at 403-18 (1977); *United States v. Nixon*, 418 U.S. 683, 709 (1974)).

When the defense makes vague and wide-sweeping arguments, it does not aide the Court in its consideration of the evidence. The Court must decide if the danger of unfair prejudice <u>substantially</u> outweighs the evidence's probative value. The fact that evidence will likely be upsetting or disturbing or even "jarring," does not make it inadmissible. See *United States v. Khatallah*, 313 F.Supp. 3d 176, 195 (D.D.C. 2018) (admitting autopsy photos and physical injuries where government is entitled to present a compelling case with evidence of its choosing). The D.C. Court of Appeals has explained:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.
>
> *Gartmon*, 146 F.3d at 1021.

As the Court already ruled on May 4, the government can elicit testimony about the relationship between the United States and Libya in the 1980s. *See* May 4 Tr. at 11. The context

in which this terrorist bombing took place is important for the jury to understand intent, knowledge and motive. *See* ECF 387 at 3. And indeed, the Court has agreed that this evidence is relevant to the defendant's motive and intent. May 4 Tr. at 10. The Could also agreed that the jury is unlikely to be familiar with the events of the 1980s. *Id*. Additionally, the Court ruled that Ms. Pargeter can testify that Gaddafi "ruled through repression and fear, that he and his government used intimidation, violence, and force to achieve their domestic and foreign policy goals, and that his regime had hostility not only towards the United States but other western countries." *Id*. The exhibits that the government has nominated for use, specifically 405 to 411, are photos that illustrate those exact *permissible and admissible* sentiments. There are no photos of violence, brutality, or victims being subjected to the kind of torture that Gaddafi was known for; the exhibits hew to the Court's ruling. The government has the right to present "a case with testimony and tangible things," which "not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." *Old Chief*, 519 U.S. 172 at 187. Because the exhibits do not violate the 403 balancing test, they should be admitted.

**III. Investigative Documents from Libya**

The government submits that, given the defense's stated intent to move to reopen the suppression hearing after Jamal, it would be appropriate for the Court to hold any decision about these documents in abeyance until after that litigation is complete, in the event that further development of the record informs the parties' position on them. The government offers the below responses to the defense objections on the current record.

| Exhibits | Description | Objections | Response |
|---|---|---|---|
| 500, 500-j, 500-t<br>501<br>502, 502-t, 502-tr | Copies and translations of alleged confession | Parties discussed issues on 8/19/2026 and are working towards resolution.<br><br>Mr. Al-Marimi maintains the | The only objection raised here by the defendant is as to Exhibit 500 and 500-t, it would seem. Those exhibits represent the |

| | | | |
|---|---|---|---|
| | | objection he made on the record on 8/19/26 regarding the FRE 403 objection to the government's proposed redactions to the interviews of the other men Jamal allegedly interviewed. | entire packet of all statements taken by Jamal.<br><br>The government submits that the appropriate time to revisit proposed redactions to the statements of others would be after litigation regarding motions to suppress and to reopen prior suppression decisions is completed.<br><br>At that point, the government will submit its finalized proposed redactions to defense, and the parties will bring any disputes to the Court ahead of the pretrial conference. |
| 510 | Jamal CV (Arabic) | Presumably for identification only.<br><br>Hearsay. The witness can testify to his background. | At this point, the document is for identification only. Should the government seek to introduce it, it would be admissible for the reasons below.<br><br>Referring to this document as a "CV" is a misnomer that grew from the government's shorthand for the document. It is a series of official Libyan government documents that document the promotion of police officers. It would thus be admissible under Rule 803(8) if Jamal lays the proper foundation. |

| | | | |
|---|---|---|---|
| | | | It would separately be admissible for the nontruth purpose of demonstrating that Jamal sent documents to the FBI upon request. |
| 512 | Signed Jamal declaration | Hearsay. The witness can testify to the topics at issue. | Admissible for the non-truth purpose of demonstrating that Jamal took the time and care to correct his prior mistaken testimony. |
| 514, 514-t | 1/10/2017 Libyan cover letter accompanying alleged confession.<br>The letter states "we submit to you true copies of the originals of all handwritten notes taken during the interrogation of some suspects in the Lockerbie bombing, and they are: [three names, including Mr. Al-Marimi]" | Relevance and unfair prejudice as to the names of the other two individuals interviewed. One of the individuals was not interviewed by Jamal. Request redaction. | The government has no objection to redacting those names on the current record. If that view changes, the government will meet and confer with the defense, and the parties will bring any disputes to the Court. |
| 515, 515-t | 7/13/2026 Libyan cover letter accompanying confession-related documents<br>The letter identifies the production of two documents in addition to the "original" copy of the alleged confession, identified in paragraphs 2 and 3. | Hearsay implicating Confrontation Clause.<br>Unfair prejudice outweighs probative value as to paragraphs 2 and 3 that refer to the other documents. The paragraphs offer unsubstantiated conclusions and opinions about the documents, neither of which will be | There is no hearsay here. The document is akin to a certification document, and its value is in demonstrating that Libya responded to the government's requests after a defense challenge to the authenticity of previously provided documents. The government would be introducing it for that purpose and not for the truth of any assertion in the document.<br><br>Regardless, the government believes that |

| | | | |
|---|---|---|---|
| | | | in light of the newly discovered evidence, it makes sense to defer ruling on this exhibit until after litigation concludes over that evidence, as the outcome of that litigation could affect both parties' arguments as to the admissibility of this exhibit. |
| 516 | Typed version of purported statements by other ESO members in Arabic | Unfair prejudice and nested hearsay. Requires redactions consistent with the Court's prior rulings.<br>Handwritten copy of one interview (S.I.A.S.) features conspicuously different handwriting, suggesting Jamal may not have been involved. | This exhibit will be redacted consistent with the handwritten version. The government has no current plans to introduce into evidence the statement with which Jamal had no known involvement, unless the defense opens the door. If the government believes the door has been opened, it will ask to address the issue outside the presence of the jury. |
| 517, 517-t | 7/20/2026 Libyan cover letter accompanying confession-related documents<br>Paragraph 2 refers to uncharged accusations. The final paragraph refers to Libyan documents witness by name | Relevance and unfair prejudice as to paragraph 2 and final paragraph. Paragraph 2 provides commentary on the contents of other evidence. The final paragraph offers an opinion about the propriety of a witness testifying. | There is no hearsay here. The document is akin to a certification document, and its value is in demonstrating that Libya responded to the government's requests after a defense challenge to the authenticity of previously provided documents. The government would be introducing it for that purpose and not for the truth of any assertion in the document. |

| | | | |
|---|---|---|---|
| | | | Regardless, the government believes that in light of the newly discovered evidence, it makes sense to defer ruling on this exhibit until after litigation concludes over that evidence, as the outcome of that litigation could affect both parties' arguments as to the admissibility of this exhibit. |

**IV. Non-Libyan Foreign Records**

For the foreign records objections outlined below, the government incorporates its arguments from ECF 495 and 531-1. Additionally, the government responds to the specific items as follows:

| Exhibits | Description | Objections | Response |
|---|---|---|---|
| 871, 872, 873, 877 | The defense has not received copies of these exhibits and reserves objections. | | The defense has been provided with these exhibits. |
| 874<br>875<br>876<br>878 | Holiday Inn invoices under the names Abdelbaset, Abdusalam, and Abdusamad. | Hearsay.<br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. The defense maintains relevance objections to another party's alleged travel, particularly under supposedly false names.<br>The defense acknowledges the Court's coconspirator rulings but maintains that the government must establish grounds to link these names with a person of relevance. | The government intends to present testimony that will establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6), 803(8) and/or 803(16).<br><br>As far as relevance, the name Abdelbaset is clearly relevant, as he is a co-conspirator, Abdelbaset Al-Megrahi. The government intends to present evidence that Abdusalam and Abdusamad are aliases of Abdelbaset Al-Megrahi. |

| | | | |
|---|---|---|---|
| 912<br>913 | Hotel Intercontinental traveler cards for Megrahi | Hearsay.<br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br>The defense maintains relevance objections to another party's alleged travel. | The government intends to present testimony that will establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6), 803(8) and/or 803(16).<br><br>As far as relevance, the name Abdelbaset is clearly relevant, as he is a co-conspirator, Abdelbaset Al-Megrahi. His travel and role in the conspiracy is relevant. |
| 914<br>915 | Hotel Intercontinental room-change notes | Hearsay.<br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br>The defense maintains relevance objections to another party's alleged travel. | The government does not intend to introduce these documents in its case in chief. If that changes, *e.g.*, by the defense opening the door, the government will first raise the issue with the Court outside of the presence of the jury. |
| 1928-1<br>1928-2 | Dutch documents relating to Megrahi and Fhimah that were created during extradition process for the Camp Zeist trial | The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. | The government intends to present testimony that will establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6), 803(8) and/or 803(16). |
| 1929<br>1930 | Passports | Mr. Al-Marimi maintains hearsay objections to passports consistent with prior briefing. *See United States v. Clarke*, 628 F. Supp. 2d 15, 22 & n.6 (D.D.C. 2009) (recognizing "hearsay status" or passports and approving admission for limited purpose); *United States v. Ullah*, 282 F. App'x 923 (2d | The government incorporates its prior arguments in ECF 495 and 531-1.<br><br>Additionally, the government expects to have witnesses with knowledge at trial who will be able to identify the passports by their |

| | | | |
|---|---|---|---|
| | | Cir. July 2, 2008) (approving exclusion of foreign passport as hearsay based on purpose for which it was offered).<br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. | appearance and stamps inside. |

**V. Air Traffic Control Records**

The government suggests that it would be appropriate to defer ruling on these objections until after the Court rules on the authentication and certification issues being litigated in connection with the air traffic control audio and video exhibits. *See* ECF 585, 596, 610, 625, 626, 643, 660. The government's reply on that issue is due on October 8, 2026.[4] The government's primary reason for offering the transcript exhibits is as an alternative means of authenticating the audio recording of air-traffic-control communications. Accordingly, the arguments for and against admission of the transcripts will be much more crystallized when the Court rules on the certifications associated with the recordings.

As the Court may recall, in connection with the litigation discussed in the preceding paragraph, the government moved to admit Exhibits 226 and 229, which are air-traffic-control audio and video recordings from the night of December 21, 1988. ECF 625 at 12-14. The government obtained a certification for those recordings, Ex. 229-c, that contained language that would establish admissibility under both 18 U.S.C. § 3505 and Fed. R. Evid. 803(8). In connection with that litigation, which is ongoing, the government submitted Exhibits 230 and 231, which are U.K.-certified transcripts of portions of the air traffic control audio. The government submitted

[4] This is the parties' proposed response date in ECF 667-1.

those transcripts as an alternative means to authenticate the audio recording in Ex. 226. The government has argued, and will continue to argue, on October 8, that Exhibits 230 and 231 (as well as a related transcript exhibit, No. 233), are self-authenticating under Fed. R. Evid. 902(3) and/or 902(4). Accordingly, if the Court accepts the authenticity of the transcripts, the trier of fact can also authenticate the underlying audio transmissions by a comparison of those transmissions to the transcripts. *See* Fed. R. Evid. 901(b)(3) and (b)(4).

The outcome of the related litigation will determine whether the government has laid a sufficient foundation for the transcripts, which is one of the defense objections, as if the Court accepts the certifications, the transcripts will be authenticated. *See* ECF 646 at 10. Separately, if the Court accepts the certifications, the transcripts are admissible under Rules 803(8)(A)(i) & (ii) and 803(6). Those rules cover the first layer of hearsay, *i.e.*, the making of the transcript, and the second layer is covered by those same rules, as well as Rule 803(1), as the transcript is wholly derivative of the recording, which consists of air traffic controllers making statements in real time that either contain no assertive intent or are describing the conditions they were witnessing in real time. Accordingly, the government submits that the admissibility of the Exhibits 230, 231, and 233 should be decided in connection with the certification litigation, as the outcome of that litigation will likely be determinative of the validity of the defense objections.

**CONCLUSION**

For the above reasons, the Court should overrule the defense objections to the government's proposed exhibits.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Brittany Keil***
ERIK M. KENERSON (OH Bar No. 82960)
CONOR MULROE (NY Bar No. 5289640)
BRITTANY KEIL (D.C. Bar No. 500054)
CHARLES R. JONES (D.C. Bar No. 1035541)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 252-7763 // Brittany.keil@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530