**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**MR. AL-MARIMI'S REPLY IN SUPPORT OF FURTHER MOTIONS *IN LIMINE* REGARDING GOVERNMENT TRIAL EXHIBITS**

Mr. Al-Marimi replies herein regarding the most recent round of motions *in limine* for the government's previously identified trial exhibits. *See* ECF Nos. 646, 669.

## I. Family visa applications

Mr. Al-Marimi appreciates the government's offer to redact plainly irrelevant and prejudicial portions of the visa applications, and the parties will confer. But Mr. Al-Marimi clarifies that he does "contest the admissibility of the documents generally," consistent with his prior arguments on that front. ECF No. 669 at 2; *see* ECF No. 545 at 5–8 (challenging admissibility under Rule 403 and hearsay rules).

## II. U.S.-Libya exhibits

Mr. Al-Marimi objects to a series of photos and videos the government intends to present alongside the testimony of its U.S.-Libya expert, Alison Pargeter, as irrelevant and unfairly prejudicial. In an August 21, 2026, Minute Order, the Court excluded reference to one of the exhibits—Ex. 404, the address by President Reagan. The government argues the remaining exhibits—405 through 411—are admissible.

But rather than address the particular relevance and the prejudicial aspects of each remaining exhibit, the government only offers general arguments about the Rule 403 standard and the Court's prior rulings with respect to the relevance of "the relationship between the United States and Libya in the 1980s" and the nature of Qaddafi's regime. ECF No. 669 at 3–5. For sure, a party may present prejudicial evidence if it is sufficiently relevant and the prejudice is not unfair. But none of the cases identified by the government involved evidence like the depictions at issue here,[1] and the relevance of a class of information does not automatically extend to inciting depictions that only tangentially connect to that class.

The Court is very familiar with the standard for Rule 403 balancing. Here, the scales tip against admissibility. Take Exhibit 405 for example. The government does not explain why, in its discussion of the relationship between Libya and the United States, it is important to present the jury with an image of fist crushing a "USA" plane, coated with a reddish substance evocative of blood. Mr. Al-Marimi is on trial for the destruction of a U.S. aircraft resulting in death. It is hard to imagine a more prejudicial image, and the government identifies no need for the specific depiction of

[1] *See, e.g.*, *United States v. Gartmon*, 146 F.3d 1015, 1019–21 (D.C. Cir. 1998) (affirming admission of evidence about an "outrageous" threat of firearm-related violence by the defendant to coerce a coconspirator to continue assisting him when it represented direct evidence of the defendant's "knowing involvement" and explained "the nature of the relationship" between the coconspirators; noting defendant himself engaged "in outrageous acts" at issue); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978) (admitting Rule 404(b) evidence relating to defendant's admitted crimes arising out of the same events "when the evidence indicate[d] a close relationship to the offense charged"); *United States v. Khatallah*, 313 F. Supp. 3d 176, 195 (D.D.C. 2018) (admitting autopsy photos and injury evidence related to the crimes on trial). Here, none of the exhibits have any direct connection to Mr. Al-Marimi or his alleged conduct.

the symbol other than to familiarize the jury with the 1980s. *Old Chief* affords the government some leeway in how it presents its case, but the government cannot use propaganda in place of evidence.

Regarding the depictions of the 2011 Libyan revolution and its aftermath, the government does not address that time period at all. It merely points to the Court's ruling about the relevance of testimony about Qaddafi's repressive rule, use of force, and antipathy towards western countries. It is not clear how the jury being situated in the viewpoint of a combatant on the ground during the 2011 Libyan revolution connects to those topics. Mr. Al-Marimi reasserts that scenes of war, chaos, and conflict that are disconnected from Mr. Al-Marimi's alleged conduct and the timeframe of the charged conduct are both irrelevant and unfairly prejudicial because of their inflammatory nature and skewed depiction of Libya and Libyans.

**III. Investigative documents from Libya**

The government's response has narrowed the issues presented, and Mr. Al-Marimi has shaded-in the rows for exhibits that do not present a ripe dispute.

| Exhibits | Description | Objections | Response | Reply |
|---|---|---|---|---|
| 500, 500-j, 500-t<br>501<br>502, 502-t, 502-tr | Copies and translations of alleged confession | Parties discussed issues on 8/19/2026 and are working towards resolution.<br>Mr. Al-Marimi maintains the objection he made on the record on 8/19/26 regarding the FRE 403 objection to the government's proposed redactions to the interviews of the other men Jamal allegedly | The only objection raised here by the defendant is as to Exhibit 500 and 500-t, it would seem. Those exhibits represent the entire packet of all statements taken by Jamal.<br>The government submits that the appropriate time to revisit proposed redactions to the | N/A |

| | | | | |
|---|---|---|---|---|
| | | interviewed. | statements of others would be after litigation regarding motions to suppress and to reopen prior suppression decisions is completed.<br><br>At that point, the government will submit its finalized proposed redactions to defense, and the parties will bring any disputes to the Court ahead of the pretrial conference. | |
| 510 | Jamal CV (Arabic) | Presumably for identification only.<br><br>Hearsay. The witness can testify to his background. | At this point, the document is for identification only. Should the government seek to introduce it, it would be admissible for the reasons below.<br><br>Referring to this document as a "CV" is a misnomer that grew from the government's shorthand for the document. It is a series of official Libyan government documents that document the promotion of police officers. It would thus be admissible under Rule 803(8) if Jamal lays the proper foundation.<br><br>It would separately be admissible for the nontruth purpose of demonstrating that Jamal sent documents to the FBI upon request. | Application of Rule 803(8) requires foundation as to the exception's requirements, as the government acknowledges. The defense is skeptical that Jamal can lay the proper foundation regarding the recordkeeping practices at issue.<br><br>The relevance of Jamal's willingness to send documents to the FBI upon request – presumably to his credibility – depends on the validity (i.e., the truth) of the documents' contents. |

| | | | | |
|---|---|---|---|---|
| 512 | Signed Jamal declaration | Hearsay. The witness can testify to the topics at issue. | Admissible for the non-truth purpose of demonstrating that Jamal took the time and care to correct his prior mistaken testimony. | The notion that statements were corrected assumes the truth of the revisions. The government cannot admit any revised police report to show that the officer "took the time and care to correct" his prior statements.<br><br>The witness can testify that he corrected his prior mistaken testimony, but his prior out of court statement remains hearsay. |
| 514, 514-t | 1/10/2017 Libyan cover letter accompanying alleged confession<br><br>The letter states "we submit to you true copies of the originals of all handwritten notes taken during the interrogation of some suspects in the Lockerbie bombing, and they are: [three names, including Mr. Al-Marimi]" | Relevance and unfair prejudice as to the names of the other two individuals interviewed. One of the individuals was not interviewed by Jamal. Request redaction. | The government has no objection to redacting those names on the current record. If that view changes, the government will meet and confer with the defense, and the parties will bring any disputes to the Court. | N/A |
| 515, 515-t | 7/13/2026 Libyan cover letter accompanying confession-related documents<br><br>The letter identifies the production of two documents in addition to the "original" copy of the alleged | Hearsay implicating Confrontation Clause.<br><br>Unfair prejudice outweighs probative value as to paragraphs 2 and 3 that refer to the other documents. The paragraphs offer unsubstantiated conclusions and opinions about the documents, neither of which will be | There is no hearsay here. The document is akin to a certification document, and its value is in demonstrating that Libya responded to the government's requests after a defense challenge to the authenticity of previously provided documents. The | If the truth of the contents does not matter, the contents should be redacted. |

| | | | | |
|---|---|---|---|---|
| | confession, identified in paragraphs 2 and 3. | produced to the jury.<br><br>404(b) as to paragraph 2, which discusses uncharged accusations.<br><br>Request redaction. | government would be introducing it for that purpose and not for the truth of any assertion in the document.<br><br>Regardless, the government believes that in light of the newly discovered evidence, it makes sense to defer ruling on this exhibit until after litigation concludes over that evidence, as the outcome of that litigation could affect both parties' arguments as to the admissibility of this exhibit. | |
| 516 | Typed version of purported statements by other ESO members in Arabic | Unfair prejudice and nested hearsay. Requires redactions consistent with the Court's prior rulings.<br><br>Handwritten copy of one interview (S.I.A.S.) features conspicuously different handwriting, suggesting Jamal may not have been involved. | This exhibit will be redacted consistent with the handwritten version. The government has no current plans to introduce into evidence the statement with which Jamal had no known involvement, unless the defense opens the door. If the government believes the door has been opened, it will ask to address the issue outside the presence of the jury. | N/A |
| 517, 517-t | 7/20/2026 Libyan cover letter accompanying confession-related documents<br><br>Paragraph 2 refers to uncharged accusations. The | Relevance and unfair prejudice as to paragraph 2 and final paragraph. Paragraph 2 provides commentary on the contents of other evidence. The final paragraph offers an opinion about the | There is no hearsay here. The document is akin to a certification document, and its value is in demonstrating that Libya responded to the government's requests after a defense | If the truth of the contents does not matter, the contents should be redacted. |

| | | | | |
|---|---|---|---|---|
| | final paragraph refers to Libyan documents witness by name | propriety of a witness testifying. | challenge to the authenticity of previously provided documents. The government would be introducing it for that purpose and not for the truth of any assertion in the document.<br><br>Regardless, the government believes that in light of the newly discovered evidence, it makes sense to defer ruling on this exhibit until after litigation concludes over that evidence, as the outcome of that litigation could affect both parties' arguments as to the admissibility of this exhibit. | |

## IV. Non-Libyan foreign records

| Exhibits | Description | Objections | Response | Reply |
|---|---|---|---|---|
| 871, 872, 873, 877 | The defense has not received copies of these exhibits and reserves objections. | | The defense has been provided with these exhibits. | The defense has not been able to locate these exhibits and is seeking clarification from the government. We will raise any objections to them at a later date. |
| 874<br>875<br>876<br>878 | Holiday Inn invoices under the names Abdelbaset, Abdusalam, and Abdusamad | Hearsay.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br><br>The defense maintains relevance objections to another party's alleged | The government intends to present testimony that will establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6), 803(8) and/or 803(16).<br><br>As far as relevance, the name Abdelbaset is clearly relevant, as he | Rule 803(8) would not cover hotel records. 18 U.S.C. § 3505 requires a foreign certification. The court previously provisionally admitted Holiday Inn records as business records, but Mr. Al-Marimi objects consistent with his prior |

| | | | | |
|---|---|---|---|---|
| | | travel, particularly under supposedly false names. The defense acknowledges the Court's coconspirator rulings but maintains that the government must establish grounds to link these names with a person of relevance. | is a co-conspirator, Abdelbaset Al-Megrahi. The government intends to present evidence that Abdusalam and Abdusamad are aliases of Abdelbaset Al-Megrahi. | positions. *See* ECF 326-1 (Exs. 822, 823).<br><br>Any relevance of exhibits for Megrahi's purported aliases is conditional on the government proving that these names are Megrahi's aliases. The government must first satisfy Rule 104(b). |
| 912<br><br>913 | Hotel Intercontinental traveler cards for Megrahi | Hearsay.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br><br>The defense maintains relevance objections to another party's alleged travel. | The government intends to present testimony that will establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6), 803(8) and/or 803(16).<br><br>As far as relevance, the name Abdelbaset is clearly relevant, as he is a co-conspirator, Abdelbaset Al-Megrahi. His travel and role in the conspiracy is relevant. | Rule 803(8) would not cover hotel records. 18 U.S.C. § 3505 requires a foreign certification. The court previously provisionally admitted hotel records as business records, but Mr. Al-Marimi objects consistent with his prior positions.<br><br>Any relevance of exhibits for Megrahi's purported aliases is conditional on the government proving that these names are Megrahi's aliases. The government must first satisfy Rule 104(b). |
| 914<br><br>915 | Hotel Intercontinental room-change notes | Hearsay.<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents.<br><br>The defense maintains relevance objections to another party's alleged travel. | The government does not intend to introduce these documents in its case in chief. If that changes, *e.g.*, by the defense opening the door, the government will first raise the issue with the Court outside of the presence of the jury. | N/A |
| 1928-1, 1928-2 | Dutch documents relating to Megrahi and | The government must present sufficient evidence to lay a proper | The government intends to present testimony that will | Turns on foundation evidence presented at |

| | | | | |
|---|---|---|---|---|
| | Fhimah that were created during extradition process for the Camp Zeist trial | foundation under Rules 602/901 to admit these documents. | establish the applicability of 18 U.S.C. § 3505, Fed. R. Evid. 803(6), 803(8) and/or 803(16). | trial, which has not been proffered. |
| 1929<br>1930 | Passports | Mr. Al-Marimi maintains hearsay objections to passports consistent with prior briefing. *See United States v. Clarke*, 628 F. Supp. 2d 15, 22 & n.6 (D.D.C. 2009) (recognizing "hearsay status" or passports and approving admission for limited purpose); *United States v. Ullah*, 282 F. App'x 923 (2d Cir. July 2, 2008) (approving exclusion of foreign passport as hearsay based on purpose for which it was offered).<br><br>The government must present sufficient evidence to lay a proper foundation under Rules 602/901 to admit these documents. | The government incorporates its prior arguments in ECF 495 and 531-1.<br><br>Additionally, the government expects to have witnesses with knowledge at trial who will be able to identify the passports by their appearance and stamps inside. | The government's arguments regarding the hearsay status of passports, ECF No. 531-1 at 7–9, miss the mark. *Clarke* stated a U.S. passport was admissible under 22 U.S.C. § 2705 "notwithstanding the passport's hearsay status," or under the Rule 803(8) *exception* to the hearsay rule, thus recognizing that passports are hearsay.<br><br>*Pluta*'s statement that a foreign passport "may be admissible . . . to prove foreign citizenship" was speculative *dicta*, as the court did "not resolve this question" due to the harmlessness of any error. *United States v. Pluta*, 176 F.3d 43, 51 (2d Cir. 1999). To satisfy the requirements of Rule 803(8), the government must present foundation evidence about the government agency responsible for issuing passports and verifying information. *See United States v. Ullah*, 282 F. App'x 923 (2d Cir. July 2, 2008).<br><br>The stamps in a passport, which the government seeks to |

| | | | | |
|---|---|---|---|---|
| | | | | use to establish the travels asserted, are a separate hearsay layer. |

### V. Air traffic control records

The government requests the Court consider the parties' arguments with respect to the air traffic control recording transcripts in light of to-be-completed briefing on the authentication and certification issues for the underlying recordings. The defense agrees it makes sense to consider all the related issues together.

Otherwise, Mr. Al-Marimi maintains his objections based on the disjointed formats of both the recordings and the transcripts. *See* ECF No. 643 at 9–10; *see also* ECF No. 625 at 12–14 (gov't arguments).

## CONCLUSION

The Court should grant Mr. Al-Marimi's motions *in limine* and exclude the challenged exhibits and portions of exhibits.

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: ________/s/________________________
Whitney E.C. Minter
Va. Bar #47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)