**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S REPLY REGARDING RULE 902(4) AND MLAT PRODUCTIONS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply to the defendant's Supplemental Response Regarding Rule 902(4) and MLAT Productions, ECF 660. As discussed in further detail below, (1) following the United States's accession to the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents (hereinafter "Apostille Convention"), Apostilles have replaced the "final certification" described in Rule 902(3) in connection with official records received from other countries are parties to the Apostille Convention; (2) the United States has sought, but not yet received, Apostilles from the United Kingdom and Czech Republic[1]; and (3) regardless, the documents at issue are self-authenticating because they are accompanied by a

[1] The government presently plans to present the Swiss documents through live testimony. The government has begun exploring with the Swiss authorities whether they can supply an Apostille, in the event that the witness becomes unavailable between now and the trial date. Additionally, Government Exhibits 1928-1 and 1928-2 are Dutch extradition documents created in 1999 for the defendant's co-conspirators, Abdelbaset Al-Megrahi and Lamen Fhimah, when they appeared in the Netherlands for the Camp Zeist trial. They were disclosed to the defense on July 31, 2025. The government has notified the defense that we intend to use these documents at trial and as such, have submitted an MLAT to the Netherlands to have them authenticated, as well as seeking an Apostille.

certification received pursuant to a bilateral Mutual Legal Assistance Treaty (MLAT) between the United States and each country at issue.

## ARGUMENT

As the Court is aware from prior filings in connection with this litigation, the government has sought to introduce visa-related records from the Czech Republic (Exs. 901 and 902), visa-related records from Switzerland (Exs. 1549 and 1550), and air-traffic control records from the United Kingdom (Exs. 226, 229, 230, 231, and 233[2]). Each of those records is admissible under multiple distinct but overlapping authentication bases relating to official records: (1) they are admissible because they were certified pursuant to an MLAT that specifically provides for authentication of official documents certified under the treaty without further certification; (2) they are admissible because the MLAT certifications satisfy Fed. R. Evid. 902(4), Fed. R. Civ. P. 44(a)(2)(A)(ii), and Fed. R. Crim. P. 27; and (3) they will have either an Apostille or good cause for the lack thereof once the countries to whom the government has made requests for Apostilles respond to that request.

### A. Apostilles

1. Foreign Official Documents Bearing an Apostille are Self-Authenticating.

As the Court has noted, foreign public documents can be self-authenticating in multiple ways, including if they are accompanied by a "final certification" (or good cause for the lack thereof). *See* Fed. R. Evid. 902(3). Copies of foreign official records are also self-authenticating if, among other things, they are certified as correct by "a certificate that complies with . . . a federal statute, or a rule prescribed by the Supreme Court." The Supreme Court, through Fed. R. Civ. P.

[2] The government's previous filing discussed all of the foregoing exhibits except 233. Ex. 233 is a transcript similar in all material respects in terms of authentication to Exs. 231 and 232, so the analysis should be identical.

44(a)(2) (and Fed. R. Crim. P. 27, which makes Fed. Civ. R. 44 applicable in criminal cases), has prescribed that foreign official records may be proved "by a certification under a treaty or convention to which the United States and the country where the record is located are parties."

Courts in this District and elsewhere have recognized that foreign official records certified under a treaty or convention are self-authenticating. *See United States v. Rivera-Luna*, 2026 WL 2676051 at *2 (D.D.C. September 11, 2026) ("Foreign documents may also self-authenticate under ratified treaties with other nations through Fed. R. Civ. P. 44(a)(2) (allowing authorization 'by a certification under a treaty or convention to which the United States and the country where the record is located are parties'), which is adopted in criminal cases by Fed. R. Crim. P. 27");[3] *United States v. Pintado-Isiordia*, 448 F.3d 1155, 1157 (9th Cir. 2006); *United States v. Vidrio-Osuna*, 198 Fed. Appx. 582, 583 (9th Cir. 2006) (unpub.); *cf. also Construction Drilling*, *Inc. v. Chusid*, 63 F. Supp. 2d 509, 515 (D.N.J. 1999) (noting that Fed. Civ. R. 44 "permits authentication of [foreign] official records pursuant to the Hague Convention," but declining to admit the documents at issue because they lacked an Apostille).[4]

As explained in greater detail in the attached declaration of William Fritzlen, an Attorney Adviser at the U.S. Department of State, the United States, United Kingdom, Switzerland, and the Czech Republic have entered into the Apostille Convention.[5] *See* Fritzlen Decl. at 2; *see also*

---

[3] Judge Lamberth initially declined to admit some of the Apostille-bearing documents for reasons unrelated to their authenticity that are not applicable to the records at issue here. Following a further proffer on that unrelated topic, Judge Lamberth ultimately admitted the records at issue. *See United States v. Rivera-Luna*, *et. al.*, No. 10-cr-256 (RCL), Dkt. 878, at 1-2.

[4] The documents at issue in this, and virtually all other civil cases, were not received via MLAT, as MLATs are by definition for mutual legal assistance in *criminal* matters. As explained in further detail below, documents certified pursuant to an MLAT are separately admissible, even in the absence of a final certification or Apostille, unless the MLAT itself references an Apostille.

[5] A copy of the Apostille Convention is available at https://assets.hcch.net/docs/b12ad529-5f75-411b-b523-8eebe86613c0.pdf (last visited October 8, 2026)

https://www.hcch.net/en/instruments/conventions/status-table/?cid=41 (last visited October 5, 2026). Accordingly, Czech, Swiss, and U.K. documents certified under the Apostille Convention are self-authenticating in the United States, and indeed the text of the Convention, which is part of the Supreme Law of the Land in the United States, specifically establishes that an Apostille is "the only formality" that may be required to verify the authenticity of foreign public documents. *See* Apostille Convention, Art. 3; Fritzlen Decl. at 2. It further specifies that "each Contracting State shall exempt from legalization documents to which the [Apostille] Convention applies." Apostille Convention, Art. 2; Fritzlen Decl. at 2. "Legalization" refers to the type of "final certification" described in Fed. R. Evid. 902(3). *See* Fritzlen Decl. at 2.

The State Department has interpreted the Apostille Convention to remove requirements such as the "final certification" by U.S. Embassies described in Rule 902(3), Fritzlen Decl. at 2, and indeed it trains its consular officers not to place consular authentications over Apostilles. *Id.* at 3. The State Department has further interpreted the Apostille Convention to mean that no further authentication is required once a contracting state provides an Apostille, and it notes that the Apostille itself is exempt from any further certification. *Id.* "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'" *Abbott v. Abbott*, 560 U.S. 1, 15 (2010), *quoting Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184–185 (1982). *See also Starr Int'l. Co., Inc. v. United States*, 910 F.3d 527, 537 (D.C. Cir. 2018) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight"), *quoting Sumitomo*, 457 U.S. at 184-85. The Special Commission on the Practical Operation of the Apostille Convention has separately opined that "requiring legalization instead of an Apostille and requiring legalization of an Apostille are contrary to Articles 3 and 5 of the [Apostille] Convention." Conclusions and Recommendations

of the Special Commission on the Practical Operation of the Apostille Convention, 6-9 November 2012, at ¶ 26, *available at* https://assets.hcch.net/docs/ff95d7b1-8396-4af1-9507-b44558a26e3c.pdf (last visited October 8, 2026).[6]

The State Department's interpretation of the effect of the Apostille Convention is sound. The preamble to the Convention states that the signatories "[d]esir[e] to abolish the requirement of diplomatic or consular legalization for foreign public documents." Article 2 states that each contracting state "shall exempt from legalization" documents to which the Convention applies, and Article 3 commands that "[t]he only formality" that may be required to certify a signatory is the application of an Apostille. The clear intent of the Apostille Convention, which was later entered into by the United States and ratified by the Senate, was to abolish the type of "final certification" requirement contemplated by Rule 902(3). That intent was recognized by the Supreme Court in promulgating the 1991 amendments to Fed. Civ. R. 44, which amended subpart (a)(2) to allow authentication "by a certification under a treaty or convention to which the United States and the country where the record is located are parties." Indeed, the Advisory Committee Notes on the foregoing amendment state that it was enacted "to dispense with the final certification by diplomatic officers when the United States and the foreign country where the record is located are parties to a treaty or convention that abolishes or displaces the requirement," and the note specifically states that the procedure is changed for countries that are parties to the Apostille Convention. As noted above, Fed. Civ. R. 44 is applicable in criminal cases via Fed. Crim. R. 27, and both are rules prescribed by the Supreme Court as referenced in Rule 902(4).

[6] This pleading uses the American English spelling of "legalization," rather than the British English version in the Convention itself.

The defense seems to concede that documents certified pursuant to the Apostille Convention are self-authenticating. *See* ECF 660 at 6 (arguing that the Apostille Convention "fits the bill" to comply with the treaty alternative in Civ. R. 44(a)(2)(A)(ii)). On that point, the defense and government are aligned. The Court, relying on the language of the Convention itself, the Fritzlen Declaration, and prior cases so holding, should agree as well.

2. Either Apostilles, or Good Cause for the Lack Thereof, Are Forthcoming

The government has requested Apostilles from the United Kingdom and the Czech Republic.[7] Both countries have requested additional time to determine whether, given the age of the documents at issue and/or the retired status of the certifying witnesses, they can provide an Apostille. At such time as those countries respond, the government will either provide the Apostille to the Court and counsel, or it will file a supplement arguing that those countries' inability to provide the Apostille constitutes "good cause" for the lack of a final certification as defined in Fed. R. Evid. 902(3) and Fed. Civ. R. 44(a)(2)(C).

**B. Mutual Legal Assistance Treaties**

1. Foreign Official Documents Certified Pursuant to an MLAT are Self-Authenticating

The language in Fed. Civ. R. 44 is not limited to the Apostille Convention or any other multilateral convention. The language instead renders self-authenticating any official record accompanied by "a certification under a treaty or convention to which the United States and the country where the record is located are parties." Civ. R. 44(a)(2)(A)(ii). The plain language of Fed. Civ. R. 44 – applicable in this case through Fed. Crim. R. 27 – thus includes *any* treaty to which the United States and the originating country are parties. Because the United States has

[7] The government currently plans to admit the Swiss documents via live testimony, as discussed above at note 1.

Mutual Legal Assistance Treaties ("MLATs") in place with the United Kingdom, the Czech Republic, and Switzerland, certifications produced pursuant to those treaties are self-authenticating. Additionally, as described in further detail below, the text of the treaties themselves provides a separate basis under law by which documents certified under them are self-executing.

Treaties are the Supreme Law of the Land, *see* U.S. Const. Art. II § 2 & Art. VI, and, when self-executing, are "binding domestic law" that is enforceable in U.S. courts. *Medellín v. Texas*, 552 U.S. 491, 504-05 (2008). MLATs are such treaties and therefore are binding domestic law. *See, e.g., In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 568 (9th Cir. 2011) (citing *Medellín* and stating that MLATs such as the U.S.-Russia MLAT are self-executing and supersede existing federal statutes); *Dongkuk Int'l, Inc. v. U.S. Dep't of Justice*, 204 F. Supp. 3d 18, 26 (D.D.C. 2016) (holding that U.S.-South Korea MLAT is self-executing with the "'automatic domestic effect as federal law upon ratification []'").

MLATs, like other treaties, are examined first by reading the plain language of the treaty and second by reviewing any Technical Analysis produced by the U.S. government and submitted to the Senate Committee on Foreign Relations at the time ratification was sought. *See Air France v. Saks* (1985), 470 U.S. 392, 397 (stating "analysis must begin … with the text of the treaty and the context in which the written words are used."); *Zicherman v. Korean Airlines Co. Ltd.*, 516 U.S. 217, 226 (1996) ("Because a treaty ratified by the United States is not only the law of this land, *see* U.S. Const., Art. II, § 2, but also an agreement among sovereign powers, we have traditionally considered as aids to its interpretation the negotiating and drafting history (travaux préparatoires) and the post-ratification understanding of the contracting parties"); *see also Rodriguez v. Pan American Health Org.*, 29 F. 4th 706, 717-18 (D.C. Cir. 2022) (citing *Zicherman*).

Together, these sources provide a helpful guide as to how to interpret treaty requirements to make the evidence gathered admissible, one of the ultimate purposes of entering into MLATs.

### 2. The Plain Language of Each Treaty Supports Admissibility

The language of the bilateral MLATs clearly indicates that official records may be collected and authenticated under each MLAT. For instance, under Article 19(1) of the U.S.-Switzerland MLAT, Swiss authorities "shall obtain a copy of an official record, or an entry therein, and shall have it authenticated by the attestation of an authorized person." Under Article 19(2) of the U.S.-Switzerland MLAT, "…a copy of any official recording in the requested State, or entry therein, shall be admissible in evidence without any additional foundation or authentication if authenticated and certified as provided in paragraph 1 and otherwise admissible." Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, U.S.-Switz., May 25, 1973, 27 U.S.T. 2019.

Under Article 10(3) of the U.S.-Czech Republic MLAT, "[r]ecords of a government department or agency or a court produced pursuant to this Article shall, upon request, be authenticated by an official responsible for maintaining them through the use of Form C [Certification of Official Records] appended to this Treaty. … Records authenticated by Form C … shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein." Supplementary Treaty on Mutual Legal Assistance in Criminal Matters Between the United States of America and the Czech Republic, U.S.-Czech, May 16, 2006, S. TREATY DOC. NO. 109-13 (2006), 1998 WL 1784229 at *12.

Article 9(3) of the U.S.-U.K. MLAT[8] states:

> Official records provided pursuant to this Article shall be authenticated by the Central Authority of the Requested Party in the manner indicated in Appendix B to this Treaty. No further authentication of certification shall be necessary in order for such records to be admissible in evidence in proceedings in the territory of the Requesting Party. Records provided pursuant to this Article may also be authenticated pursuant to such other form or manner as may be prescribed from time to time by either Central Authority.

Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters signed 6 January 1994, U.S.-U.K., Dec. 16, 2004, S. TREATY DOC. NO. 109-13 (2006), 2003 WL 25297816 at *246.

Thus, all three treaties at issue specifically state that no further authentication or certification is necessary for records to be admissible in the territory of the requesting party. This is contrary to the defense representation that the MLATs "do not govern the genuineness of any certificate" produced under them. *See* ECF 660 at 7. These MLATS, treaties entered into by the United States and ratified by the Senate, are part of the Supreme Law of the Land and, because they are self-executing, they are binding domestic law enforceable in U.S. courts. As such, the treaties provide a means separate and apart from Fed. R. Evid. 902(3) for authentication of official

[8] Note that the text of the 1996 U.S.-U.K. MLAT is incorporated into the consolidated text that includes a 2006 instrument negotiated as part of the U.S.-European Union MLAT. *See* Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters signed 6 January 1994, U.S.-U.K., Dec. 16, 2004, S. TREATY DOC. NO. 109-13 (2006).

documents. The treaties separately are "treat[ies] . . . to which the United States and the country where the record[s are] located are parties." Fed. Civ. R. 44(a)(2)(A)(ii). Accordingly, a copy of foreign official records certified as authentic by a certificate issued pursuant to any of those treaties is admissible under Fed. R. Evid. 902(4) (allowing self-authentication for public records certified by a certificate that complies with a federal statute or a rule prescribed by the Supreme Court). Under the plain language of the treaties and evidentiary rules, official records certified pursuant to an MLAT are self-authenticating.

The defense contends that "the treaties and conventions referred to in Civil Rule 44 must provide for the authentication of documents and provide some mechanism to certify the genuineness of a related attestation or certificate," ECF 660 at 6, but it cites neither case law nor principle to state why that is so. The defense has similarly cited no case – nor has the government found such a case – holding that MLATs do not satisfy the plain language of Fed. Civ. R. 44. Moreover, had the drafters of Fed. Civ. R. 44 intended to limit the application of its language to Conventions with procedures like those laid out in the Apostille Convention as the defense contends, they could have easily done so, but they chose not to. Indeed, the operative language in Fed. Civ. R. 44(a)(2)(A)(ii) was passed in response to the Apostille Convention, *see* Advisory Committee Note to 1991 amendments. The language of the rule itself contains no limitation of the type the defense proposes which supports the conclusion that the drafters made an intentional choice *not* to include such limiting language. Indeed, if the drafters of Fed. Civ. R. 44 had intended to limit the treaty-based alternative, they could have specifically referenced the Apostille Convention (or even limited the language in the rule to "conventions" and not included references to "treaties"). They did neither. Moreover, the Advisory Committee Notes makes clear that "[t]he amendment to paragraph (a)(2) adds a sentence to dispense with the final certification by

diplomatic officers when the United States and the foreign country where the record is located are parties to a treaty or convention that abolishes or displaces the requirement." As demonstrated above, the plain language of the MLATs with the United Kingdom, Czech Republic, and Switzerland have abolished the final certification requirement by providing their own means of authenticating documents and rendering them admissible.

Separately, the defense reading of Fed. Civ. R. 44 and the Advisory Committee Notes to the 1991 amendments is belied by the Apostille Convention, which states that an Apostille is not required if two of the contracting states have "abolished or simplified" the process for certifying public records. *See* Apostille Convention, Art. 3; *see also* Fritzlen Decl. at 3 (if MLATs have "abolished or simplified the process by which official documents may be produced, the procedures provided for in those agreements may be followed for documents obtained pursuant to requests made under those agreements instead of the Apostille Convention"). Based on the plain language of the treaties and the Technical Analyses thereof, as discussed in greater detail below, the MLATs at issue have indeed simplified the process by which official documents may be produced in criminal cases, and as such foreign official documents are self-executing if certified under either the Apostille Convention or the applicable bilateral MLAT.

The defense reading of Fed. Civ. R. 44 is foreclosed by the text of the rule itself. The defense claims that the reference to "a certification under a treaty or convention" in Fed. Civ. R. 44(a)(2)(A)(ii) must be read as an extension of the "final certification" language. *See* ECF 660 at 3-4. But that reading is inconsistent with the text of the rule, which states that "[e]ach of the following evidences a foreign official record" and is written in the disjunctive: "the record—or a copy—that is attested by an authorized person and is accompanied either by a final certification of genuineness ***or*** by a certification under a treaty or convention to which the United States and the

country where the record is located are parties." Civ. R. 44(a)(2)(A)(ii) (emphasis added). Fed. Civ. R. 44 thus establishes certification by treaty as an *alternative* to the final certification, not as a supplement thereto.[9] The requirements as described in Fed. Civ. R. 44(a)(2)(B) simply define what is required *if* a final certificate of genuineness is presented – it literally defines one term from the prior clause. The rule does not purport to require those formalities in cases where a party seeks to introduce a document certified in a lawful manner other than a final certification, such as authentication via treaty.

The defense's argument about the "evidentiary framework approved by Congress," ECF 660 at 6, also falls short. Setting aside the fact that the Senate ratified all of the MLATs at issue, including the language quoted above rendering official documents admissible with no further certification, Fed. R. Evid. 902(4) explicitly contemplates admission by a certificate as defined by statute or a rule promulgated by the Supreme Court. A change to Fed. Civ. R. 44, promulgated by the Supreme Court, created the treaty-based certification alternative currently at issue.

It is also not surprising that most of the case law that has arisen on the topic of the treaty alternative language in Fed. Civ. R. 44 has arisen in the Apostille context. For one, MLATs by their terms are only applicable in criminal cases, so foreign official documents presented in a civil case would have generally been certified via Apostille or the "final certification" described in Fed. R. Evid. 902(3). Second, given the clear language in the treaties at issue that states that foreign official documents are admissible without further certification, it is likely that challenges such as those mounted by the defense here do not arise very often. Indeed, DOJ's Office of International

[9] This distinction is why many of the cases cited by the defense are not on point. For example, *United States v. Squillacote*, 221 F.3d 542, 562 (4th Cir. 2000) and similar cases, which the defense cites, analyzes only the "final certification" alternative means of admission. It and similar cases do not opine one way or the other on the treaty/convention alternative.

Affairs has affirmed that it advises prosecutors that they may rely on the provisions the MLAT treaties to establish authenticity of documents produced pursuant to MLAT, and that it is unaware of that authenticity generally being challenged.

Accordingly, given the clear language in the treaties themselves and the evidentiary framework as laid out in the Federal Rules of Evidence and Civil and Criminal Procedure, foreign official documents received pursuant to MLAT requests are self-authenticating, even in the absence of a final certification or Apostille.

3. The Technical Analyses of the MLATs at Issue Support Admissibility.

The Court need not go further than a plain-language analysis of the treaties, but if it chooses to look to other sources to interpret the Treaty provisions, the Technical Analyses of each support the conclusion that official documents provided pursuant to the treaties are self-authenticating. Courts often look to Technical Analyses, which are treaty analyses sometimes prepared by the Departments of Justice and State and submitted to the Senate as part of the ratification process, as an aid to treaty interpretation. *See*, *e.g.*, *Rana v. Jenkins*, 113 F. 4th 1058, 1066 (9th Cir. 2024); *In re Commissioner's Subpoenas*, 325 F.3d 1287, 1297-98 (11th Cir. 2003). Technical Analyses represent an official treaty interpretation by the executive branch, *see id.*, and as discussed above, the Supreme Court has repeatedly reiterated that the executive branch's interpretation of a treaty is entitled to great weight. *See*, *e.g.*, *Abbott*, 560 U.S. at 15; *Medellín*, 552 U.S. at 513.

While not every treaty, or even every MLAT, is submitted to the Senate with a Technical Analysis, all three MLATs at issue in this pleading were submitted with such analyses. With respect to the official records provision of the U.S.-Switzerland MLAT, the Technical Analysis concludes, consistent with the text of the treaty, that documents obtained through the use of the

treaty are admissible "without additional authentication or foundation." Ex. B, attached, at 11.[10] The Technical Analysis also concludes that the Treaty "establishes a rule of evidence for federal and state courts." *Id.* at 11.

The Technical Analysis of the U.S.-Czech Republic MLAT concludes, as it pertains to official records, "[i]f the Czech authorities properly complete, sign, and attach Form C to executed documents … a U.S. judge may admit the records into evidence as self-authenticating under Rule 902(3) of the Federal Rules of Evidence. The admissibility provided by this paragraph provides for an exception to the hearsay rule." *See* Ex. C, attached, at 17. This Technical Analysis refutes the defense contention that the U.S.-Czech Republic MLAT "does not mandate that any certification produced is sufficient" *see* ECF 660 at 7 n.5, and under the Supreme Court case law quoted above, that interpretation is entitled to "great weight." *See*, *e.g.*, *Abbott*, 560 U.S. at 15; *Medellín*, 552 U.S. at 513.

The Technical Analysis regarding Article 9 (Records of government agencies) of the U.S.-U.K. MLAT states, "Paragraph 3 states that documents provided under this article will be authenticated pursuant to a certificate in a form appended to the Treaty. Thus, the authentication will be conducted in a manner similar to that required by Fed. R. Evid. 902(3), Federal Rules of Evidence, and the records will be admissible into evidence without additional foundation or authentication." *See* Ex. D, attached, at 22.[11]

---

[10] All page numbers referenced in attached exhibits refer to the ECF page numbers. Where multiple technical analyses were submitted at once, the government is providing only the analysis of the treaties at issue.

[11] Of particular import for this case, the Technical Analysis of the 1996 U.S.-U.K. MLAT states that the treaty is expected to be a valuable weapon in the fight against crime and that the United Kingdom "has already played a key role in major cases such as the BCCI case and the Pan Am 103 investigation." Ex. D at 12-23. Recognizing that the very purpose underlying the negotiation of the U.S.-U.K. MLAT sprang from cooperation in the Pan Am 103 case should lead the Court to determine the evidence at issue is admissible when certified under the MLAT.

The Technical Analysis of each of the MLATs at issue in this pleading demonstrates that the United States intended to enter into treaties with each of Switzerland, the United Kingdom, and the Czech Republic that created a means of authentication that required no additional certification for documents produced pursuant to those treaties. Those analyses, as the Supreme Court has instructed, are entitled to great weight, and they lay to rest any question that may exist regarding whether the plain text of the treaties provides for self-authentication of official records certified thereunder. That answer is an unequivocal yes.

4. The Records at Issue Are Admissible Under the MLATs.

Here, the exhibits at issue are admissible because the government received or will receive[12] the certifications, pursuant to the respective MLAT, from the country where the piece of evidence originated. Those certifications provide two paths to admissibility: one based on the language of the treaties themselves, and the second based on Fed. R. Evid. 902(4), in combination with Fed. Civ. R. 44(a)(2)(A)(ii) and Fed. Crim. R. 27. As described above, the Technical Analysis of the Swiss MLAT concluded that it "establishes a rule of evidence." The Czech analysis concluded that if the Czech authorities execute a certification of official documents, the "U.S. judge may admit the records into evidence as self-authenticating under Rule 902(3) of the Federal Rules of Evidence." The U.K. Technical Analysis concludes, "the records will be admissible into evidence without additional foundation or authentication." The treaties thus all create a means of admission independent of the Federal Rules of Evidence and Procedure.

[12] As previously noted, the government is seeking an updated certification for the Czech records because the prior version contained a typographical error regarding the Scottish reference number associated with one of the exhibits. The government expects to receive that updated certification pursuant to the U.S.-Czech Republic MLAT when it gets its answer from the Czech authorities regarding whether they can affix an Apostille under the facts of this case.

Separately, however, documents certified under the treaties are admissible under Fed. R. Evid. 902(4) and the treaty alternative provision of Fed. Civ. R. 44. First, the documents certified by the witnesses are all copies, not originals. Although, as the defense points out, the original Swiss visa documents were provided by the Swiss authorities during the initial investigation (ECF 660 at 3), what was shown to witness A.K. in 2024 and 2026 were digital copies of those originals. Thus, all exhibits whose certifications are at issue in this pleading are copies, and Fed. R. Evid. 902(4) applies.[13]

The certificate the government received from J.H. (Ex. 229-c), a witness retired from the U.K.'s Civil Aviation Authority, was received while conducting interviews pursuant to the U.S.-U.K. MLAT, and it was executed in the presence of Police Scotland officers and FBI agents. The U.S.-U.K. MLAT does not require any particular form or manner of certification, instead stating that "[r]ecords provided pursuant to this Article may also be authenticated pursuant to such other form or manner as may be prescribed from time to time by either Central Authority." The certification thus authenticates the underlying records, which were recovered from the United Kingdom without any further certification under the terms of the treaty and Fed. R. Evid. 902(3) and Fed. Civ. R. 44. Exhibit 229-c certifies Exhibits 226 and 229.

Exhibits 231, 232, and 233 are all attested to by a member of the Civil Aviation Authority in December 1988. The government previously provided a screenshot of one such certification. *See* ECF 625 at 12. Those documents, with the 1988 certifications, were all subsequently provided to the United States pursuant to the U.S.-U.K. MLAT, with those certifications having been provided by one Central Authority and accepted by the other. They accordingly satisfy the U.S.-

[13] Even if the Court finds that they were originals, that is a distinction without a difference under the terms of Civ. R. 44(a)(2)(A)(ii), which allows admission of "the record – or a copy" that is certified in accordance with that rule.

U.K. MLAT and are admissible without any further certification. Nonetheless, the government has included those documents in its request that the United Kingdom provide an Apostille, and we will update the Court and counsel when the United Kingdom responds to that request.

The U.S.-Switzerland MLAT establishes that "a copy of any official recording in the requested State, or entry therein, shall be admissible in evidence without any additional foundation or authentication if authenticated and certified as provided in paragraph 1 and otherwise admissible." The government sought and obtained a public records certificate pursuant to the U.S.-Switzerland MLAT that covers the exhibits at issue here. *See* Exhibit 1550-c. The Court ultimately declined to admit the records under that certificate, in part because it lacked a final certification, but also in part because it stated that the certifying official caused the production of the records, which "implied that the certifying custodian was actually responsible for the production of the records when that was not the case." January 12, 2026, Hr'g Tr. at 48. As previously discussed, the government presently plans to authenticate the Swiss records through live testimony, but if it obtains a certificate under the U.S.-Switzerland MLAT that cures the language defect the Court noted, the underlying records will be admissible even in the absence of live testimony or an Apostille.

The same is true of the U.S.-Czech Republic MLAT. The government is seeking a corrected certification pursuant to the U.S.-Czech Republic MLAT. If it receives that certification, the underlying documents will be admissible even if the Czech authorities are unable to complete an Apostille and even in the absence of a final certification.

## CONCLUSION

For the above reasons, the Court should provisionally admit Exhibits 226, 229, 230, 231, 233, 901, 902, 1549, and 1550, once the government receives responses from the United Kingdom, the Czech Republic, and/or Switzerland, even if those countries are unable to affix Apostilles, and even in the absence of a final certification.[14]

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Erik Kenerson***
ERIK M. KENERSON (OH Bar No. 82960)
CONOR MULROE (NY Bar No. 5289640)
BRITTANY KEIL (D.C. Bar No. 500054)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 252-7201 // Erik.Kenerson@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530

[14] The government maintains, for the reasons previously stated, that the documents are also admissible with an accompanying certification under 18 U.S.C. § 3505.