**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**MOTION FOR PARTIAL RECONSIDERATION OF**
**COURT'S ORDER REGARDING EVIDENCE OF VICTIMS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion for partial reconsideration of the Court's Order regarding evidence of victim identities [ECF 648]. For the following reasons, the government requests that the Court amend its ruling to provide that (1) the government may introduce all available passport records for victims of the offense who were U.S. citizens; and (2) the Court will give a jury instruction regarding the absence of evidence about the victims' backgrounds.

## PROCEDURAL BACKGROUND

On July 13, 2026, as part of its omnibus motions *in limine* in advance of the now-vacated August trial date, the government argued for the admission of the "names, citizenship, and select photographs" of persons killed as a result of the offense. ECF 525 at 2-3. The defense opposed. ECF 545 at 1-5. Discussions between the parties followed, resulting in a stipulation whereby the government would admit a list of the names and citizenships of all 270 victims, which the defense would not oppose provided the government did not have a witness read the list to the jury during the presentation of evidence. On August 18, the government filed a Supplement apprising the Court of that stipulation and offering additional argument on the points that were still in dispute,

including the admissibility of in-life photos of victims and testimony by family members. ECF 639.

On a separate briefing track, the parties litigated the admissibility of photographs from the crash scene that depicted the victims' bodies after death. *See* ECF 483 at 9 (defense motion *in limine* objecting to "graphic photos"); ECF 495 at 13-14 (government response); ECF 507 at 13 (defense reply).

The Court addressed the issues of in-life photos and family-member testimony at a hearing on August 19, 2026. 8/19/26 Tr. at 87-93. During a colloquy with the parties, the Court expressed concern about the potential prejudicial effect of family members' becoming emotional while on the witness stand: "I don't think that means [the government] can't introduce pictures of them, but why do you need to take the extra step to have the victims' family members actually testify?" 8/19/26 Tr. at 90. Given those concerns, the Court raised the possibility of a stipulation whereby the government would enter in-life photographs and limited background information about ten or fewer victims without accompanying testimony from a family member. *Id.* at 91. The government subsequently notified the Court by email that, regardless of whether the defense was willing to enter such a stipulation, the government would still wish to present live testimony from victim family members.

On August 21, 2026, the Court issued an order granting in part and denying in part the government's motion. *See* ECF 648. Regarding crime-scene photos of victims' bodies, the Court would "permit the government to introduce at trial a limited number of crash site photographs of deceased victims, so long as such photographs are not overly inflammatory and the government can lay a proper foundation for their admission." ECF 648 at 1. Regarding passport records, the Court ruled the government could introduce such records "for a limited number of American

victims—at least those tied to the crash scene photographs the government intends to introduce at trial—to prove identity and nationality." *Id.* at 2. Regarding family-member testimony and in-life photographs, the Court excluded all such evidence. *Id.* at 2-5.

## ARGUMENT

The government requests partial reconsideration[1] of the Court's August 21 Order. First, the government asks that the Court reconsider its ruling that only "a limited number" of passport records may be offered, and instead allow the government to admit all existing passport records for the U.S. citizens killed on Pan Am Flight 103. Second, the government renews its request for a jury instruction to make clear that any perceived shortcoming of victim-related evidence is not attributable to the government's negligence.

### A. The Court should allow the government to enter passport records for all U.S. victims.

The government possesses passport applications for 179 of the 190 victims who were U.S. citizens (of the remaining 11, most or all were servicemembers traveling on military orders such that they did not require civilian passports). The records vary slightly in their format, but they generally consist of a one-page pre-printed application form with handwritten responses to demographic questions and a small ID photo attached. For some of the records, a separate higher-quality scan of the photo is also included. For some of the records, the quality of the digitization is so poor that the photo appears only as a darkened silhouette.




[1] Although the government respectfully disagrees with the Court's application of Rule 403 to exclude all in-life photographs and family-member testimony, we do not seek reconsideration of that part of the ruling.

The government moves that the Court amend its Order to permit admission of all 179 passport records in the government's possession. Admitting all the records would obviate certain problems, described below, that arise from the currently ordered approach. Moreover, admitting all the records would be a better application of Rule 403, especially now that the Court has excluded family member testimony and living-color photographs. On one side of the balance, the photos in the passport applications are so mundane that they pose little risk of inflaming the jury's sympathies. On the other side of the balance, the government's legitimate need for "evidentiary richness" and "[t]he persuasive power of the concrete," *Old Chief v. United States*, 519 U.S. 172, 183 (1997), weighs in favor of presenting the decedents as real human beings and not mere names on a list.

1. <u>Tying passport records to crime-scene photos would create problems.</u>

Under the Court's August 21 order, the government would be permitted to introduce passport records for "a limited number of American victims—at least those tied to the crash scene photographs the government intends to introduce at trial—to prove identity and nationality." ECF 648 at 2. While the government appreciates the logic of this approach, it would create problems including a need to revisit the Court's existing ruling on admissibility of crime-scene photos.

In selecting photographs of the crash scene that depict human remains, the government has sought to minimize the risk of inflaming the jury with graphic imagery while still achieving the legitimate purpose of showing that people died as a result of the explosion. The selected exhibits achieve an appropriate balance by showing what are recognizably human bodies without unnecessarily graphic detail. In particular, the decedents' faces are not visible in any of the crime-scene photographs the government presently intends to introduce. As a result, the photos cannot be visually compared against the passport records to determine which passport records correspond with which crime-scene photos. Nor do the currently-selected images have accompanying

documentation identifying the persons depicted, because they are from a set of photographs taken at the scene *in situ* before the evidence and human remains were transported for processing and identification.

To present corresponding sets of crime-scene photographs and passport records, the government would need to identify an entirely new set of crime-scene photos that depict the remains in greater detail. In all likelihood, it would be necessary to draw from autopsy photos in order to demonstrate that the person whose body was recovered was the same person whose passport records are in evidence.

Regardless of their source, any post-crash photos that could be matched to passport records would be more graphic than the crime-scene photos the government would otherwise introduce. The government is therefore concerned that the approach described in the current Order would necessitate a new round of litigation on the defense's Rule 403 challenge to the crime-scene photos. Moreover, alongside any defense objection to more-detailed photographs of victim remains, the government would prefer not to offer photographs that are more graphic than those currently selected. Respect for the victims' dignity is a factor that warrants consideration, and this factor weighs against showing any more gruesome images of the deceased than is necessary. *See* Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(8) (providing that "a crime victim has… [t]he right to be treated with fairness and respect for the victim's dignity and privacy").

2. <u>Admission of all the passport records is warranted under Rule 403.</u>

The Court can and should obviate the above-described problems by allowing the government to admit all of the passport records, not just those that correspond with crime-scene photos. To do so would satisfy Rule 403, because the probative value of the records is not substantially outweighed by any risk of prejudice to the defendant.

a. Mundane passport photos pose minimal risk of prejudice.

When analyzing the potential prejudicial effect of victim photographs, courts commonly recognize the importance of contextual factors like setting, occasion, and the presence of other individuals. For example, a photograph of a person at a wedding is more likely to engender sympathy than a photograph taken on no recognizable occasion. *See, e.g.*, *United States v. Khatallah,* D.D.C. no 14-cr-141, Trial Tr. at 2041 (allowing photograph of decedent posing with spouse at a friend's wedding but prohibiting prosecutor from asking about the circumstances of the photo). Likewise, a photograph of a person posing with loved ones is more likely to engender sympathy than a photograph of the person alone. *See, e.g.*, *United States v. Jones*, 24 Fed. Appx. 968, 975 (10th Cir. 2001) (explaining that photo of victim with mother, though not reversible error, "needlessly push[ed] the prosecutorial envelope" compared to if photo were cropped to show the victim alone).

From this perspective, the photographs in the passport records pose a minimal risk of prejudice. Like other types of ID photos, they are totally mundane: each one shows just the person's head and upper torso, facing directly forward. There are no companions, backdrops, or accessories. In some of the photos, the person is smiling; in others, they have a neutral facial expression. Far from evoking special occasions with loved ones, these photos evoke nothing so much as a trip to the Department of Motor Vehicles. They are bureaucratic, not sentimental. Moreover, because of the age of the records in this case, the photographs are in monochrome rather than living color, and many are of poor image quality.

The passport photos are therefore fundamentally different from the other in-life photos that the Court has categorically excluded, which would have been full-color photographs of the type

one would find in a family album.[2] While the government agrees that the passport photos still require careful consideration, the Rule 403 balancing here tips in favor of admission. Showing the jury all of the passport records will achieve the legitimate purpose of demonstrating the victims' personhood and citizenship while avoiding any risk that improper considerations might cloud the jurors' deliberations.

b. *Old Chief* supports a more complete depiction of the victims.

In its Supplement, the government cited the Supreme Court's seminal case on Rule 403, *Old Chief v. United States*; in particular, Part II.B.3 of the majority opinion, which articulates the government's need to vindicate "the moral underpinnings" of the law by using "the persuasive power of the concrete and particular" to convey the "human significance" of the facts being proven. *See* ECF 639 at 11-13 (quoting *Old Chief*, 519 U.S. at 187-88). Although the Court's Order cited *Old Chief* for a separate point, it did not explicitly address the principles articulated in Part II.B.3 or the government's arguments on how those principles ought to apply in this case. Now that the issue is narrowed to the admissibility of the passport records, the government renews its reliance on Part II.B.3 of *Old Chief.*

In recognizing that abstract premises and stipulations are inferior to concrete evidence in establishing "human significance," *Old Chief* counsels in favor of allowing the government to admit all available passport records. Doing so would make concrete and tangible the fact that all of these decedents were real human beings, substantially more so than an abstract list of names and citizenships.

[2] Such photographs of nearly all of the victims are available for viewing on the website of the Pan Am 103 Lockerbie Legacy Foundation, https://www.pa103ll.org/living-memorial.

The government acknowledges that, as a matter of dry logic, the defense's stipulation to a list of victim names is sufficient to satisfy the death-resulted element of the charged offenses. But *Old Chief* held that questions of admissibility must not be decided in such purely logical terms. Instead, *Old Chief* recognizes that jury verdicts depend not just on whether "the discrete elements of a defendant's legal fault" are satisfied, but also on whether "a guilty verdict would be morally reasonable." 519 U.S. at 188. In view of that latter question, showing the jury the faces of the people who died is an appropriate way to make tangible the nature of the crime the defendant is alleged to have committed. Conversely, to conceal most of those faces would be to impair the government's ability to establish the "human significance" of the decision the jury is being asked to make.

No doubt, admitting photographs of 179 victims is more impactful than admitting photographs of 10 victims. But that disparity is proportionate to the facts being proven, and as the D.C. Circuit has explained, "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (citing *Old Chief*, 519 U.S. at 192).

Moreover, the D.C. Circuit recently reaffirmed the principle that the government is not "limited to one piece of evidence for each material fact." *United States v. Sterlingov*, ___ F. 4th ___, 2026 WL 2881230, at *13 (D.C. Cir. Sept. 25, 2026) (quoting *United States v. Curtis*, 481 F.3d 836, 838 (D.C. Cir. 2007)). *Sterlingov* involved allegations of money laundering and operating an unlicensed money transmitting business, where the defendant's website was used to transmit funds related to drug trafficking and child exploitation. On appeal, the D.C. Circuit did

not dispute the defendant's characterization of the child-exploitation evidence has having "marginal" probative value, but nonetheless found the evidence admissible because its "probative value was not '*substantially outweighed* by a danger of' unfair prejudice" and because "the 'government is, in general, permitted to determine how to present its case.'" *Id.* (quoting Fed. R. Evid. 403, *Curtis*, 481 F.3d at 838).

c. Rule 403 is best satisfied by showing all the records, not just some.

Finally, showing the jury only a subset of the photos would create its own Rule 403 issues; namely, a risk of confusing the jury and prejudicing the government. It would cause jurors to wonder why they are seeing documentation for only a small fraction of the victims. They might assume that the government only bothered to obtain records for a small number, evincing a lack of diligence. Or the jury might reasonably wonder whether some special legal significance is supposed to attach to the victims whose records they are shown. Similarly, spotlighting a small number of victims would risk elevating those victims to "main characters" in the trial, a risk that the defense has already noted in their own briefing. *See* ECF 545 at 1 (arguing that, if the government were to "introduce only select photographs, then the undue focus on particular photos or victims is inappropriate and irrelevant"). As noted above, consideration is due to the rights and dignity of the victims, which counsels against arbitrarily elevating some victims to greater prominence than others.[3]

[3] We acknowledge that these same concerns might have arisen under the government's original proposal, which involved calling a limited number of family members as trial witnesses. That proposal, however, was based on the government's assessment of what the Court might plausibly allow, given Rule 403 factors like the amount of time consumed by such testimony and the possibility that witnesses would become emotional on the stand. Those factors are not applicable to the passport records now at issue.

**B. The Court should instruct the jury about the absence of information about victims.**

In its Supplement, the government requested that, during its preliminary instructions, the Court explain to the jury that they will hear only limited evidence about the people who died, which limitations are the result of the Court's pretrial rulings and not because of any failure on the government's part. *See* ECF 639 at 13. The government respectfully renews this request, which the Court has not yet ruled on.

Such an instruction is appropriate to mitigate the prejudice resulting from jurors' being frustrated in their desire to know more about the people who died. *See Old Chief*, 519 U.S. at 188 ("If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." ((quoting Saltzburg, A Special Aspect of Relevance: Countering Negative Inferences Associated with the Absence of Evidence, 66 Calif. L. Rev. 1011, 1019 (1978)).

The government offers the following language as an initial proposal, and would be glad to discuss the particulars with the defense and the Court:

> The government has alleged that certain people died as a result of the crimes charged. As a result, you may hear evidence about those people, including their names and a limited amount of information on their backgrounds. Please know that I have decided in a pretrial ruling that only limited evidence on this topic is appropriate for your consideration. If you feel that the government has not presented you with enough evidence about the people who died, you should not hold that against the government.

## CONCLUSION

For the above reasons, the Court should partly reconsider its August 21, 2026, Order regarding victim-related evidence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Conor Mulroe***

CONOR MULROE (NY Bar No. 5289640)
ERIK M. KENERSON (OH Bar No. 82960)
BRITTANY KEIL (D.C. Bar No. 500054)
CHARLES R. JONES (D.C. Bar No. 1035541)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 740-4595 // Conor.Mulroe@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530