**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cr-392 (DLF)** |
| | ) | |
| **ABU AGILA MOHAMMAD** | ) | |
| **MAS'UD KHEIR AL-MARIMI,** | ) | |
| **Defendant.** | ) | |

**MR. AL-MARIMI'S RESPONSE TO GOVERNMENT'S MOTION FOR PARTIAL RECONSIDERATION OF COURT'S ORDER REGARDING EVIDENCE OF THE VICTIMS**

Abu Agila Mohammad Mas'ud Kheir Al-Marimi submits this response to the arguments raised in the government's Motion for Partial Reconsideration. *See* ECF No. 691. The government now seeks the admission of 179 passport records of the decedents in this case.

Because the government's basis for admitting these applications is substantially based on the same arguments from its initial motion, Mr. Al-Marimi incorporates and relies upon the positions from his Response to Government's Omnibus Motion *in Limine*, ECF 545, and will not revisit the arguments in full. Some points, however, bear repeating.

## I. Passport records should not be admitted based on associations with the subjects of crash photos.

The defense agrees with the government that the analysis should not turn on connecting the victim photos to photos of the crime scene. In addition to practical problems, connecting the crime-scene photos to other photos of the deceased does not make the latter any more relevant or less prejudicial, given the issues at trial and the stipulations proposed. Rather, it likely increases the prejudicial effect.

## II. FRE 401 prohibits admission of the photographs.

The defense again does not dispute the significance of Pan Am 103 or the loss of life that resulted. But victim photographs continue to not be relevant to any element of the charged crimes.[1] The government must show that individuals died as a result of the incident, but the defense has offered to stipulate to the list of the passenger victims and their nationalities, and the Court has ruled that the government may introduce a limited number of passport applications to that end. ECF 648. As the defense has previously argued, a photo of an individual while alive does not prove that the individual died or that a defendant is culpable. It merely shows a person at a time they were alive, with any associated prejudice. This is made clear in the basis the government relies on to use such evidence. *See* ECF 691, at 8 (conceding the stipulation is sufficient). The guilt phase of the trial is not the appropriate time to "show the faces of the people who died . . . to make tangible the nature of the crime the defendant is alleged to have committed." *Id.*

The government has argued that the passport applications are relevant to the identity and nationality of the victims. However, its relevance argument in the reconsideration motion focuses more on the government's misreading of *Old Chief* and the stated desire to show the "human significance" of the facts being proven. *Id.* The government does not identify any analogous precedent, instead offering precedent only at a high level of generality about evidentiary richness and the

---

[1] Susanna Rychlak, *I See Dead People: Examining the Admissibility of Living-Victim Photographs in Murder Trials*, 69 VAND. L. REV. 1423, 1431–32 (2016) ("A photo depicting a murder victim while alive often has no relevance.").

considerations that apply in cases involving serious allegations.

Separately, the government does not connect the associated photos to its relevance analysis. A photo – especially a photo that is "monochrome" and "poor image quality," ECF 691, at 6 – does not prove the identity or nationality of the subject. The photos can only be used to appeal to the sympathies of the jury and attempt to achieve a verdict based on sentiment, instead of on sufficient evidence of the elements of the offense charged.

At most, therefore, the passport applications *without* the photographs are all that should be admitted. But even that invites unfair prejudice. The defense has agreed to a stipulation of the names and nationalities of those on board the flight. This permits the government to prove the necessary elements of the office, but to do so in a concise manner.[2]

## III. The prejudice from the photographs outweighs the nonexistent probative value.

Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000) (citing *Old Chief v. United States*, 519 U.S. 172, 179 (1997)). The availability and probative utility of available "evidentiary alternatives" must inform the "probative value" of evidence under Rule 403. *Old Chief*, 519 U.S. at 184 (noting the advisory committee

[2] Notably, the fact that a particular individual has applied for a passport does not, in fact, mean that he or she was on the flight in question. Indeed, the government's best evidence that a particular victim died as a result of this incident is the agreed defense stipulation.

notes to Rule 403 state the "availability of other means of proof" is an appropriate consideration). Here there is no basis to admit the evidence, as it is not relevant. So, any degree of prejudice outweighs the probative value. But this is not a question of minimal prejudice.

The prejudicial effect of admitting many photos of deceased victims far outweighs any negligible probative value. To be clear, the photographs themselves are not expected to be particularly gruesome or inappropriate. And the government is correct that the risk of prejudice is reduced when the photos are neutral identification photos, such as those from the department of motor vehicles, rather than more vibrant in-life photos. But the volume and significance of the photos create prejudice in the aggregate. If the government intends to introduce 179 photographs of individuals who died on Pan Am 103, whether by showing all the photos at one time or by showing them one at a time, there can be no question that the presentation will be emotionally overwhelming for the jurors.

The unavoidable risk of appeals to the heart-wrenching elements of this case is that the jury will render a verdict based, not on substantive proof, but on the emotional toll of viewing so many photos of so many victims. The government's stated goal to "make concrete and tangible the fact that all of these decedents were real human beings, substantially more so than an abstract list of names and citizenships", shows that it is seeking an emotional appeal to the jury, not a relevant factual one. ECF 691, at 7. No reading of *Old Chief* provides *carte blanche* to admit unfairly prejudicial evidence *because the evidence is prejudicial*.

The same aggregation issue exists regarding victim names and citizenship. The government indeed has an obligation to prove this information. But it can do so in a way to reduce and minimize the inherent prejudice. There is a significant difference between introducing a document, which concisely lists the names of victims and their respective nationalities, and a stack of 179 documents, each with a photo of a victim.

The government cites to *United States v. Khatallah* to support the notion that introducing a photograph that depicted a decedent in life is not prejudicial. 1:14CR141 (D.D.C., Tr. at 2041). But the defense in that case did not object to the admissibility of the exhibit and the Court did not consider or rule on the potential prejudicial effect of the evidence. *Khatallah* is not informative on this issue.

The government's reliance on *United States v. Jones*, 24 F. App'x 968, 975 (10th Cir. 2001), is also misplaced. While the court in *Jones* did note that a photo would have been less prejudicial were it edited to remove the decedent's mother, it admitted the photograph as it stood because it was relevant to a disputed fact that the defense had put at issue: the appearance of the decedent. Notably, the court did not say that such a clipped image had no prejudice – just that it likely would have been less prejudicial than the photo as introduced. But the court did not hold that a cropped photo is admissible with no relevance, simply by virtue of being cropped and, presumably, less prejudicial.

Finally, the contrast in permissible uses of evidence and what the government requests here is illustrated by *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C.

Cir. 1998). There, the defendant was not allowed to soften his actions by excluding evidence of particular acts he committed against a witness in the case. The court held that the defendant's conduct went to explain why the witness continued with the scheme at issue. *Id.* As a result, the defendant was not permitted to "sanitize," "deflate," or force the government to tell the facts of the case in a "monotone way." *Id.* In contrast, Mr. Al-Marimi does not seek to censor the nature or scale of the allegations against him. Rather, he seeks to prevent the government from piling on irrelevant evidence for unfairly prejudicial purposes.

## IV. *Old Chief* does not support the government's argument for admitting irrelevant evidence.

The government continues to cite *Old Chief v. United States* to argue, in effect, that *any* evidence is admissible as long as it makes the government's case more compelling. The defense continues to read that case very differently.

As explained before, the cited portion of the opinion merely stands for the proposition that the layering of details may provide context to the government's presentation that a mere stipulation may not, and that having such context allows a juror to take comfort in her verdict. *Old Chief*, 519 U.S. at 187–88. While the case acknowledges that the whole may be greater than the sum of the parts, those parts must, nonetheless, be admissible evidence. *Old Chief* does not stand for the proposition that the government is entitled to introduce evidence that is otherwise inadmissible under the rules of evidence.

*Old Chief* must be read in context. The Court began by discussing the way in which additional evidence can flesh out the circumstances of a case:

> The “fair and legitimate weight” of conventional evidence showing individual thoughts and acts amounting to a crime reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once; the account of a shooting that establishes capacity and causation may tell just as much about the triggerman's motive and intent. Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

*Old Chief,* 519 U.S. at 187. The government here also relies on relies on another basis that the Supreme Court addressed: the need for a juror to hear sufficient evidence to feel confident in their verdict.

> But there is something even more to the prosecution's interest in resisting efforts to replace the evidence of its choice with admissions and stipulations, for beyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law's claims, there lies the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be. Some such demands they bring with them to the courthouse, assuming, for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun in evidence. A prosecutor who fails to produce one, or some good reason for his failure, has something to be concerned about. “If [jurors'] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party.” Saltzburg, A Special Aspect of Relevance: Countering Negative Inferences Associated with the

> Absence of Evidence, 66 Calif. L.Rev. 1011, 1019 (1978) (footnotes omitted).[9] Expectations may also arise in jurors' minds simply from the experience of a trial itself. The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing. A party seemingly responsible for cloaking something has reason for apprehension, and the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.

*Old Chief,* 519 U.S. at 188-189. These concerns of the *Old Chief* Court are not present here. This is not a situation in which the government's case is made more fulsome by layering different pieces of evidence together. The photographs at issue show only that the person to whom the passport application purports to belong were at one point alive and able to pose for a picture. But the comprehensive weaving of facts, leading to a logical conclusion, is not accomplished by admitting such photographs of the victims. Such evidence sheds no light on any other fact in the case. It supports no argument. It provides no context, richness, or nuance to any other fact. Again, the proffered photos depict only that the individuals pictured were once alive – a fact that may be overwhelmingly significant to the victim families and the narrative of the incident generally. But the evidence does not play the role that *Old Chief* contemplates.

This is also not a circumstance where the government is hamstrung by the inability to present the evidence of the case with the best evidence at their disposal.

It is highly unlikely that the jury will have doubts that the victims of Pan Am 103 were killed in the incident. But, even if the jury was to question that fact, showing in-life victim photos does not make it more or less likely that the deaths occurred. This is a circumstance where the government seeks to introduce inadmissible evidence using the argument that it should be able to use the evidence that it chooses. But that evidence must always be relevant and admissible in the first instance. The fact that it is the government's preferred evidence does not save evidence that is not relevant and not admissible.[3]

**V. A "limiting" instruction is not appropriate.**

The government seeks what is in essence a reverse limiting instruction—telling the jury not to "hold it against" the government if it believes there is insufficient evidence about the victims. This is inappropriate. When evidence is inadmissible, the offering party is not entitled to tell the jury that the evidence was excluded. The evidence is simply that: inadmissible.

The fourth and final sentence of the government's proposed instruction, in particular, has no place in the Court's jury instructions. It mimics an element instruction, addressing a category of evidence and the jury's assessment of the evidentiary sufficiency, but it instructs the jury vaguely to set its assessment aside.

The government is not entitled to such an instruction, has offered no basis to give one, and the Court should deny the request for it.

[3] Notably, cumulative evidence is also not admissible and, were the government to introduce 179 victim passport applications, then the defense would necessarily need to reconsider its position on stipulating to the name and nationality as to those victims.

Respectfully submitted,

**ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI**

By: ________/s/______________________
Whitney E.C. Minter
Va. Bar #47193
Brooke Sealy Rupert
Va. Bar #79729
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)

Laura Koenig
Va. Bar #86840
Assistant Federal Public Defender
Attorney for Mr. Al-Marimi
701 E. Broad Street, Suite 3600
Richmond, Virginia 23219
(804) 343-0800 (telephone)
(804) 648-5033 (facsimile)
Laura_Koenig@fd.org (email)