**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-cr-392 (DLF)** |
| | : | |
| **ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION *IN LIMINE* FOR ADMISSIBILITY OF EXHIBITS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion *in limine* regarding the admissibility of certain exhibits based on the expert testimony of two questioned document examiners, Jonathan Morris and Christopher Davies. This pleading first provides a high-level summary of the anticipated expert testimony, then argues why selected items the experts reviewed are admissible at trial.

**ANTICIPATED TESTIMONY**

The government is going to present two handwriting experts in this case, Jonathan Morris and Christopher Davies. Each is qualified in forensic document examination, while Davies is also an expert in Arabic writing.[1] They have been involved in the Pan Am Flight 103 investigation since 1999 and have reviewed various documents that were recovered as part of this investigation, such as immigration records office (IRO) cards, diaries, hotel registration cards, visa applications, and immigration papers. They have examined these items, comparing both the handwriting using Roman letters on the cards as well as any signatures present. Based on their examinations, they

[1] The defense is not challenging their qualifications.

made determinations on whether they could determine which items were likely written by the same person, or, in the case of signatures, someone working to the same model of signature; which items were unlikely to have been written by the same person; and which items they could not make any determination. They generally use a scale with nine categories that includes increased or decreased likelihood of authorship. Some of the scales have slightly different language (strong support in one scale might be characterized as very strong support in another), but here is one example:

- Definitely responsible
- Strong support responsible (i.e. extremely unlikely that another individual is responsible)
- Moderate support responsible (i.e. very unlikely that another individual is responsible)
- Weak support responsible (i.e. unlikely that another individual is responsible)
- Unable to determine if responsible
- Weak support not responsible (i.e. likely that another individual is responsible)
- Moderate support not responsible (i.e. very likely that another individual is responsible)
- Strong support not responsible (i.e. extremely likely that another individual is responsible)
- Definitely not responsible.

In all scales, *any* level of responsibility- be it weak, moderate, strong or very strong- is considered an indication of authorship. At trial, the experts will present testimony about items predominately in the name of Abdelbaset Al Mohmed, Ahmed Khalifa Abdusamad[2], Lamin Khalifa Fhimah and Abu Agila Muhammad Kheir Ma'sud Al-Marimi, or documents with their purported signatures.

[2] The government will present evidence that Abdelbaset Al Mohmed and Ahmed Khalifa Abdusamad are aliases of Abdelbaset al-Megrahi.

## MOTION *IN LIMINE*

The government does not intend to introduce all of the items that the handwriting experts reviewed and compared in this case. Instead, the government plans to introduce select exhibits for the handwriting presentation. Most of the exhibits have already been ruled on or are the subject of pending litigation.[3] However, there is a subset of items, Exhibits 1201-1208 and 1210-1214, that the government will be substantially relying on Fed. R. Evid. 901(b)(3) for authentication. For the following reasons, Exhibits 1201-1208 and 1210-1214 are authentic under Fed. R. Evid. 901(b)(3).

Federal Rule of Evidence 901(b)(3) states:

> **(a) In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> **(b) Examples.** The following are examples only — not a complete list — of evidence that satisfies the requirement:
>
> > **(3) *Comparison by an Expert Witness or the Trier of Fact.*** A comparison with an authenticated specimen by an expert witness or the trier of fact.

Based on the examinations of Morris and Davies, the following exhibits can be authenticated under Fed. R. Evid. 901(b)(3). Authenticity is a preliminary question that the Court analyzes under Fed. R. Evid. 104(b), *see*, *e.g.*, *United States v. Roberson*, 581 F. Supp. 3d 65, 76 & n.7 (*citing* Fed. R. Evid. 901, Advisory Committee Notes), and in determining whether the proponent of a piece of evidence has met the low bar to establish authenticity, the Court must only find that the government has presented enough evidence that a reasonable juror *could* conclude

[3] The government relies on the previously filed briefings related to evidentiary bases and objections as it relates to authentication and hearsay objections for the other items in the handwriting presentations.

that the item is what it purports to be. *See*, *e.g.*, *Huddleston v. United States*, 485 U.S. 681, 690 (1988) ("In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact [] by a preponderance of the evidence").

Once authenticated, the documents are also admissible under recognized exceptions to hearsay.

## I. Authentication

### A. Items linked to the Defendant

**Exhibit 1206:** a two-page document. In 2026, Morris compared the top signature on the second page of 1206, IRO cards with the purported signature of the defendant, and the known signatures of the defendant on Exhibit 500 (the statements taken by Jamal). Morris determined that there is weak support that Abu Agila Mohammed Mas'ud Kheir Al-Marimi was responsible for each of the signatures on the IRO cards and the specified signature on Exhibit 1206. By "weak" support, he considers it unlikely that a person other than the defendant was responsible for each of these signatures. Davies also reviewed this item and compared it to the known signatures of the defendant on Exhibit 500. He found moderate support for the view that the top signature on the second page was written by the defendant. He compared it to the IRO cards in the defendant's name and found strong support for the view that the same person who made the top signature on the second page of Exhibit 1206 also made the signatures on Exhibits 824, 828, 829, 830 and 831

(IRO cards in the name of the defendant). Based on these opinions, Exhibit 1206 should be admissible under 901(b)(3).

**B. Items linked to Megrahi**

**<u>Exhibits 1203, 1205, 1207, 1210, 1211, 1212, 1214</u>**: Various handwritten documents. In 2026, Morris compared these exhibits to the items he previously linked to Megrahi and came to the following conclusions:

| Exhibit Number | Conclusion | Co-Conspirator |
|---|---|---|
| 1203 | Strong support signature is the same as items in the names of Megrahi and Abdelbaset Al Mohmed | Megrahi |
| 1205 | Strong support signature is the same as items in the names of Megrahi and Abdelbaset Al Mohmed | Megrahi |
| 1207 (page 2) | Weak support handwriting is the same as items in the names of Megrahi, Abdelbaset Al Mohmed and Ahmed Khalifa Abdusamad | Megrahi |
| 1210 | Weak support handwriting is the same as items in the names of Megrahi, Abdelbaset Al Mohmed and Ahmed Khalifa Abdusamad | Megrahi |
| 1211 | Strong support uppermost signature on bottom is the same as items in the names of Megrahi and Abdelbaset Al Mohmed | Megrahi |

| | | |
|---|---|---|
| 1212 | Strong support uppermost signature on bottom is the same as items in the names of Megrahi and Abdelbaset Al Mohmed | Megrahi |
| 1214 | Moderate support handwriting is same as items in the names of Megrahi, Abdelbaset Al Mohmed and Ahmed Khalifa Abdusamad | Megrahi |

Davies also reviewed Exhibits 1203, 1204, 1206, 1208 and 1212. He was asked to compare the handwriting on each sheet to the other documents in that group. He also compared the signature on those items to the known signatures of Megrahi. He made the following conclusions:

| Exhibit | Conclusion- Signatures | Conclusion- Handwriting | Co-Conspirator |
|---|---|---|---|
| 1203 | | Strong support for the view that 1203, 1204 and 1208 were written by the same person | |
| 1204 | | Strong support for the view that 1203, 1204 and 1208 were written by the same person | |
| 1208 | | Strong support for the view that 1203, 1204 and 1208 were written by the same person | |
| 1212 | Strong support for the view that the uppermost signature written by Abdelbaset Ali Mohamed Al Megrahi. | Moderate support that the handwriting on 1212 was | Megrahi |

| | | | |
|---|---|---|---|
| | | produced by the same person who wrote 1203. | |

Based on these opinions, Exhibits 1203, 1205, 1207, 1210, 1211, 1212 and 1214 are admissible under 901(b)(3).

### C. Items linked to Fhimah

**Exhibit 1211.** In 2026, Morris compared this exhibit to items he previously linked to the Fhimah and determined that there was strong support that the lower signature is the same author as items linked to Fhimah. Based on this opinion, Exhibit 1553 is admissible under 901(b)(3).

## II. The Documents are Not Hearsay

The rule against hearsay generally forbids the admission of out-of-court statements that are offered to provide the truth of the matter being asserted. *See* Fed. R. Evid. 801, 802. That rule outlines statements that are specifically not hearsay and specifically, a statement that is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy is not hearsay. Fed. R. Evid. 801(d)(2)(E).

To fall under the umbrella of 801(d)(2)(E), the foundation for admission of the statement is that:

1. There was a conspiracy;
2. Its members included the declarant and the party against whom the statement is offered; and
3. The statement was made during the course of and in furtherance of the conspiracy.

*United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990) In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself. See Fed. R.

Evid. 801(d)(2); see also *Bourjaily v. United States*, 483 U.S. 171, 176-81, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987).

In this case, evidence shows that the defendant, along with Megrahi, Fhimah, and others, were involved in a conspiracy to commit terrorist acts against the United States of America and its citizens, including by placing and causing to be placed a destructive device and explosive substance upon Pan Am Flight 103 and by maliciously damaging and destroying by means of an explosive device Pan Am Flight 103. The Court already found that such a conspiracy existed as to the bombing of Pan Am Flight 103, and that the defendant, Megrahi, and Fhimah were members of it. This conspiracy is proven by the various travel documents and witness testimony that will presented at trial, as well as the defendant's own statements.

The documents were made in the course and furtherance of the conspiracy, as they establish testing and planning carried out that enabled the conspiracy to function. Therefore, in this case, these documents are squarely admissible under 801(d)(2)(E).

## III. Other Exceptions

### A. The Ancient Documents Rule.

All of the above documents are admissible under the Ancient Documents exception, Rule 803(16), which applies to any "statement in a document that was prepared before January 1, 1998,

and whose authenticity is established." As the documents are dated prior to 1998, and can be authenticated under 901(b)(3), they are admissible.

**B. The Residual Exception.**

The residual exception provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804," as long as:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
>
> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Courts have often admitted uncertified business records under the residual exception. For example, in *United States v. Turner*, the Third Circuit affirmed the admission of foreign bank records that were found in a co-conspirator's resident and office, where the district court had found the records trustworthy based on "(1) the appearance of the records, including their internal consistency; (2) the contents of the records; and (3) the circumstances surrounding the discovery of the records." 718 F.3d 226, 234-35 (3d Cir. 2013). In *United States v. Nivica*, the First Circuit affirmed the admission of foreign bank records where, despite the absence of any custodian or other qualified witness to lay foundation, the district court had found that the documents were authentic, reliable, and trustworthy. 887 F.2d 1110, 1126 (1st Cir. 1989). In *Karme v. Comm'r*, the Ninth Circuit affirmed the tax court's admission of uncertified foreign bank records in the absence of a custodian where the records, which were provided by a foreign government pursuant to a treaty, had "circumstantial guarantees of trustworthiness." 673 F.2d 1062, 1065 (9th Cir. 1982). And in *United States v. Wilson*, the Fifth Circuit affirmed the admission of uncertified foreign bank records — despite apparent gaps, clerical errors, and a convoluted chain of custody — because the

government offered some corroboration of their authenticity and because bank documents are inherently reliable. 249 F.3d 366, 375 (5th Cir. 2001) (abrogated on other grounds by *Whitfield v. United States*, 543 U.S. 209 (2005)).

**CONCLUSION**

For the above reasons, the Court should admit Exhibits 1201-1208 and 1210-1214.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: ***/s/ Brittany Keil***

BRITTANY KEIL (D.C. Bar No. 500054)
CONOR MULROE (NY Bar No. 5289640)
ERIK M. KENERSON (OH Bar No. 82960)
CHARLES R. JONES (D.C. Bar No. 1035541)
Assistant United States Attorneys
JEROME J. TERESINSKI (PA Bar No. 66235)
Special Assistant United States Attorney
601 D Street NW, Washington, D.C. 20530
(202) 252-7763 // Brittany.Keil@usdoj.gov

KATHLEEN CAMPBELL (MD Bar No. 9812170031)
JENNIFER BURKE (MD Bar No. 9706250061)
Trial Attorneys, Counter Terrorism Section
National Security Division
950 Pennsylvania Avenue NW, Washington, D.C. 20530